S A13 CA0034 **OG**

# EXHIBIT C

AN ORDINANCE    2012-12-06-0933

AMENDING VARIOUS CITY CODE CHAPTERS RELATED TO SEXUALLY
ORIENTED BUSINESSES BY DELETING PROVISIONS ON HUMAN
DISPLAY ESTABLISHMENTS AND ADULT ARCADES AND MERGING
THESE INTO ONE CHAPTER UNDER SEXUALLY ORIENTED
BUSINESSES, CITY CODE CHAPTER 21, ARTICLE IX; REVISING
PENALTY FOR VIOLATIONS OF SEXUALLY ORIENTED BUSINESSES
REGULATIONS, AMENDING LICENSING SCHEME FOR SEXUALLY
ORIENTED BUSINESSES; AND PROVIDING FOR PUBLICATION.

\* \* \* \* \*

**WHEREAS,** Section 243.003 of the Local Government Code authorizes municipalities to adopt
regulations regarding sexually oriented businesses, an establishment whose one of its primary
business purposes is the offering of a service, live entertainment or the selling, renting, or
exhibiting of devices or any specified anatomical parts intended to provide sexual stimulation or
sexual gratification to the customer and which is distinguished by or characterized by an
emphasis on matter depicting, describing or relating to specified sexual activities or specified
anatomical areas,; and

**WHEREAS,** the City Council finds that sexually oriented businesses require special supervision
from public safety agencies of the City in order to protect and preserve the health, safety, and
welfare of the patrons of such businesses as well as the residents of the City; and

**WHEREAS,** the City Council finds that sexually oriented businesses are frequently used for
unlawful sexual activities including prostitution and sexual liaisons of a casual nature; and

**WHEREAS,** the City Council finds that there is convincing documented evidence that sexually
oriented businesses have a deleterious effect on both the businesses around them and the
surrounding residential areas adjacent to them, causing increased crime and the downgrading of
property values; and

**WHEREAS,** sexual oriented businesses lend themselves to ancillary unlawful and unhealthy
activities that are presently uncontrolled by the operators of the establishments and absent
municipal regulation aimed at reducing adverse secondary effects there is no mechanism to make
the owners of these establishments responsible for the activities that occur on their premises; and

**WHEREAS,** certain employees of sexually oriented businesses, as defined in this Ordinance,
engage in higher incidence of certain types of illicit sexual behavior than employees of other
establishments;

**WHEREAS,** sexual acts, including masturbation, prostitution, sexual contact, and oral sex,
occur at sexually oriented businesses, especially those which provide private or semi-private
rooms and booths;

Exhibit C

Page 1 of 146 pages

**WHEREAS,** offering and providing private or semi-private areas in the sexually oriented businesses encourages such sexual activities which creates unhealthy conditions; and

**WHEREAS,** persons frequent certain sexually oriented businesses for the purpose of engaging in sex within the premises of such sexually oriented businesses; and

**WHEREAS,** the City Council has found that certain businesses featuring adult entertainment as defined in Chapter 21 of the City Code have found a means of circumventing locational restrictions as set forth in Ch. 35 of the Unified Development Code; and

**WHEREAS,** the City Council adopts the evidence concerning the adverse secondary effects of Sexually Oriented Businesses on the community presented in studies made available to the Council, and on findings incorporated in the cases of *N.W. Enterprises v. City of Houston*, 352 F.3d 162 (5th Circ. 2003); *Baby Dolls Topless Saloons v. City of Dallas*, 295 F.3d 471 (5th Circ. 2002); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986); *Young v. American Mini Theatres*, 427 U.S. 50 (1976); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S. Ct. 1382 (2000); *City of Los Angeles v. Alameda Books, Inc.* 122 S. Ct. 1728 (2002); *LLEH, Inc. v. Wichita County*, Texas, 289 F.3d 358 (5th Circ. 2002); *Mitchell v. Commission on Adult Entertainment*, 10 F.3d 123 (3d Circ 1993); *Shultz v. City of Cumberland*, 228 F.3d 831 (7th Circ. 2000) *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248 (5th Circ. 1995); *2300, Inc. v. City of Arlington*, 888 S.W. 2d 123 (Tex. App. – Forth Worth 1994); *Colacurcio v. City of Kent*, 163 F.3d 545 (9th Circ. 1998), cert denied, 529 U.S. 1053 (2000); *Kev, Inc. V. Kitsap County*, 793 F.2d 1053 (9th Circ.1986); *Center for Fair Public Policy v. Maricopa County*, 336 F.3d 1153 (9th Circ. 2003); *DLS, Inc. v. Chattanooga*, 107 F.3d 403 (6th Circ. 1997); *Jake's Ltd. Inc. v. Coates*, 384 F.3d 884 (8th Circ. 2002); and on studies, reports, and/or testimony in other communities including, but not limited to: Houston, Texas; Phoenix, Arizona; Minneapolis, Minnesota; St. Paul, Minnesota; Indianapolis, Indiana; Dallas, Texas; Amarillo, Texas; Garden Grove, California; Los Angeles, California; Whittier, California; Austin, Texas; Seattle, Washington; Oklahoma City, Oklahoma; Cleveland, Ohio; Beaumont, Texas; Newport News, Virginia; Bellevue, Washington; New York, New York; St. Croix County, Wisconsin; Arlington, Texas; Detroit, Michigan; Seattle, Washington; Rochester, New York; Denver, Colorado; El Paso, Texas; and also findings from the *Texas City Attorneys Association Crime and Value Related Effects of Sexually Oriented Businesses* (2008); *Florida Survey of Appraisers* (2008); The *American Center for Law and Justice* (1996); and *National Law Center Summary of Sexually Oriented Business Land Use Studies* (1996); and

**WHEREAS,** the Fourth Court of Appeals for the State of Texas issued a ruling on September 17, 2008 in *State of Texas v. Chacon et al* that a violation of a provision under Article IX of the San Antonio City Code is to be a Class A misdemeanor offense pursuant to Chapter 243 of the Texas Local Government Code; and

**WHEREAS,** the City Council desires to prevent these adverse effects and thereby protect the health, safety and welfare of the citizenry; protect the citizens from increased crime; preserve the quality of life; preserve the property values and character of surrounding neighborhoods and deter the spread of urban blight;

**NOW THEREFORE,**

**BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF SAN ANTONIO:**

**SECTION 1.** That the findings contained in the preamble to this Ordinance are determined to be true and correct and are hereby adopted by the City Council and made a part of this Ordinance for all purposes. The findings, studies, and case law developed and/or reviewed and relied upon in connection with the adoption of this Ordinance and previous amendments to Articles I, V and IX of Chapter 21 of the City Code of San Antonio, are also determined to be applicable to this Ordinance and are hereby incorporated and adopted or readopted for that purpose.

**SECTION 2.** Chapter 16, Article V of the City Code of the City of San Antonio is deleted in its entirety: deletions are signified by strikeout text and bracketed to read as follows:

******

[CHAPTER 16, ARTICLE V.
HUMAN DISPLAY ESTABLISHMENTS*

DIVISION 1. GENERALLY

Sec. 16-111. Definitions.

The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Figure model*

shall mean any person, male or female, who poses to be observed, viewed, sketched, painted, sculpted, drawn, photographed, or otherwise depicted.

*Human display establishment*

shall mean any premises where there is conducted the business of furnishing, providing or procuring figure models who pose at said premises for the purpose of being observed or viewed by any person or for the purpose of being sketched, painted, drawn, sculpted, photographed or otherwise similarly depicted in a nude or seminude state before persons who pay a fee or other consideration, compensation or gratuity for the right or opportunity to so depict a figure model, or for admission or permission to remain on, or as a condition to remain on, the premises.

*Nude* or *seminude*

~~shall mean completely without clothing or covering or with partial clothing or covering with the pubic area or the anus exposed, or the wearing of any type of translucent clothing so that such portions of the anatomy may be clearly observed.~~

~~Sec. 16-112. Exceptions.~~

~~Establishments and premises excepted from the provisions of this article are:~~

~~(1)   Any establishment operated by any state college or any public junior college or school wherein the person who is operating it has met the requirements established by the Texas Education Agency or the Southern Association of Colleges, or an equivalent state accrediting agency or regional association for the issuance or conferring of and is, in fact, authorized thereunder to issue and confer a diploma or honorary diploma; or~~

~~(2)   Any premises wherein there is conducted the business of furnishing, providing, or procuring figure models solely for any establishment described in subparagraph (1) above.~~

~~Sec. 16-113. Changes in personnel.~~

~~Changes in personnel of a human display establishment shall be reported to the chief of police or his representative within twenty (20) days after the changes in personnel are made.~~

~~Sec. 16-114. Change of location.~~

~~A change in location of any human display establishment may be approved by the chief of police or his representative provided that all ordinances and regulations of the city are complied with. Any person denied permission to change location by the chief of police or his representative may appeal to the city council in writing within ten (10) days, stating reasons why the change in location should be allowed. The city council may grant or deny permission to change the location, and such decision shall be final.~~

~~Sec. 16-115. Hours of business.~~

~~No person shall conduct or operate a human display establishment between the hours of 10:00 p.m. and 8:00 a.m. of the following day.~~

~~Sec. 16-116. Alcoholic beverages.~~

~~No person shall sell, give, dispense, provide, keep or cause to be sold, given, dispensed, provided or kept any alcoholic beverage on the premises of any human display establishment.~~

~~Sec. 16-117. Children on premises.~~

No person shall permit any person under the age of seventeen (17) years to come or remain upon the premises of any human display establishment as a model, employee or patron, unless such person is on the premises on lawful business.

Sec. 16-118. Records.

(a) *Definitions.*

The following words, terms, and phrases, when used herein shall have the meanings ascribed to them in this subsection (a), except where the context clearly indicates a different meaning:

*Adult bookstore*

shall mean as the term is defined in section 35-1041 of the City Code.

*Adult cabaret*

shall mean an establishment whose primary business is the offering to customers of live entertainment which is intended to provide sexual stimulation or sexual gratification to such customers, and which is distinguished by or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities, or specified anatomical areas.

*Adult encounter parlor*

shall mean an establishment whose primary business is the provision of premises where customers either congregate, associate, or consort with employees who engage in specified sexual activities with or in the presence of such customers, or who display specified anatomical areas in the presence of such customers, with the intent of providing sexual stimulation or sexual gratification to such customers.

*Adult lounge*

shall mean an adult cabaret, as defined above, which is a permitted or licensed premises, pursuant to the Texas Alcoholic Beverage Code, where alcoholic beverages may be served or sold.

*Adult movie theatre*

shall mean an establishment, containing a room with tiers or rows of seats facing a screen, or projection area, whose primary business is the exhibition to customers of motion pictures which are intended to provide sexual stimulation or sexual gratification to such customers and which are distinguished by or characterized by an emphasis on

matter depicting, describing or relating to specified sexual activities or specified anatomical areas.

*Conduct any business in an enterprise.*

Any person who does any one (1) or more of the following shall be deemed to be conducting business in an enterprise:

(1)    Operates a cash register, cash drawer or other depository on the premises of the enterprise where cash funds or records of credit card or other credit transactions generated in any manner by the operation of the enterprise or the activities of the premises of the enterprise;

(2)    Displays or takes orders from any customer for any merchandise, goods, entertainment or other services offered on the premises of the enterprise;

(3)    Delivers or provides to any customer any merchandise, goods, entertainment or other services offered on the premises of the enterprise;

(4)    Acts as a door attendant to regulate entry of customers or other persons into the premises of the enterprise; or

(5)    Supervises or manages other persons in the performance of any of the foregoing activities on the premises of the enterprise.

*Employee*

shall mean any person who renders any service whatsoever to the customers of an enterprise, works in or about an enterprise or who conducts any business in an enterprise and who receives or has the expectation of receiving any compensation from the operator, or customers of the enterprise. By way of example, rather than limitation, the term includes the operator and other management personnel, clerks, dancers, models and other entertainers, food and beverage preparation and service personnel, door persons,bouncers, and cashiers. It is expressly intended that this definition cover not only conventional employer-employee relationships but also independent contractor relationships, agency relationships, and any other scheme or system whereby the "employee" has an expectation of receiving compensation, tips, or other benefits from the enterprise or its customers in exchange for services performed.

*Enterprise*

shall mean an adult bookstore, adult cabaret, adult encounter parlor, adult lounge, adult movie theater, or any establishment whose primary business is the offering of a service or the selling, renting or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to its customers, and which is distinguished by or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas. However, the term "enterprise" shall not be construed to include:

(1)   Any business operated by or employing licensed psychologists, licensed physical therapists, licensed athletic trainers, licensed cosmetologists, or licensed barbers performing functions authorized under the licenses held;

(2)   Any business operated by or employing licensed physicians or licensed chiropractors engaged in practicing the healing arts; or

(3)   Any retail establishment whose major business is the offering of wearing apparel for sale to customers.

(4)   A human display establishment as defined in Ordinance No. 57134, an adult arcade as defined in Ordinance No. 67481 and massage business as defined in Ordinance No. 66723.

*Manager*

shall mean any person who supervises, directs or manages any employee of an enterprise or any other person who conducts any business in an enterprise with respect to any activity conducted on the premises of the enterprise, including any on-site manager.

*On-site manager*

shall mean a person charged by an owner or operator of an enterprise with the responsibility for direct supervision of the operation of the enterprise and with monitoring and observing all areas of the enterprise to which customers are admitted at all times during which the enterprise is open for business or customers are on the premises of the enterprise.

*Operator*

shall mean the manager or other natural person principally in charge of an enterprise.

*Owner or owners*

shall mean the proprietor if a sole proprietorship, all general partners if a partnership, or the corporation if a corporation.

*Specified anatomical areas*

shall mean as the term is defined in section 35-1041 of the City Code.

*Specified sexual activities*

shall mean as the term is defined in section 35-1041 of the City Code.

(b)    *Identification records.*

It shall be the duty of any owner, operator or manager of an enterprise to document and maintain on the premises a register of all current employees consisting of a current copy of valid photographic identification of every employee and their true name, aliases, gender, height, weight, color of hair and eyes, copy of social security card, date of birth, current home address, current telephone number, date of initial employment, and if applicable, date of termination, and specific job or employment duties.It shall be the duty of any owner, operator, or manager of an enterprise to allow immediate access by any police officer or health officer to inspect such records for compliance with this section. The register shall be maintained for all employees employed at any time during the preceding thirty-six (36) months.

(c)    *Penalties; enforcement.*

(1)    The violation of any provision of this section, including the doing of anything which is herein prohibited or declared to be unlawful or the failure to do anything or perform any duty which is required herein, shall be punishable as provided by V.T.C.A., Local Government Code § 243.010(b). Each day that any violation shall continue shall constitute and be punishable as provided by V.T.C.A., Local Government Code § 243.010(b). Each day that any violation shall continue shall constitute and be punishable as aseparate offense.

(2)    The revocation or suspension of any permit shall not prohibit the imposition of a criminal penalty and the imposition of a criminal penalty shall not prevent the revocation or suspension of a permit.

Sec. 16-119. Copy of article provisions to be posted on premises.

A person operating a human display establishment shall post and continually keep posted a copy of this chapter at a conspicuous place inside the premises of the establishment.

Sec. 16-120. Supervision of premises.

The permittee or manager named and approved with respect to issuance of a permit or the holder of a current manager's permit, shall be present on the premises of a human display establishment at all times when the establishment is in operation.

Sec. 16-121. Unlawful activities.

It shall be unlawful for any person who poses as a figure model for the purposes of being observed, sketched, painted, sculpted, photographed, or otherwise similarly depicted in a nude or a seminude state, to engage in sexual conduct as specifically defined and prohibited by applicable state law. The permitting of any violation of this provision shall be deemed grounds for revocation of the permit granted hereunder.

Sec. 16-122. Applicability of regulations to existing businesses.

The provisions in this chapter shall be applicable to all persons and businesses described herein, whether the business was established before or after the effective date of this article.


DIVISION 2. PERMITS

Sec. 16-136. Required.

It shall be unlawful for any person to engage in, conduct, or carry on, in or upon any premises within the city the business of a human display establishment in the absence of a permit issued pursuant to the provisions of this article.

Sec. 16-137. Application.

Any person desiring to obtain a permit for the operation of a human display establishment shall make an application to the chief of police or his representative, for an investigation.

Sec. 16-138. Information to be filed with application.

(a)   Any applicant for a permit required by this division shall submit the following information:

    (1)   The full name and present address of the applicant;

    (2)   The previous address immediately prior to the present address of the applicant;

    (3)   Written proof that the applicant is over the age of seventeen (17) years;

    (4)   The height, weight, color of eyes and color of hair of the applicant;

    (5)   The business, occupation or employment of the applicant for the three (3) years immediately preceding the date of the application;

(6) The business license or permit history of the applicant for the five (5) years prior to the date of the application; whether the applicant, in previously operating in the city or elsewhere under a license or permit has had a license or permit revoked or suspended, and if so, the reasons therefor; and the business activity or occupation of the applicant subsequent to the revocation or suspension;

(7) All criminal arrests of the applicant other than misdemeanor traffic violations, to include a full disclosure of the jurisdiction where arrested, offense for which arrested and the disposition of the arrest;

(8) If the applicant is a corporation, the same information shall be furnished concerning each stockholder holding more than ten (10) percent of the stock of the corporation, each officer and each director; and concerning the partners, including limited partners, if the applicant is a partnership.

(b) In addition, the applicant shall present himself to the city police department for the purpose of being fingerprinted and photographed.

Sec. 16-139. Application fee.

Each application filed pursuant to section 16-137 shall be accompanied by an application fee of seventy-five dollars ($75.00).

Sec. 16-140. Fees not refundable.

No portion of any fee collected under this division shall be returned after a permit has been issued.

Sec. 16-141. Requirements for issuance.

No permit required by this division shall be issued unless an inspection by the city reveals that the establishment complies with each of the following requirements:

(1) A recognizable and readable sign posted at the main entrance identifying the establishment as a human display establishment, provided that all such signs shall comply with the sign requirements of the city;

(2) Minimum lighting provided in accordance with the city building code and, in addition, at least one artificial light of not less than forty (40) watts provided in each enclosed room or area where the activities of human display take place;

(3) Minimum ventilation provided in accordance with the city building code;

(4) Proof of compliance with all applicable provisions of this Code;

~~(5)   A recognizable and readable sign posted in a conspicuous place near the main entrance stating that patrons are prohibited from disrobing on the premises, and further prohibiting anyone under the age of seventeen (17) years from the premises, as an employee or a patron.~~

~~Sec. 16-142. Transferability.~~

~~Upon sale or transfer of any human display establishment, the permit shall become null and void, and the buyer or the transferee shall make a new application pursuant to the provisions of this division.~~

~~Sec. 16-143. Investigation of applicants; approval by chief of police.~~

~~(a)   Upon receiving the application for a permit, the chief of police shall conduct an investigation into the applicant's connections with criminal elements, as well as the applicant's personal and criminal history. The chief of police may, in his discretion, require a personal interview of the applicant, as well as such further information, identification and physical examination of the applicant as shall bear upon the investigation.~~

~~(b)   In the case of applications for human display establishments the chief of police shall cause to be conducted an investigation of the premises where the business is to be carried on, for the purpose of ensuring that such premises comply with all requirements set forth in this article and with the regulations of public health, safety and welfare.~~

~~(c)   Before any permit shall be issued under this division, the chief of police shall sign his approval of the application.~~

~~Sec. 16-144. Issuance or denial.~~

~~The chief of police shall issue a permit required by this division within thirty (30) days of receipt of the application unless he finds that:~~

~~(1)   The correct permit fee has not been tendered to the city and, in the case of a check or bank draft, such has not been honored with payment upon presentation;~~

~~(2)   The operation, as proposed by the applicant, if permitted, would not comply with all applicable laws, including but not limited to, the city's building, zoning and health regulations;~~

(3)    The applicant, manager, or other person in charge of the business has been convicted of a misdemeanor or felony involving moral turpitude, unless the conviction occurred at least five (5) years prior to the date of application;

(4)    Where an applicant is a corporation, that any stockholder who holds more than ten (10) percent of the stock of said corporation, or any officers and directors, or any partners, including limited partners if the applicant is a partnership, has been convicted of a misdemeanor or felony involving moral turpitude unless such conviction occurred at least five (5) years prior to the date of application;

(5)    The applicant has knowingly made any false, misleading or fraudulent statement of fact in the permit application or in any document which is required by the city in conjunction with such application;

(6)    The applicant has had any human display establishment, massage business, or other similar permit or license revoked unless such revocation occurred at least five (5) years prior to the date of application.

Sec. 16-145. Appeal; hearing.

(a)    Notice of denial of a permit required by this division shall be given to the applicant in writing, with the reasons for such denial specified in the notice. The notice shall be mailed by certified mail, return receipt requested, or served by personal service.

(b)    The applicant shall have ten (10) days from the date of receipt of such notice to appeal the decision of the chief of police to the city council by filing such a request with the city clerk. The city clerk shall provide for a council hearing on such appeal at the earliest available regular council meeting, and shall notify the applicant and chief of police of the date of such council hearing. Subsequent to the hearing, city council shall vote either to order the issuance of the permit or to sustain the actions of the chief of police.

Sec. 16-146. Display.

It shall be unlawful for an individual to act as an entertainer in a human display establishment, unless the chief of police has issued an entertainer's permit to said individual and said individual has paid a fifty dollar ($50.00) nonrefundable processing fee to the city.

Every person to whom a permit is granted under this division shall display the permit in a conspicuous place so that it may be readily seen by persons who enter the premises.

Sec. 16-147. Term.

All permits issued pursuant to this division shall be valid for one (1) year from the date of issue reflected thereon.

Sec. 16-148. Suspension, revocation.

A permit issued pursuant to this division may be suspended for a period of up to ninety (90) days or may be revoked by the city council upon recommendation of the chief of police, based upon evidence that the holder of the permit has violated any of the provisions set forth in this article, or has violated or permitted on the premises the infraction of any law of the state, the violation of which constitutes grounds for denial, suspension or revocation under the provisions set forth in this article. No permit shall be revoked until after a hearing is held before city council to determine just cause for the revocation. Notice of such hearing shall be given in writing and shall be served at least ten (10) days prior to the date of the hearing.

Sec. 16-149. Special requirements for permit to manage.

Any person who manages a human display establishment shall obtain a permit by submitting the applicable information required by section 16-138 and tendering his application fee of twenty-five dollars ($25.00).

Sec. 16-150. Qualifications to receive permit on behalf of owner or operator.

Unless a duly authorized agent is disqualified under one or more provisions of this article, an agent who performs the following acts shall be qualified to receive on behalf of an owner or operator a human display permit:

(a)     The duly authorized agent pays a three hundred and seventy-five dollar ($375.00) nonrefundable processing fee to the city;

(b)     The duly authorized agent submits a diagram;

(c)     Allows an inspection of the premises as directed in section 21-406 herein; and,

(d)     The duly authorized agent performs those acts detailed at section 21-401 if the duly authorized agent is also applying for a manager's permit or on-site manager's permit.

Secs. 16-151--16-160. Reserved.]

**SECTION 3**. Chapter 21, Article I, Section 21-22, entitled "Adult Arcades," of the City Code of San Antonio is hereby deleted in its entirety to be merged with Chapter 21, Article IX entitled Sexually Oriented Businesses; deletions are signified by strikeout text and bracketed to read as follows:

[Ch. 21-22 (a)*Definitions.* As used in this section, the following words shall have the meanings herein ascribed, unless the context of their use clearly indicates another meaning:

*Adult arcade* shall mean any "premises" to which members of the public or members of any club, group or association are admitted and permitted to use one or more arcade devices.

*Adult arcade permit* shall mean the original license issued to a duly authorized agent of an owner or operator of an adult arcade as lawful authority to operate an adult arcade.

*Arcade device* shall mean any coin, currency or slug operated or electronically or mechanically controlled machine or device that dispenses or effectuates the dispensing of "entertainment" featuring specified sexual activities or specified anatomical areas in exchange for payment of any consideration in a viewing room or space of less than one hundred fifty (150) square feet of floor space.

*Duly authorized agent* shall mean an individual who has actual authority to file an application with the chief of police for an adult arcade permit on behalf of any association, corporation, individual, owner, operator, or person and who meets the requirements set forth in subsection (j) below.

*Employee* shall mean any person employed by an employer in consideration for monetary compensation or profit.

*Entertainment* shall mean: any live exhibition, display or performance; any still picture(s) or movie picture(s), whether mechanically, electrically or electronically displayed; or any combination of the foregoing, in which specified sexual activities are depicted.

*Hearing officer.* shall mean the judge of the city municipal court assigned to preside over environmental and code enforcement matters. If that judge is unable to fulfill this task for any reason, or if no judge is so assigned, then the presiding municipal court judge shall designate a judge to act as the hearing officer. The "hearing officer" shall exercise those powers authorized under the Texas Local Government Code, the Charter of the City of San Antonio, and this Code, as appropriate in the furtherance of his or her duties.

*Individual* shall mean only a natural person.

*Manager* shall mean any individual holding a position in a adult arcade with the responsibility for direct supervision of the operation of the adult arcade and for monitoring and observing the areas of the adult arcade to which customers or patrons are admitted at times during which the adult arcade is open for business; or, at times during which customers or patrons are on the premises of the adult arcade.

*Manager's permit* shall mean a license issued to an individual as lawful authority to act as a manager of an adult arcade.

*Operator* shall mean the "individual" who is principally in charge of the management of the "adult arcade."

*Owner* shall include, but not be limited to, any equitable owner, any person having a

possessory right to the land or building or the person occupying it, any part owner, joint owner, tenant in common, tenant in partnership, joint tenant or tenant by the entirety.

*Premises* shall mean a building; provided that if a building has been physically divided into separate units that each has its own individual means of ingress or egress to the exterior of the building and which are offered by lease or otherwise for separate use and control, then "premises" shall refer to each such separate unit.

*Specified sexual activities* or *specified anatomical areas* shall mean human genitals in a state of sexual stimulation or arousal; acts of human masturbation, sexual intercourse or sodomy; fondling or other erotic touching of human genitals, pubic regions, buttock or female breast, or any combination thereof.

(b)    *Permits required.*

(1) It shall be unlawful for an individual, person, corporation, operator, owner, or association to operate an adult arcade within the city, unless the chief of police has issued an adult arcade permit to the adult arcade's duly authorized agent.

(2) It shall be unlawful for an individual to act as a manager of an adult arcade, unless the chief of police has issued a manager's permit to said individual.

(3) The adult arcade permit will be issued to the duly authorized agent, but will be issued in the name of the adult arcade and will be specific for that location only.

(c)    *Process for requesting a permit.*

(1) The chief of police shall create a form for each type of permit consistent with the provisions of this article.

(2) An applicant may obtain a form during any business day at the city police headquarters. The chief of police shall accept applications for filing Monday through Friday, excluding holidays, between the hours of 9:00 a.m. and 3:00 p.m. at the city police headquarters. Applications shall not be accepted at any other time or on any other day.

(3) At the time that the chief of police receives an application, the applicant shall submit and the chief of police shall take the photograph of the applicant at the city police headquarters.

(4) All photographs shall be used to perform a background investigation and for the purpose of photographic identification of permit holders, and shall be kept on record with the chief of police while the applicant possesses a valid permit, and for a period of not less than five (5) years after the expiration, revocation, or denial of the permit.

(5) All photographs of applicants shall be destroyed at the expiration of five years after the expiration, revocation, or denial of the permit, but all applicants submitting new applications shall be required to comply with photograph and fingerprint requirements in this section.

(6) All applicants shall submit to a criminal background check for the purpose of verifying the information requested in subsections (i) and (j).

(d)    *Use of a permit.*

SR
Item # 16A
12/06/12

(1)A permit issued under the provisions of this article is not a property interest but shall be a purely personal privilege that is subject to revocation or suspension if the respondent is found to have violated a provision of this article.

(2)By authority of this article, by accepting a permit, the holder of the permit consents that the chief of police or a peace officer may detain the individual on the premises of an adult arcade for the purpose of verifying identity and permit.

(3)Any owner or operator that enjoys the benefit of an adult arcade permit or has accepted a permit through a duly-authorized agent consents, by authority of this article, that the chief of police or peace officer may enter the premises of the adult arcade at any time an owner, operator, manager, floor-manager, employee, customer or patron is on the premises to conduct an investigation or inspect the premises for the purpose of performing any duty imposed by this article.

(4)All peace officers shall have the duty to enforce the provisions of this article and cooperate with the chief of police in the enforcement hereof.

(5)It shall be unlawful for an individual to use the permit of another. It shall be unlawful for an individual holding a permit to transfer that permit for use by another individual. Permits are valid for one adult arcade only and may not be transferred, to any other establishment or location.

(e) *Amendment.*

(1)An applicant or permit holder shall file an application amendment with the chief of police any time a prior statement contained on an application is known to the applicant to be materially incomplete or inaccurate because of changed circumstances.

(2)An applicant or permit holder shall file an application amendment with the chief of police any time a prior statement contained on an application is known to the applicant to be materially incomplete or inaccurate because the statement was incomplete or inaccurate at the time of filing.

(3)The time in which to file an application amendment is:

a.Thirty (30) calendar days from the date of changed circumstances; or,

b.Thirty (30) calendar days from the date that applicant knows that a prior statement was incomplete or inaccurate.

(4)It shall be unlawful for an applicant or permit holder to fail to comply with this section.

(f) *Non-refundable fees.* All fees required in this article are non-refundable. Payment of the fees shall be by cashier's check or money order and made payable to the city.

(g) *Authority to file suit.* The city attorney is authorized, at his discretion, in addition to or in lieu of any other remedies set forth in this article, or under any other applicable state statute, to commence an action to enjoin the violation of this article or to enjoin any person, corporation, or association from establishing, operating, or maintaining a public place or adult arcade contrary to the provisions herein, or in any other statute or doctrine.

(h) ~~Types of permits, calculation of deadlines, time and delivery.~~

(1)~~The chief of police shall issue the permits to an applicant who qualifies under the provisions of this article by 2:00 p.m. on the 30th business day after receipt of an application;~~

(2)~~The chief of police shall issue a notice of rejection to an applicant who fails to qualify under the provisions of this article by 2:00 p.m. on the 30th business day after receipt of an application;~~

(3)~~Unless the applicant requests in writing and at the time of filing an application that the permit or notice of rejection be kept at the city police headquarters for personal retrieval, the chief of police shall send the permit or notice of rejection to the applicant's address, as listed in the application, via United States Postal Service, certified mail, return receipt requested, deposited with United States Postal Service and postmarked on or before 2:15 p.m. on the final day allowed in subsection (h)(2).~~

(4)~~If personal retrieval was properly requested for a permit or notice of rejection, the chief of police shall have the permit or notice of Rejection available for pick up from the time of its issuance until 4:00 p.m. on the on the final day allowed in subsection (h)(2). If the applicant fails to retrieve either the permit or notice of rejection by 4:00 p.m., the chief of police shall then send the permit or the notice of rejection to the applicant's address, as listed in the application. The means of sending the permit or notice of rejection shall be via the United States Postal Service, certified mail, return receipt requested. The mail shall be deposited with the United States Postal Service not later than 4:30 p.m. on the final day allowed in subsection (h)(2).~~

(5)~~When determining a date upon which a deadline exists in this article, calculate the specified number of days as follows:~~

a.~~The day the act or event was performed or scheduled to occur after which the designated period of time begins to run is not to be included. The designated period of time begins on the next day.~~

b.~~The last day of the period so computed is to be included, unless it is a Saturday, Sunday or legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday or legal holiday.~~

(6)~~Unless otherwise stated in this article, where delivery of any notice to applicant is required, delivery shall be by personal delivery at the applicant's address, as listed in the application, or by sending it to the applicant's address, as listed in the application, via the United State Postal Service, certified mail, return receipt requested.~~

(7)~~Unless otherwise stated in this article, delivery by the United States Postal Service shall be presumed to be on the third business day after depositing the mail with the United States Postal Service, unless the applicant has proof to the contrary.~~

(8)~~In this article, the last known address of an applicant, contained in an application or an amendment, is presumed as the correct address. Whenever delivery to an address is authorized or mandated under the provisions of this article, delivery to the presumed correct address is sufficient to comply under this article.~~

(9)~~Personal delivery or delivery by mail as prescribed in this article, shall be prima facie evidence that the chief of police has fulfilled his duty to deliver a permit, notice of rejection,~~

notice of intention to revoke/suspend permit, notice of revocation/suspension, or denial of revocation/suspension.

(10) The chief of police shall issue the requested permit if the chief of police fails to deliver notice of rejection and does not have prima facie proof of the delivery or deposit, and if the applicant files a written request for issuance of the permit not later than 2:00 p.m. on the tenth business day following the deadline to issue a permit or notice. If the applicant fails to timely file a request for the permit upon the failure of the chief of police to issue the notice, then the applicant shall waive any appeal or cause of action that he may have herein.

(11) The deadlines imposed by this article may be extended by the mutual agreement of the chief of police and the pertinent individual, except as follows:

a. The chief of police shall not agree to shorten any deadline;

b. The chief of police shall not agree to extend any deadline wherein there is an express provision in this article that a failure to comply with the deadline shall result in an applicant's waiver of appeal or cause of action; or,

c. As otherwise prohibited within this article.

(i)   *Qualifications and specifications   Manager's permit.*

(1) Unless an individual is disqualified under one or more of the provisions of this article, an individual who performs the following acts shall be qualified for a manager's permit:

a. Pay a one hundred dollar ($100.00) non-refundable processing fee to the city;

b. Answer under oath accurately and completely the requests for information contained on the form for the permit;

c. Provide proof of identity by presenting to the chief of police a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof; and

d.
Appear at the place designated by the chief of police and submit to being photographed and fingerprinted by the chief of police. Fingerprints taken pursuant to this section shall be used for purposes of the background check.

(2) If on the basis of substantial evidence, the chief of police concludes that one of the following conditions exists then an individual shall be disqualified from receiving the manager's permit:

a. The individual is a sex offender as defined in § 46.001 of the Texas Business and Commerce Code;

b. the individual is convicted of a felony, not included in subsection a., in any jurisdiction during the preceding ten (10) years;

c. The individual has been convicted of or been placed on deferred adjudication for a specified criminal act, not included in subsection a., in any jurisdiction, during the preceding ten (10)

years:

d. The individual has submitted false information on a form for the permit or the individual has responded falsely to inquiries in a background investigation;

e. At the time of application, the individual is disqualified from receiving or holding a permit pursuant to subsections (m) or (n) of this article; or

f. At the time of application, the individual has a suspended permit or has had a permit revoked within the past calendar year, pursuant to subsection (m).

(3) An individual who applies for a manager's permit shall provide the following information:

a. The information contained in a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof;

b. The name and address of the adult arcade for which the individual requests the permit;

c. Whether the individual has been convicted of or placed on deferred adjudication for an offense for which the individual is subject to registration under Chapter 62, Texas Code of Criminal Procedure, along with a list of each of the aforementioned offenses;

d. a list of each misdemeanor, excluding traffic offenses, or felony, not included in subsection (i)(3)c., for which the individual has been convicted or received deferred adjudication during the past ten (10) years;

e. A list of each misdemeanor, excluding traffic offenses, or felony, not included in subsection (i)(3)c., for which the individual is under community supervision at the time of application;

f. The name and address of each court and jurisdiction listed in response to subsection (i)(3)e.;

g. The name and address of each court and jurisdiction for those offenses that the individual is under community supervision at the time of application in response to subsection (i)(3)d.; and

h. A signed waiver and authorization allowing the chief of police to request criminal history reports from pertinent federal, state, and local law enforcement for the individual submitting an application.

(4) A manager's permit shall consist of one photographic identification card that contains the following information: a photograph of the manager; the name and address of the adult arcade at which the manager's permit is valid; the full name of the manager; the date of issuance; the effective date; and, the date of expiration.

(j) *Same – Adult arcade permit.*

(1) It shall be unlawful to apply for an adult arcade permit, unless the individual who applies is a duly authorized agent and files an accurate and complete sworn affidavit at the time of filing the application in which the individual declares:

a. The individual's identity;

b. The identity of the association, corporation, individual, owner, operator, or person on whose behalf the individual seeks an adult arcade permit;

c. The identity of the adult arcade;

d. The identity of each association, corporation, individual, owner, operator or person with an ownership interest in the adult arcade;

e. The basis for the actual authority as being one of the following:

1. The individual is the sole owner or operator;

2. The individual is the president, chief executive officer, or equivalent of a corporation that is an owner or operator and the individual also owns a majority of the issued voting stock for the corporation;

3. Reserved.

4. The individual is the president, chief executive officer, or equivalent of a corporation that is an owner or operator and the individual attaches a corporate resolution from the corporation's board of directors or from a majority of the corporation's voting stockholders wherein is authorized the application for the permit;

5. The individual is a general partner of a partnership that is an owner or operator; or,

6. The individual is a manager (as defined by the Texas Limited Liability company Act) of a Texas Limited Liability Company that is an owner or operator;

f. State that all information is on the basis of personal knowledge; and

g. State that all information is true and correct and acknowledge that a false statement is subject to criminal penalty, including but not limited to charges of perjury.

(2) Unless a duly authorized agent is disqualified under one or more provisions of this article, an agent who performs the following acts shall be qualified to receive on behalf of an owner or operator an adult arcade permit:

a. The duly authorized agent pays a three hundred and seventy five dollars ($375.00) nonrefundable processing fee to the city;

b. The duly authorized agent submits a diagram;

c. Allows an inspection of the premises as directed in subsection (l); and

d. The duly authorized agent performs those acts detailed at subsection (i), if the duly authorized agent is also applying for a manager's permit.

(3) If on the basis of substantial evidence, the chief of police concludes that one or more of the following conditions exists then a duly authorized agent shall be disqualified from receiving an adult arcade permit for the adult arcade for which the permit is sought:

a. If any owner or operator of the Adult Arcade is a sex offender as defined by Section 46.001 of

the Texas Business and Commerce Code;

b.If any owner or operator of the adult arcade is convicted of a felony in any jurisdiction in the past ten (10) years;

c.If any owner or operator of the adult arcade has been convicted of or received deferred adjudication for a specified criminal act in any jurisdiction in the past ten (10) years;

d.If the duly authorized agent, owner, or operator of the adult arcade has refused to allow an inspection of the premises of the adult arcade by at least three (3) business days prior to a deadline to issue a permit or notice of rejection;

e.If the duly authorized agent, owner, or operator of the adult arcade has failed to submit to the department of development services a diagram by at least ten (10) business days prior to the deadline to issue a permit or notice of rejection;

f.If the duly authorized agent or any individual, owner, or operator of the adult arcade has submitted false or incomplete information on an application form for the permit or has falsely responded to inquiries in a background investigation;

g.If the duly authorized agent or any owner or operator of the adult arcade has previously had an adult arcade permits revoked pursuant to subsection (m);

h.If the duly authorized agent or any owner or operator of the adult arcade has an adult arcade permit that is currently suspended pursuant to subsection (m);

i.If the adult arcade fails to conform to the configuration requirements set forth in subsection (p); or

j.If the duly authorized agent or any owner or operator of the adult arcade has had an adult arcade permit revoked within the preceding year or is otherwise disqualified from receiving or holding a permit pursuant to subsections (m) or (n).

(k)*Ratification and term of permits.*

(1)The city council accepts, ratifies, and endorses the following acts of the chief of police:

a.All acts performed by the chief of police between the date of this article's passage and the effective date of this article so long as the acts are consistent with the duties, powers, and provisions of this article;

b.All permits issued by the chief of police between the date of this article's passage and the effective date of this article so long as the permits contain the following: the actual date of issuance, an effective date of permit that coincides with the effective date of this article; and, an expiration date of permit that is one calendar year from the effective date of permit.

(2)Each adult arcade permit and manager's permit issued shall be valid for a period of one calendar year from the date of issuance, unless otherwise stated in this article, at which time it shall expire, unless the permit is sooner revoked or surrendered.

(3)Each adult arcade permit and manager's permit shall be subject to renewal as of its expiration

date by filing a renewal application.

(4) Each renewal application must be filed at least forty-five (45) calendar days prior to the date of expiration.

(5) Except as expressly indicated herein, all of the deadlines, fees, and procedures applicable to any application and permit shall also be applicable to each renewal application and renewal permit.

(6) The chief of police shall not require another photograph for a renewal application unless he cannot verify the identity of the applicant who filed a renewal application; or, unless the applicant filing a renewal application is different from the individual who filed the original application.

(l) *Inspections and background checks; deadlines.*

(1) The chief of police shall conduct all necessary background investigations prior to the expiration of thirty (30) calendar days from the receipt of an application for an adult arcade permit or manager's permit for the purpose of determining whether each applicant is in compliance with the provisions of this article, and based upon those findings, the chief of police shall either issue or reject the permit in accordance with the deadlines found in subsection (h).

(2) The chief of police, the director of the department of development services, or their designated representatives, and any other pertinent city department or the department's designated representatives, shall complete all inspections required for an application prior to the expiration of thirty (30) calendar days from receipt of the application for an adult arcade permit or manager's permit, and based upon those findings, the chief of police shall either issue or reject the permit in accordance with the deadlines found in subsection (h).

(3) If an application is rejected based on an inspection of the premises only, the chief of police shall provide to the duly authorized agent a notice of rejection within ten (10) business days following the deadline to issue a permit or notice.

(4) An applicant may request a re-inspection only if the duly authorized agent:

a. Submits the request, by certified mail, return receipt requested, within ten (10) business days subsequent to the receipt of the decision of the chief of police; and

b. Pays to the city a nonrefundable inspection fee of one hundred and fifty dollars ($150.00) with the submission of the request.

(5) The chief of police, the director of the department of development services, or their designated representatives, and any other pertinent city department or the department's designated representatives, shall complete a re-inspection and either issue or reject a permit based upon a request for re-inspection not more than fifteen (15) business days from the date of receipt of the request for re-inspection. If upon re-inspection the chief of police concludes the noted problems have not been remedied, the chief of police shall issue a notice of rejection and notify applicant in accordance with subsection (h).

(6) Notwithstanding the provisions of this section, an applicant whose application is rejected

under the provisions of this article may petition to any lawfully established court having jurisdiction on the subject matter without first applying for a re-inspection.

(m)Procedure for administrative hearings; revocation or suspension of permits.

(1)Standing.

a.Regarding a manager's permit, only the permit holder/applicant and the chief of police shall have standing in an administrative revocation/suspension proceeding or in any appeal of a denial, revocation or suspension.

b.Regarding an adult arcade permit, the owner and/or operator of the establishment and the chief of police have standing in an administrative revocation/suspension proceeding or any appeal of a denial, revocation or suspension.

(2)Conditions resulting in revocation/suspension of adult arcade permit.

a.An adult arcade permit shall be subject to revocation if, after the issuance of the initial permit:

1.Any permit holder of the adult arcade permit is convicted of a felony or specified criminal act;

2.Any material information on the permit application which would likely have resulted in a denial of the permit is found to have been false when submitted; or

3.An individual or entity not listed on the permit application becomes a duly authorized agent, owner or operator of the adult arcade and such agent, owner or operator would have caused a disqualification if listed on the original permit application.

b.An adult arcade permit shall be subject to revocation/suspension if, after the issuance of the initial permit, one or more employees of the adult arcade have a cumulative total among them of three (3) or more convictions for felonies or specified criminal acts where the acts that lead to the convictions occurred on the licensed premises within a consecutive twelve (12) month period.

c.An adult arcade permit shall be subject to revocation/suspension if, after the issuance of the initial permit, any employees of that establishment have a cumulative total among them of three (3) or more convictions or deferred adjudications for any violations of this article wherein the violations that lead thereto have all occurred on the licensed premises on at least three (3) separate calendar dates within a consecutive six (6) month period:

(3)Conditions resulting in revocation/suspension of manager's permit.

a.A manager's permit shall be subject to revocation if, after the issuance of the initial permit, the permit holder is convicted of a felony or specified criminal act.

b.A manager's permit shall be subject to revocation/suspension if, after the issuance of the initial permit, the permit holder has a cumulative total of three (3) or more convictions or deferred adjudications in the name of the permit holder for any violations of this article wherein the violations occurred on at least three (3) separate calendar dates within a consecutive twelve (12) month period:

(4)Notice of intention to revoke/suspend permit. If, on the basis of information and belief, the

chief of police concludes that any permit issued under this article is subject to revocation or suspension because of the existence of any of the conditions set forth in subsections (m)(2) and/or (m)(3), the chief of police shall initiate a revocation/suspension proceeding by sending a notice of intention to revoke/suspend permit to the permit holder which shall detail the following:

a. The factual basis for the intention to revoke/suspend the permit;

b. The provisions of this article alleged to be violated;

c. The calendar date by which any request for contested case hearing is due; and

d. The person or office with which any request for contested case hearing must be filed and the address at which any such request must be filed.

(5) Request for contested hearing required within ten (10) business days. The permit holder shall have ten (10) business days from the date of receipt of a notice of intention to revoke/suspend permit in which to file a request for a contested case hearing with the person or office indicated on the notice of intention to revoke/suspend permit. The request shall be filed via U. S. Postal Service, certified mail, return receipt requested, or via personal delivery. A copy of the request shall be sent on the same date to the chief of police via U. S. Postal Service, certified mail, return receipt requested, or via personal delivery. If filed by mail, the request shall be considered timely filed if the green return receipt card shows the item was properly addressed and received by the addressee on or before the tenth business day from the date the permit holder received the notice of intention to revoke/suspend permit. If filed by delivery, the permit holder shall be responsible for obtaining a copy of the request stamped with the date of filing by the person or office receiving the request.

(6) Hearing within twenty (20) business days of request. Upon proper request as set forth above, and except in the case of a continuance granted in accordance with the requirements of this article, each party with standing to contest is entitled to an opportunity to respond and to present evidence and argument on each allegation in the notice of intention to revoke/suspend permit at a hearing to be held within twenty (20) business days after the date of filing of their request as shown by the date of filing stamped on the request.

(7) Result of request or failure to request hearing. If no request for contested case hearing is timely filed, the hearing officer shall revoke the permit in question and issue a notice of revocation. If a request for contested case hearing is timely filed, the hearing officer shall conduct a contested case hearing in accordance with the provisions of this article.

(8) Notice of hearing not less than ten (10) business days from hearing date. Notice of a hearing in a contested case shall be sent or delivered to the person requesting a hearing not less than ten (10) business days from the date of the hearing; shall include a statement of the time, place, and nature of the hearing; and shall be sent via personal delivery or U. S. Postal Service, certified mail, return receipt requested to the last known address of the person. Notice of a hearing in a contested case shall be considered timely if properly addressed and postmarked not less than ten (10) business days from the date of the hearing and received not less than seven (7) business days from the date of the hearing as evidenced by the delivery date noted on the green return receipt card.

(9)Representation by counsel. Each party to a contested case is entitled to:

a.The assistance of counsel, at the party's expense, before the hearing officer; or

b.Expressly waive the right to assistance of counsel in writing or on the record before the hearing officer.

(10)Status of permit during hearing. While a contested case is pending, and prior to the final decision of the hearing officer regarding revocation or suspension, a permit remains valid unless:

(a)It expires without timely application for renewal;

(b)It is voluntarily withdrawn or surrendered by the permit holder; or

(c)The permit holder commits an act or omission contrary to the provisions of this Article which otherwise invalidates the permit.

(11)Applicable rules. Except as otherwise indicated herein, the Texas Rules of Evidence and the Texas Rules of Civil Procedure shall apply to a contested case.

(12)The following additional rules shall apply to any contested case hearing pursuant to this article:

a.In each contested case before the hearing officer, the city attorney, or his designated representative shall represent the chief of police.

b.A contested case may not be continued, except upon express written agreement of all parties to the contested case, or upon showing of good cause for a period not to exceed twenty (20) days.

c.Ex parte communications in connection with any issue of fact or law between any party and the hearing officer are strictly prohibited, except on notice and opportunity for each party to participate.

d.In a contested case, either party may request a court reporter to transcribe the hearing. The party requesting a transcript of the hearing shall bear the cost for production of the transcript.

e.If there be any conflict between the Texas Rules of Evidence and the Texas Rules of Civil Procedure and the rules set forth in this article, the rules in this article shall prevail.

(13)Record. The record in a contested case shall include the following:

a.File stamped copy of notice of intention to revoke/suspend permit;

b.The request for a hearing and any written response to the notice of intention to revoke/suspend permit;

c.A statement of matters officially noticed;

d.Questions and offers of proof, objections, and rulings on them;

e.Each decision, opinion, or report prepared by the hearing officer at the hearing;

f.All documents, data and other evidence submitted to or considered by the hearing officer used

in making his or her decision; and

g. The record shall be filed with the municipal court for the city.

(14) Decision of the hearing officer.

a. If on the basis of substantial evidence the hearing officer finds that any of the conditions set forth in subsections (m)(2)a. or (m)(3)a. exist for the permit in question, the hearing officer shall revoke the permit.

b. If on the basis of substantial evidence the hearing officer finds that any of the conditions set forth in subsections (m)(2)b., (m)(2)c., or (m)(3)b. exist for the permit in question, and the permit holder has not had the permit suspended in the previous twelve (12) calendar months, the hearing officer shall suspend the permit for a period of sixty (60) calendar days.

c. If on the basis of substantial evidence the hearing officer finds that any of the conditions set forth in subsections (m)(2)b., (m)(2)c., or (m)(3)b. above exist for the permit in question and the permit holder has had the permit suspended within the previous twelve (12) calendar months, the hearing officer shall revoke the permit.

d. If the hearing officer does not find the existence of any conditions for which the permit in question may be suspended or revoked under this article, the hearing officer shall deny revocation or suspension.

The notice of intention to revoke/suspend permit shall be sent to the permit holder via personal delivery or sent to the permit holder's last known address via United States ("U.S.") Postal Service, certified mail, return receipt requested, and a copy shall be filed with the hearing officer or his designee for this purpose.

This section shall not apply during any judicial appeal following the decision of the hearing officer.

(n) *Notice of revocation/suspension.*

(1) A final decision or order by the hearing officer shall be issued in writing, and shall:

a. Include findings of fact and conclusions of law, separately stated;

b. Contain a concise and explicit statement of the underlying facts supporting the findings;

c. If a party submits proposed findings of fact, the decision or order shall include a ruling on each proposed finding;

d. Be rendered not later than five (5) business days after the date on which the hearing is finally closed;

e. Be provided to all parties via personal delivery or via United States Postal Service, certified mail, return receipt requested; and

f. Be considered timely if:

1. For personal delivery, a party receives notice not later than three (3) business days from the

date on which the decision is rendered; or

2.For postal delivery, the decision or order is postmarked not later than three (3) business days from the date on which the decision is rendered.

(2)Following a final decision in a contested case, any revocation or suspension of the permit in question shall take effect upon the date of delivery of the notice of the hearing officer's decision or such other date as may be set by the hearing officer and stated in the notice.

(3)Any act authorized by a permit shall be unauthorized and in violation of this article upon and after the effective date of any suspension of the permit until the suspension expires.

(4)Any act authorized by a permit shall be unauthorized and in violation of this article upon and after the effective date of any revocation of the permit unless and until a new permit, if any, is applied for and granted pursuant to the terms of this article. If a permit has been revoked because of crimes or activities occurring on the premises of an adult arcade, any and all permit holders of the adult arcade permit which has been revoked are disqualified from receiving or holding any permit under this article for a period of one calendar year from the effective date of the revocation.

(5)If an adult arcade permit is suspended or revoked because of crimes or activities occurring on the premises of the adult arcade, each and every individual, person, or association listed with the city as a duly authorized agent, owner, or operator of a adult arcade at the time of any suspension or revocation of the adult arcade permit for that establishment shall be considered to have had an adult arcade permit suspended or revoked as if they held the permit in their own name for purposes of determining whether they are qualified to participate in another permit application under this article. If an adult arcade permit is suspended or revoked because of crimes or activities of one or more of the permit holders which did not occur on the licensed premises, then only that individual(s) shall be considered to have had an adult arcade permit suspended or revoked for purposes of determining whether they are eligible to participate in another permit application under this section 21-22.

(o).Judicial appeal.

(1)If a respondent is entitled to receive a permit under the provisions of subsections (i) or (j), and if after the applicant files a request for the permit pursuant to the provisions of subsection (h)(10) the chief of police refuses or fails to issue the permit, then the respondent shall have thirty (30) calendar days from the expiration of the deadline in subsection (h)(10) in which he may file suit for a writ of mandamus or other available remedy in a Judicial District Court of Bexar, County, Texas.

(2)If an application is denied or a permit revoked or suspended, then:

a.A respondent shall have forty-five (45) calendar days from the date of receipt of notice of rejection or notice of revocation in which to file suit for writ of mandamus or other available remedy in a Judicial District Court of Bexar County, Texas; and

b.The respondent shall waive any appeal or cause of action if suit is not filed within the time specified herein.

c.Any appeal to state court of this ordinance is entitled to preferential setting and to be set for trial at the earliest practicable date. Any appeal from the decision of the trial court shall be accelerated.

(p)*Configuration of arcades; lighting; etc.* The following minimum standards shall apply to the interior design of the premises of all adult arcades opening for business after the effective date of this section:

(1)At least one manager's station shall be located within the premises and such location shall provide an employee, operator, agent, or owner on duty, an unobstructed view of every area of the adult arcade to which any patron may be permitted access for any purpose, other than toilet facilities, from said manager's station. If an adult arcade has two (2) or more manager's stations, the interior design of the adult arcade shall be configured to provide an unobstructed view of each area of the adult arcade to which any patron may be permitted access for any purpose other than toilet facilities, from at least one of the manager's stations. The view required must be by direct line of sight from the manager's station. Restrooms may not contain any arcade device.

a.It shall be the duty of the owners, operators, agents or employees of the adult arcade to ensure that the view area specified in this section remains, unobstructed by merchandise, display racks or other materials at all times that any patron is present in the adult arcade to ensure that no patron is permitted access to any area of the adult arcade which is not within this view area. At all times that any patron is present in the adult arcade, it shall be the duty of the owners, operators, agents or employees of each adult arcade to ensure that at least one person who is charged with responsibility for the operation of the adult arcade is on duty at the adult arcade and situated in the manager's station with the view area designated herein.

b.It shall be an exception to the requirements of this subsection that the area of the adult arcade in question is being video monitored in accordance with subsection (p)(2)b.

(2)Video monitoring alternative.

a.No adult arcade shall equip any areas into which patrons may be permitted access, other than toilet facilities, with interior doors, screens, curtains or any other opaque coverings which could obstruct the view into an area in which patrons may be permitted except as allowed under subsection (p)(2)b. It shall be the duty of the owners, operators, agents, and employees of the adult arcade to ensure that each area into which patrons may be permitted access, other than toilet facilities, is not equipped with interior doors, screens, curtains, or any other opaque coverings which could obstruct the view into each area in which patrons may be permitted access except as allowed in section (p)(2)b.

b.As an alternative to subsection (p)(2)a., a room in which a patron is allowed to view a video on the premises may be equipped with an interior door if the owners, operators, agents and employees of the adult arcade:

1.Maintain continuous videotape monitoring of each room in which a patron is located;

2.Make the tapes of each of the videotaped rooms available to police officers upon request for immediate inspection during any hours during which the establishment is open for business;

~~3.Keep and maintain the tapes of each videotaped room for review by law enforcement personnel without notice, for a period of two (2) weeks;~~

~~4.Maintain the configuration requirements and other requirements set forth in this article.~~

~~(3)During hours of operation, the light fixtures shall be kept on at a sufficient intensity to illuminate by not less than three (3) foot candle as measured at four (4) feet above the level of the floor and at every area where customers or patrons are allowed. Lighting shall not be subject to intensity control by means of rheostat or other device, but shall be maintained at constant intensity in every area where customers or patrons are allowed. Light control, including on and off switches, shall be maintained at a central location by the manager, and shall not be accessible to customers or patrons. It shall be the duty of the owners, operators, agents or employees of the adult arcade to ensure that the illumination specified in this section is maintained at all times that any patron is present in the adult arcade or at all times the adult arcade is open for business.~~

~~(4)Each adult arcade must comply with the following configuration requirements. Nothing herein shall allow the placement of interior doors except as allowed in subsection (p)(2)b.~~

~~a.Excepting a door that may serve as an entrance or exit to the building of the establishment for each area to which a customer or patron on the premises is allowed access, excepting the interior of lavatories: any interior door allowed herein must be made of clear glass that is no thicker than one-half inch or of wood that is no thicker than one and one-half (1") inches. All wooden doors must contain a clear glass window that is no thicker than one-half inch and at least twelve (12) inches wide by twelve (12) inches high. The window must be situated on the door at a height no less then four and one-half (4") feet and no greater then six (6) feet from the ground. The window may not be partially or fully covered in any manner. Excepting the doorknob, no interior door may be made of metal, reinforced by metal, or be thicker than allowed herein. The door to any interior room may only have one throw from the doorknob or in any other manner latch from more than one place into a striker plate whenever the door is closed; and, excepting one lock that forms part of the doorknob and is neither a deadbolt nor chain, no interior door may have a dead bolt, chain, and/or any type of lock. The city must be provided with a master key to all interior doors in each establishment, which may be used by law enforcement personnel to open and inspect any room or rooms at any time without notice during operating hours.~~

~~b.For each area to which a customer or patron is allowed access, excepting a doorframe that may serve as an entrance or exit to the establishment, each interior doorframe to a wooden door may not be reinforced with any type of metal, excepting a cubic area that is part of the striker plate in the dimensions of not more than: six (6) inches long by two (2) inches wide by six (6) inches high.~~

~~c.Excepting conduits for plumbing, heating, air conditioning, ventilation, electrical service, or cable or satellite television, no opening is allowed in any wall; partition; screen; lavatory stall; or any other barrier between viewing areas or toilets.~~

~~d.The conduits for plumbing, heating, air conditioning, ventilation, electrical service, and cable or satellite television must be so screened or otherwise configured to prevent their use as openings that would allow any portion of an individual to penetrate the wall or barrier between the viewing areas or toilets.~~

e.All interior walls of any areas into which patrons may be allowed access shall be continuous from floor to ceiling with no apertures, holes or other openings. It shall be the duty of the owners, operators, agents, or employees of the adult arcade to ensure that all interior walls of each area into which patrons may be allowed access is continuous from floor to ceiling with no apertures, holes or other openings.

(5)It shall be the duty of the owners, operators, agents, or employees to ensure that each separate room or compartment of the adult arcade into which patrons may be allowed access will be prominently displayed to ordinary public view with signs as follows:

a.A poster or sign containing an AIDS information telephone number and stating, "Stop AIDS avoid contact with sexual fluids and dirty needles."

b.A poster or sign containing an AIDS information telephone number and stating, "AIDS is transmitted by sex without condoms or by sharing needles."

c.Alternatively, a poster or sign with a similar message as approved in writing by the city health director may be displayed.

d.In rooms in which video surveillance is being used, a sign notifying persons that video surveillance is being used in the rooms.

e.A signs warning of activities which constitute criminal behavior in the rooms as approved by the vice department.

f.Each sign required by this section shall be in lettering not less than one-half (") inches in height unless otherwise approved by the health director.

g.Signage shall be in both the English and Spanish languages.

(6)Each adult arcade shall be required to prominently display in the entryway to the facility available to ordinary public view literature concerning sexually transmitted diseases and/or AIDS to be provided by the health department.

(7)It shall be the duty of the owners, operators, agents, or employees to ensure that literature concerning sexually transmitted diseases and/or AIDS which is provided by the health department is permanently and conspicuously displayed to ordinary public view in the adult arcade and made available to the patrons of the arcade.

(q)*Violations; other prohibited conduct; enforcement.*

(1)A person having any duty under this article commits an offense if he knowingly or recklessly fails to fulfill that duty or fails to comply with any provision of this section or with any of the requirements hereof.

(2)It shall be unlawful for any owner, operator, agent, or employee present in an adult arcade to knowingly or recklessly allow more than one patron or client at a time to enter or occupy a room in which an arcade device is located. A sign shall be posted at the entryway of each such room which notifies patrons that only one patron at a time may enter or occupy this room.

(3)It shall be unlawful for any owner, operator, agent, or employee present in an adult arcade to

knowingly or recklessly allow or permit any of the specified sexual activities to occur in the adult arcade or for any owner, operator or employee to knowingly or recklessly allow or permit the adult arcade to be used as a place in which solicitation for any act of specified sexual activities occur.

(4)In case any premises are erected, constructed, reconstructed, altered, repaired, converted, maintained or used in violation of this section, the city, in addition to imposing criminal sanctions provided therefore, may institute any appropriate action or proceeding, including an action for abatement of a nuisance under state statute, or judicial proceedings to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct or abate such violation, or to prevent such illegal act, conduct or use.

(5)Any persons violating any provisions of this section shall be guilty of a misdemeanor. Each day upon which such a violation occurs constitutes a separate offense. Each structure erected around an arcade device that does not comply with the provisions of this section constitutes a separate violation. Upon conviction, each violation shall be punishable by a fine of not less than two hundred fifty dollars ($250.00) nor more than two thousand dollars ($2,000.00).

(6)Businesses currently operating as adult arcades shall come into compliance with the terms of this article within ninety (90) days of passage of this article, except that those adult arcades which do not meet the configuration requirements of this article shall have a one-year amortization period to allow for recoupment of their investment in their expenditures on interior configuration during which they may operate under the configuration requirements of the city's previous ordinance. During the amortization period, all requirements of this article which do not require reconfiguration of the structure of the adult arcade shall apply. ]

**SECTION 4.** Chapter 21, Article IX of the City Code of San Antonio, Texas is hereby deleted in its entirety; deletions are signified by strikeout text and bracketed to read as follows:

[NUDITY AND SEMI-NUDITY PROHIBITED AT PUBLIC PLACES AND LICENSING OF HUMAN DISPLAY ESTABLISHMENTS*

DIVISION 1. GENERALLY

Sec. 21-200. Definitions.

The definitions contained at Section 35, Appendix A of the Unified Development Code shall control in all zoning matters. The definitions contained in this article shall control in prohibiting the conduct proscribed by the provisions of this article and shall control in the licensing scheme contained in this article. When used in this article, the following words, terms and phrases shall have the meaning ascribed to them, except where the context clearly indicates a different meaning.

*Act* shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Actor* shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Adult store* shall have the same meaning as "human display establishment".

*Adverse secondary effects* shall mean any one of the following conditions caused by the existence of or geographic proximity to a human display establishment:

(1) The existence of violations of law, including but not limited to: prostitution, promotion of prostitution, aggravated promotion of prostitution, compelling prostitution, obscenity, sale or distribution or display of material harmful to a minor, sexual performance by a child, employment harmful to children, possession or promotion of child pornography, public lewdness, indecent exposure, indecency with a child, sexual assault, aggravated sexual assault, pandering, loitering, trespass, or any violation of Chapter 481 of the Texas Health and Safety Code, criminal attempt to conduct a violation of law, criminal conspiracy to conduct a violation of law, or solicitation to conduct a violation of law.

(2) Diminution of surrounding property value.

(3) Unsanitary health conditions resulting from improper disposition of bodily secretions thereby posing a threat of spreading infection or disease.

(4) Those adverse secondary effects found to exist by the Texas Legislature at Section 243.001(a) of the Texas Local Government Code.

(5) Those adverse secondary effects described by the United States Fifth Circuit Court in J&B Entm't, Inc. v. City of Jackson, Miss., 152 F.3d 362 (5th Cir. 1998) and by the United States Supreme Court in City of Erie v. Pap's A.M., 529 U.S. 277 (2000) and by the City of Jackson, Mississippi and the City of Erie, Pennsylvania as described in the legal opinions therein.

*Alcoholic beverage* shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Application* shall mean any request for permit that is completed accurately and filed in compliance with the provisions of this article.

*Application amendment* shall mean a document wherein is contained a change to the information provided on an application or renewal application.

*Applicant* shall mean an individual or owner operator who files an application.

*Association* shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Background investigation* shall mean the review, analysis, and inquiry made by the chief of police in response to an application for a permit.

*Chief* or *chief of police* shall mean the director of the city police department or such person as may be authorized by him to carry out tasks such as those set forth herein.

*Commence an action* shall mean to file a cause of action with a court of any jurisdiction, to pursue an appeal in any appellate or supreme court and/or to obtain a settlement of a cause of action.

*Closed corporation.* shall mean a corporation whose stock is not offered or sold on an exchange.

*Community supervision.* shall mean the same as that term is defined at Article 42.12, Section 2 of the Texas Code of Criminal Procedure or as may hereafter be amended therein.

*Configuration* or *configured.* shall mean the interior layout or interior construction design of a human display establishment.

*Contested case.* as used in this article, shall mean a proceeding in which the legal rights, duties, or privileges of a party are to be determined by the hearing officer after an opportunity for an adjudicative hearing.

*Conviction* as used in this article, shall mean the written declaration of a court, signed by the trial judge, that the defendant has been adjudged guilty of the offense in question, regardless of the punishment assessed. The term "convicted of" shall mean the person has a conviction on his record for the offense or activity stated.

*Corporation* shall mean a business entity created pursuant to statute and capable of issuing common or preferred stock. It shall include a closed corporation. In addition, the term shall also mean the same as that term is defined at Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Culpable mental state.* Unless specifically stated otherwise, the culpable mental state for a violation of this article is recklessness, as that term is defined by Section 6.03 of the Texas Penal Code.

*Customer* shall mean any individual who:

(1)    Enters a human display establishment or any portion thereof by the payment of an admission fee, membership fee or any other form of consideration or gratuity;

(2)    Enters a human display establishment or any portion thereof and purchases, rents, or otherwise partakes of any merchandise, goods, food, drink, entertainment or other services offered therein; or,

(3)    Enters a human display establishment or any portion thereof based upon a private membership to a club or as a guest of an owner, operator, manager, floor-manager, employee, dancer, entertainer, or model.

*Dancer* shall have the same meaning as the term "entertainer".

*Denial of revocation/suspension* shall mean a document wherein is contained the refusal of the hearing officer to revoke a permit and the reasons for the refusal.

*De novo review* shall mean the same as that term is defined by state courts or in state jurisprudence regarding the standard of proof used in review of decisions in administrative proceedings.

*Diagram* shall mean a drawing sufficient to depict each area of a human display establishment, whether open or closed, accessible or inaccessible to customers or patrons, including but not limited to, each entrance, exit, room, bar, kitchen, office, stairway, or lavatory. The drawing must indicate the square footage of the entire establishment, along with square footage of each enclosed area within the establishment. Each area should also be labeled by usage.

*Dressing room* shall mean an enclosed area where entertainers are allowed to change clothes and where customers or patrons shall be prohibited from viewing or entering.

*Employee* shall mean:

(1)    Any person who renders any service whatsoever to any customer of a human display establishment, works in or about a human display establishment, or conducts any business in and for a human display establishment; and, either receives or expects to receive compensation from the operator, owner, manager, floor-manager, or customers of the human display establishment.

(2)    Excepted from this definition of "employee" are the following: Providers of legitimate accounting services, legal services, deliveries of goods for immediate use by the human display establishment, and maintenance services for the human display establishment.

(3) ~~By way of example, rather than limitation, the term "employee" includes the operator and other management personnel, clerks, dancers, models and other entertainers, food and beverage preparation personnel, door persons, bouncers, security personnel, and cashiers. This definition is intended to include the conventional employer-employee relationships, independent contractor relationships, agency relationships, and any other scheme or system whereby the "employee" has an expectation of receiving compensation, tips, or other benefits from the human display establishment, operator, owner, manager, floor manager, or customers in exchange for services provided.~~

*Entertain or entertaining* ~~shall mean the act of knowingly or intentionally posing, knowingly or intentionally dancing, or knowingly or intentionally appearing for the purpose of being observed or viewed for any reason while in a state of nudity, semi-nudity or while engaging in specified sexual activities. The term shall also include the above acts if the person posing, dancing, or appearing would be semi-nude but for a device used as a cover over the nipples and/or areola of the female breast.~~

*Entertainment* ~~shall mean the noun of the term "entertain".~~

*Entertainer* ~~shall mean any individual, male or female, who poses, dances, or knowingly or intentionally appears for the purpose of being observed or viewed for any reason by any individual while in a state of nudity, semi-nudity, or while engaging in specified sexual activities. The term shall also include an individual who would be semi-nude but for a device used as a cover over the nipples and/or areola of the female breast.~~

*Entertainer's permit* ~~shall mean a license issued to an individual as lawful authority to act as an entertainer in a human display establishment.~~

*File or filed or filing.* ~~shall mean personal delivery to the chief of police at the city police headquarters or personal delivery to the clerk of a court.~~

*Floor manager* ~~shall mean any individual holding a position in a human display establishment with the responsibility for direct supervision of the operation of the human display establishment and for monitoring and observing the areas of the human display establishment to which customers or patrons are admitted at times during which the human display establishment is open for business; or, at times during which customers or patrons are on the premises of the human display establishment.~~

*Floor manager's permit*

shall mean a license issued to an individual as lawful authority to act as a floor manager for a human display establishment.

*Form*

shall mean one or more pages wherein exist a uniform method of eliciting from an applicant the information required for an application in accordance with the provisions of this article. The referenced pages shall include a verification or jurat where the applicant can affirm under oath and on the basis of personal knowledge that the information provided is accurate and complete; however, the referenced pages shall specifically exclude the affidavit required of an owner-operator.

*Hearing officer*

shall mean the judge of the city municipal court assigned to preside over environmental and code enforcement matters. If that judge is unable to fulfill this task for any reason, or if no judge is so assigned, then the presiding municipal court judge shall designate a judge to act as the hearing officer. The "hearing officer" shall exercise those powers authorized under the Texas Local Government Code, the City Charter, and this Code, as appropriate in the furtherance of his or her duties.

*Human display establishment*

shall mean those premises, including those subject to regulation under Chapters 54 or 243 of the Texas Local Government Code, as amended, wherein there is conducted the business of furnishing, providing or procuring dancers, entertainers, or models who appear live at said premises in a state of nudity or semi-nudity, or while performing specified sexual activities. This term shall also include premises wherein dancers, entertainers, or models appear live, if said dancers, entertainers, or models would appear semi-nude but for a device used as a cover over the nipples and/or areola of the female breast.

(1)  The following are examples of adult stores: gentleman's club, topless club, sex parlor, nude studio, lingerie modeling studio, love parlor.

(2)  Excepting the prohibition against nudity and semi-nudity, premises used solely for the following purposes are exempt from regulation under this article: bookstores, movie theaters, or video stores.

*Human display permit*

shall mean the original license issued to an owner-operator of a human display establishment as lawful authority to operate a human display establishment.

*Identify*

shall mean the act of stating or declaring an identity.

*Identity*

shall mean: the true and correct name, address, telephone number, and facsimile number of the pertinent association, corporation, individual, operator, person, or owner.

*Individual*

shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Interior door*

shall mean any opening between interior rooms through which foot traffic may occur and which serves as an entrance or an exit between the rooms, excluding electrically cooled rooms used as food storage devices, liquor cabinets, and food pantries.

*Invest*

shall mean to provide money, bartering, or in-kind services toward a human display establishment in anticipation or expectation of generating a profit or incurring a tax benefit at some time in the future.

*Investment*

shall mean the noun of the term "invest".

*Lavatory*

shall mean a room where exists a sink for washing hands and a toilet.

*Manager,*

unless otherwise specified herein, shall mean any individual who supervises or directs any employee, floor-manager, contractor, or sub-contractor of a human display establishment.

*Manager's affidavit*

shall mean a sworn statement based upon personal knowledge by a manager of a human display establishment wherein is stated:

(1)   That the attached copy of the photographic identification of an applicant for a temporary entertainer's permit is a true and correct copy of the photographic identification of said applicant;

(2)   The identity of the human display establishment at which the applicant shall perform under the temporary entertainer's permit;

(3)   The dates upon which the applicant is scheduled to perform; and,

(4)   The information in the attached application is true and correct and the applicant is qualified to receive the requested permit.

*Manager's permit*

shall mean a license issued to an individual as lawful authority to act as a manager of a human display establishment.

*Model*

shall have the same meaning as the term "entertainer".

*Notice* or *notice of rejection*

shall mean a document wherein the chief of police informs an individual that an application or renewal application is denied and also specifies therein the reasons for the rejection.

*Notice of intention to revoke/suspend permit*

shall mean a document wherein the chief of police notifies a permit holder of his intention to revoke the permit.

*Notice of revocation* or *notice of revocation/suspension*

shall mean a document wherein is contained the decision of the hearing officer to revoke/suspend a permit based upon the allegations contained in a notice of intention to revoke/suspend permit.


*Nude* or *nudity* or *state of nudity*

shall mean a state of dress which fails to fully and opaquely cover the anus, crevice of the buttocks, genitals, pubic region, or perineum anal region, regardless of whether the nipple and areola of the human breast are exposed.

*Operator*

shall mean the following:

(1)   An individual who owns a human display establishment, if the establishment is a sole proprietorship or if the establishment is an assumed name of an individual;

(2)    Each individual partner of a general partnership, if the partnership owns any interest in a human display establishment;

(3)    Each individual who is a general partner or a limited partner of a limited partnership, if the partnership owns any interest in a human display establishment;

(4)    Each individual who is an officer or director of a corporation, if the corporation owns any interest in a human display establishment;

(5)    Each association, individual, or person who is a stockholder of a closed corporation, if the closed corporation owns any interest in a human display establishment;

(6)    Each manager, as defined in the Texas Limited Liability Company Act, of a limited liability company, if the company owns any interest in a human display establishment; and.

(7)    Each association, if the association owns any interest in a human display establishment.

*Owner*

shall mean each association, individual, person, partner, closed corporation, corporation, business entity, or manager (as defined by the Texas Limited Liability Company Act) who owns an interest in a human display establishment.

*Owner-operator*

shall mean:

(1)    That owner or each member of a group of owners whose aggregate ownership interest in a human display establishment equals or exceeds thirty-five (35) percent; and,

(2)    Who have been designated by a human display establishment pursuant to the provisions of this article as being a member of the class authorized to apply for and, if otherwise qualified, receive a human display permit.

*Patron*

shall have the same meaning as the term "customer".

*Permit*

shall mean either a human display permit, a manager's permit, a floor-manager's permit, an entertainer's permit, a temporary manager's permit, a temporary floor-manager's permit, a temporary entertainer's permit, or any other permit defined in this article, depending upon the context used.

*Permit holder*

shall mean the individual who applied for and received a manager's permit, floor-manager's permit, entertainer's permit, temporary manager's permit, temporary floor-manager's permit, temporary entertainer's permit, or, in the case of a human display permit, the owner-operator of the human display establishment. It shall also include any individual who applied for and received any permit defined in this article, depending upon the context used.

*Person*

shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Public place*

shall mean all locations owned by or open to the general public inclusive of the sheds, enclosures, buildings, improvements, and fixtures upon the location. This term includes but is not limited to any human display establishment, restaurant, tavern, bar, club or other establishment. This term also includes those locations that are restricted to specific members, restricted to adults, or restricted to patrons invited to the location, whether or not an admission charge is levied.

*Renewal application*

shall mean an application to re-establish a valid and existing permit for another term.

*Renewal permit*

shall mean a valid and existing permit that is re-established for another term.

*Respondent*

shall mean:

(1)     That individual or owner-operator who holds:

         a.      A human display permit;

         b.      A manager's permit;

         c.      A floor-manager's permit; or

         d.      An entertainer's permit; and,

(2)     Defends his own permit in a revocation/suspension proceeding or appeal thereof.

*Revocation proceeding or revocation/suspension proceeding*

shall mean the process by which any permit required herein is or may be revoked or suspended.

*Semi-nude* or *semi-nudity* or *state of semi-nudity*

~~shall mean the exposure of the post puberty female breast so long as the following anatomical areas of an individual are fully and opaquely covered: the anus, genitals, pubic region and the perineum anal region of the human body. The term "semi-nude" shall also mean the exposure of the post puberty female breast if any device is worn as a cover over only the nipples and/or areola of the post puberty female breast so long as the following anatomical areas of an individual are fully and opaquely covered: the anus, genitals, pubic region and the perineum anal region of the human body.~~

~~*Specified sexual activities*~~

~~shall mean sexual stimulation or arousal of an individual's genitals; masturbation of one's self or of another individual; sexual intercourse between individuals; sodomy; fellatio; cunnilingus; bestiality; fondling or other erotic touching of the anus, genitals or the pubic region; fondling or other erotic touching of the post puberty female breast of another; or excretory functions performed in conjunction with any of the preceding acts.~~

~~*Specified criminal act*~~

~~shall mean any of the following offenses:~~

~~(1)   As described in Chapter 21 of the Texas Penal Code or as may hereafter be amended therein:~~

~~a.   Public lewdness;~~

~~b.   Indecent exposure; or,~~

~~c.   Indecency with a child.~~

~~(2)   As described in Chapter 22 of the Texas Penal Code or as may hereafter be amended therein:~~

~~a.   Sexual assault; or,~~

~~b.   Aggravated sexual assault.~~

~~(3)   As described in Chapter 43 of the Texas Penal Code or as may hereafter be amended therein:~~

~~a.   Prostitution;~~

~~b.   Promotion of prostitution;~~

~~c.   Aggravated promotion of prostitution;~~

~~d.   Compelling prostitution;~~

~~e.   Sale, distribution or display of harmful material to a minor;~~



f. Sexual performance by a child;

g. Employment harmful to a child; or,

h. Possession or promotion of child pornography.

(4) As described in Chapter 481 of the Texas Health and Safety Code or as may hereafter be amended therein.

(5) As described at Chapter 15 of the Texas Penal Code or as may hereafter be amended therein:

a. Criminal attempt to conduct any of the aforementioned offenses;

b. Criminal conspiracy to conduct any of the aforementioned offenses;

c. Criminal solicitation to conduct any of the aforementioned offenses; or,

d. Criminal solicitation of a minor to conduct any of the aforementioned offenses that are also identified in Section 15.031 of the Texas Penal Code.

*Stage name*

shall mean an alias used by an entertainer during the course and scope of entertaining.

*Substantial evidence*

shall mean the same as that term is defined by state courts or in state jurisprudence regarding the standard of proof used in review of decisions in administrative proceedings.

*Temporary entertainer*

shall mean an individual who holds a temporary entertainer's permit.

*Temporary entertainer's permit*

shall mean an entertainer's permit that is valid for a reduced period of time, as set forth in this article.

*Temporary floor manager*

shall mean an individual who holds a temporary floor-manager's permit.

*Temporary floor-manager's permit*

shall mean a floor manager's permit that is valid for a reduced period of time, as set forth in this article.

*Temporary manager*

shall mean an individual who holds a temporary manager's permit.

*Temporary manager's permit*

shall mean a manager's permit that is valid for a reduced period of time, as set forth in this article.

(Ord. No. 101022, § 1A(§ 21-200), 6-9-05)

Sec. 21-201. Configuration of buildings.

An individual or entity violates this article if he operates a human display establishment which fails to meet the configuration requirements in this section. The layout or interior construction design of any such establishment must include each of the following:

(1) Excepting a door that may serve as an entrance or exit to the building of the human display establishment and excepting the interior of lavatories, for each area to which a customer or patron on the premises is allowed access, the following requirements are applicable:

  a. Each interior door must be made of clear glass that is no thicker than one-half inch or of wood that is no thicker than one and one half ( 1/2) inches.

  b. All wooden doors must contain a clear glass window that is no thicker than one-half inch and at least twelve (12) inches wide by twelve (12) inches high. Said window must be unobstructed at all times and situated on the door at a height no less then four and one-half (4 1/2) feet and no greater then six (6) feet from the ground.

  c. Excepting the doorknob, no interior door may be made of metal, reinforced by metal, or be thicker than allowed herein.

  d. No interior door may have more than one throw from the doorknob or in any other manner latch from more than one place into a striker plate whenever the door is closed.

  e. Excepting one lock that forms part of the doorknob and is neither a deadbolt nor chain, no interior door may have a deadbolt, chain, and any type of lock.

  f. Each interior doorframe to a wooden door may not be reinforced with any type of metal, excepting a cubic area that is part of the striker plate in the dimensions of not more than: six (6) inches long by two (2) inches wide by six (6) inches high.

(2) Excepting conduits for plumbing, heating, air conditioning, ventilation, electrical service, cable or satellite television, or food or drink service, no opening is allowed:



a. In any wall;

b. Partition;

c. Screen;

d. Lavatory stall;

e. Dressing room; or,

f. Any other barrier between viewing areas or toilettes.

(3) The conduits for plumbing, heating, air conditioning, ventilation, electrical service, and cable or satellite television must be so screened or otherwise configured to prevent their use as openings that would allow any portion of an individual to penetrate the wall or barrier between the viewing areas or toilettes.

(4) During hours of operation, the light fixtures shall be kept on at a sufficient intensity to illuminate by not less than one foot-candles as measured at four (4) feet above the level of the floor and at every area where customers or patrons are allowed.

(5) Excepting the lavatories, no area to which patrons or customers have access, shall be less than three hundred (300) square feet.

Sec. 21-202. Remedial effect.

The provisions of this article are remedial and they shall, notwithstanding any other provision of this Code, be construed to apply to each association, corporation, individual, operator, owner, owner-operator, person, or human display establishment, now existing and as hereafter shall exist.

Sec. 21-203. Supplemental effect.

The provisions of this article are supplemental and shall be cumulative with all other laws and ordinances applicable in any manner to an association, corporation, individual, operator, owner, owner-operator, person, or human display establishment, now existing and as hereafter shall exist.

Sec. 21-204. Construction of terms.

Whenever the context requires herein, the following construction shall apply: the use of the masculine shall mean the feminine and vice versa; the use of the singular shall mean the plural and vice versa; and, the reference to any class of individual or person shall include each individual or person within the class, unless specifically excepted by the text of the reference. For example, when referencing an "owner-operator", each individual or person within the class

of "owner-operator" is being referenced, unless the text of the section specifically excepts all but one within the class.

Sec. 21-205. Nudity and semi-nudity prohibited in a public place.

(a)   It shall be unlawful for an individual to intentionally or knowingly appear in a state of nudity in a public place.

(b)   It shall be unlawful for an individual to intentionally or knowingly appear in a state of semi-nudity in a public place.

(c)   It shall be unlawful for an individual, person, corporation, or association that manages, or operates a human display establishment to intentionally or knowingly allow an individual to appear on the premises of said establishment in a state of nudity.

(d)   It shall be unlawful for an individual, person, corporation, or association that manages, or operates a human display establishment to intentionally or knowingly allow an individual to appear on the premises of said establishment in a state of semi-nudity.

(e)   It shall be unlawful for an owner-operator of a human display establishment to intentionally or knowingly allow an individual to appear on the premises of said establishment in a state of nudity.

(f)   It shall be unlawful for an owner-operator of a human display establishment to intentionally or knowingly allow an individual to appear on the premises of said establishment in a state of semi-nudity.

Sec. 21-206. Permits required.

(a)   It shall be unlawful for an individual, person, corporation, operator, owner, owner-operator, or association to operate a human display establishment within the city, unless the chief of police has issued a human display permit to the human display establishment's owner-operator.

(b)   It shall be unlawful for an individual to act as a manager of a human display establishment, unless the chief of police has issued a manager's permit to said individual.

(c)   It shall be unlawful for an individual to act as a floor-manager of a human display establishment, unless the chief of police has issued a floor-manager's permit to said individual.

(d) ~~It shall be unlawful to offer live entertainment at a human display establishment within the city, unless the chief of police has issued a human display permit to the human display establishment through said establishment's owner operator.~~

(e) ~~The human display permit will be issued to the owner operator, but will be issued in the name of the human display establishment and will be specific for that location only.~~

(f) ~~It shall be unlawful for an individual to act as an entertainer in a human display establishment, unless the chief of police has issued an entertainer's permit to said individual.~~

~~Sec. 21-207. Exceptions and affirmative defenses.~~

(a) ~~It is an exception to the application of section 21-205 that at the time of the state of nudity the actor was a person engaged in expressing a matter of serious literary, artistic, scientific, political or social value.~~

(b) ~~It is an affirmative defense to the application of section 21-205 of this article that at the time of the state of nudity the actor was:~~

(1) ~~An individual, person, or, in the case of subsections 21-205(3)-(6), an association, who owns, manages, operates or appears nude in a public place that is a business operated by or employing a licensed psychologist, licensed physical therapist, licensed athletic trainer, licensed cosmetologist, licensed massage therapist, or licensed barber engaged in performing functions authorized under the lawful license held;~~

(2) ~~An individual, person, or, in the case of subsections 21-205(3)-(6), an association, who owns, manages, operates or appears nude in a public place that is a business operated by or employing a licensed physician or licensed chiropractor engaged in practicing lawfully the healing arts; or~~

(3) ~~An individual, person, or, in the case of subsections 21-205(3)-(6), an association, who owns, manages, operates or appears nude in a public place that is a business licensed as a tattoo studio or a body piercing studio and was engaged in practices authorized under the license.~~

(c) ~~It is an exception to the application of section 21-205 of the article that at the time of the state of semi-nudity the actor was:~~



(1)    A person engaged in expressing a matter of serious literary, artistic, scientific, political or social value;

(2)    An individual exposing a breast for the purpose of breastfeeding an infant or child;

(3)    A dancer, entertainer, or model who holds an entertainer's permit and is entertaining at a lawfully permitted human display establishment.

(d)    It is an affirmative defense to the application of section 21-205 that at the time of the state of semi-nudity the actor was:

(1)    An individual, person, or, in the case of subsections 21-205(3)-(6), an association, who owns, manages, operates or appears semi-nude in a public place that is a business operated by or employing a licensed psychologist, licensed physical therapist, licensed athletic trainer, licensed cosmetologist, licensed massage therapist, or licensed barber engaged in performing functions authorized under the lawful license held;

(2)    An individual, person, or, in the case of subsections 21-205(3)-(6), an association, who owns, manages, operates or appears semi-nude in a public place that is a business operated by or employing a licensed physician or licensed chiropractor engaged in practicing lawfully the healing arts; or,

(3)    An individual, person, or, in the case of subsections 21-205(3)-(6), an association, who owns, manages, operates or appears semi-nude in a public place that is a business licensed as a tattoo studio or a body piercing studio and was engaged in practices authorized under the license.

(e)    It is an exception to the application of subsections 21-205(4)-(6) of this article that at the time of the state of semi-nudity: the individual, owner-operator, person, or association who owns, manages or operates the public place lawfully possessed a human display permit, and, the individual who appeared in a state of semi-nudity was a dancer, entertainer, or model who held an entertainer's permit and was entertaining in said human display establishment.

Sec. 21-208. Penalties and enforcement.

(a)    The violation of any provision of this article, including the doing of anything which is herein prohibited or declared to be unlawful or the failure to do anything or perform any

duty which is required herein, shall be punishable as a class C misdemeanor with a fine not to exceed two thousand dollars ($2,000.00), as provided by Section 54.001 of the Local Government Code.

(b)   Each day of any violation shall constitute and be punishable as a separate offense.

(c)   The refusal to issue a permit based on ineligibility shall not prohibit the imposition of a criminal penalty and the imposition of a criminal penalty shall not prevent the refusal to issue a permit based on ineligibility.

(d)   The revocation or suspension of a permit shall not prohibit the imposition of a criminal penalty and the imposition of a criminal penalty shall not prevent the revocation or suspension of a permit.

Sec. 21-209. Process for requesting a permit.

(a)   The chief of police shall create a form for each type of permit consistent with the provisions of this article.

(b)   An applicant may obtain a form during any business day at the city police headquarters. The chief of police shall accept applications for filing monday through Friday, excluding holidays, between the hours of 9:00 a.m. and 3:00 p.m. at the city police headquarters. Applications shall not be accepted at any other time or on any other day.

(c)   At the time that the chief of police receives an application, the applicant shall submit and the chief of police shall take the photograph of the applicant at the city police headquarters.

(d)   All photographs shall be used to perform a background investigation and for the purpose of photographic identification of permit holders, and shall be kept on record with the chief of police while the applicant possesses a valid permit, and for a period of not less than five (5) years after the expiration, revocation, or denial of the permit.

(e)   All photographs of applicants shall be destroyed at the expiration of five (5) years after the expiration, revocation, or denial of the permit, but all applicants submitting new applications shall be required to comply with photograph and fingerprint requirements in this section.

(f)   All applicants shall submit to a criminal background check for the purpose of verifying the information requested in sections 21-226—21-229.

Sec. 21-210. Use of a permit.

(a)   A permit issued under the provisions of this article is not a property interest but shall be a purely personal privilege that is subject to revocation or suspension if the respondent is found to have violated a provision of this article.

(b)   By authority of this article, by accepting a permit, the holder of the permit consents that the chief of police or a peace officer may detain the individual on the premises of a human display establishment for the purpose of verifying identity and permit.

(c)   Any owner, operator, or owner-operator that enjoys the benefit of a human display permit or has accepted a permit through the owner-operator consents, by authority of this article, that the chief of police or peace officer may enter the premises of the human display establishment at any time an owner, operator, owner-operator, manager, floor-manager, employee, customer or patron is on the premises to conduct an investigation or inspect the premises for the purpose of performing any duty imposed by this article.

(d)   All peace officers shall have the duty to enforce the provisions of this article and cooperate with the chief of police in the enforcement hereof.

(e)   It shall be unlawful for an individual to use the permit of another. It shall be unlawful for an individual holding a permit to transfer that permit for use by another individual. Excepting an entertainer's permit and a floor manager's permit, permits are valid for one human display establishment only and may not be transferred to any other establishment or location.

Sec. 21-211. Amendment

(a)   An applicant or permit holder shall file an application amendment with the chief of police any time a prior statement contained on an application is known to the applicant to be materially incomplete or inaccurate because of changed circumstances.

(b)   An applicant or permit holder shall file an application amendment with the chief of police any time a prior statement contained on an application is known to the applicant to be materially incomplete or inaccurate because the statement was incomplete or inaccurate at the time of filing.

(c)   The time in which to file an application amendment is:

    (1)   Thirty (30) calendar days from the date of changed circumstances; or,

    (2)   Thirty (30) calendar days from the date that applicant knows that a prior statement was incomplete or inaccurate.

(d) It shall be unlawful for an applicant or permit holder to fail to comply with this section.

Sec. 21-212. Non-refundable fees.

All fees required in this article are non-refundable. Payment of the fees shall be by cashier's check or money order and made payable to the city.

Sec. 21-213. Authority to file suit.

The city attorney is authorized, at his discretion, in addition to or in lieu of any other remedies set forth in this article, or under any other applicable state statute, to commence an action to enjoin the violation of this article or to enjoin any person, corporation, or association from establishing, operating, or maintaining a public place or human display establishment contrary to the provisions herein, or in any other statute or doctrine.

Sec. 21-214. Duties of owners, employees and customers.

(a) Notwithstanding any other provision in this article, owners are not criminally culpable for violations of employees, except that owners remain criminally culpable for their own and personal violations.

(b) Each manager, floor manager, entertainer, and owner-operator shall comply with the provisions of this article.

(c) Each temporary manager, temporary floor-manager, and temporary entertainer shall comply with the provisions of this article.

(d) Each employee, customer, and patron shall comply with the provisions of this article.

(e) Each manager, floor manager, temporary manager, and temporary floor-manager, and owner-operator shall ensure that each employee, customer, and patron complies with the provisions of this article.

(f) It shall be unlawful for a manager, floor-manager, temporary manager, or temporary floor-manager, or owner operator to allow the conduct described in subsections 21-235(5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15), or (16) of this article. Whenever an employee, customer, or patron fails to comply subsections 21-235(5), (6), or (7), (8), (9), (10), or (12), (13), (14), (15), or (16) of this article, it shall be presumed that a manager or floor-manager, temporary manager, or temporary floor-manager, allowed the prohibited conduct if the manager, floor manager, temporary manager, or temporary floor-manager was present on the premises at the time of the violation.



(g) — Three-foot rule.

    (1) — It shall be unlawful for any person to intentionally or knowingly entertain or appear in a state of semi-nudity on the premises of a human display establishment unless the person is more than three (3) feet from any patron or customer.

    (2) — It shall be unlawful for a patron or customer on the premises of a human display establishment to intentionally or knowingly approach within three (3) feet or less of a person who is entertaining or appearing in a state of semi-nudity.

(h) — It shall be unlawful for any person entertaining or appearing in a state of semi nudity at a human display establishment to accept a gratuity unless it is placed in a receptacle provided for receipt of gratuities or delivered hand-to hand without touching and with the hand of each person extended at least one and one-half ( 1/2) feet away from the body of that person. The receptacle may not be located on any person or their clothing.

(i) — It shall be unlawful for any licensee hereunder or operator of a human display establishment to allow any room within the establishment to be used for the purpose of live semi-nude entertainment unless the room is marked with a sign in typeface no less than one inch in length per letter in such a manner that it is plainly visible to the general public at a height of no less that four (4) feet and no more than six (6) feet from the ground stating, "Three Foot Rule - It is a violation of the San Antonio CityCode for a customer or patron to intentionally or knowingly approach within three feet or less of any person who is in a state of semi-nudity or entertaining."

(j) — It shall be unlawful for any employee to be in a state of semi-nudity, or to perform specified sexual activities while in the presence of any customer or patron and while in an area within the human display establishment not subject to the direct line of site of a manager or floor-manager.

(k) — It shall be unlawful for any employee to entertain while in a lavatory, or in a stairway or elevator used as access between floors.

(l) — It shall be the duty of the owner-operator to ensure that there exists at least one manager for a human display establishment and it shall be the duty of each owner-operator or manager of a human display establishment to ensure there are a sufficient number of managers or floor managers -- stationed in such a manner -- so that all patrons and

customers are in view of at least one floor manager at all times, excepting patrons and customers in the lavatory.

(m) It shall be unlawful for a manager, floor manager, owner-operator, or operator on the premises of any human display establishment to allow any individual to be on the premises of a human display establishment who is younger than eighteen (18) years of age. It shall be presumed that a manager, or floor manager allowed the individual to be on the premises if the manager, or floor manager was present on the premises at the time the underage individual was present.

(n) It shall be unlawful for any individual to be on the premises of any Human display establishment who is younger than eighteen (18) years of age.

(o) It shall be the duty of the owner-operator, or operator of any human display establishment to conform the interior of the premises to the specifications provided in this article.

(p) It shall be the duty of the owner-operator of any human display establishment to notify the chief of police and the director of development services, or his duly authorized representative, that the location is ready for the inspections required under this article prior to the expiration of any applicable deadline contained herein.

(q) It shall be the duty of the owner-operator of a human display establishment to post, display, and maintain free of obstruction, the following notices with typeface no less than one inch in length per letter, at entrance of the establishment, in such a manner that they are plainly visible to the general public at a height of no less than four (4) feet and no more than six (6) feet from the ground:

   (1) "Three Foot Rule - It is a violation of the San Antonio City Code for a customer or patron to intentionally or knowingly approach within three feet or less of any person who is in a state of semi-nudity or entertaining."

   (2) "No Minors - No individual under the age of eighteen is allowed inside the premises."

   (3) "Patrons' conduct is being observed by management. Illegal conduct will not be permitted."

   (4) The notices shall include the appropriate city ordinance number.

(r) It shall be unlawful to fail to post the notices required by subsection 21-235(15).

Secs. 21-215—21-225. Reserved.



DIVISION 2. PERMITS

Sec. 21-226. Types of permits, calculation of deadlines, time and delivery.

(a)    The chief of police shall issue the following types of permits to an applicant who qualifies under the provisions of this article by the following time periods:

    (1)    For a human display permit or manager's permit, by 2:00 p.m. on the thirtieth business day after receipt of an application;

    (2)    For a floor-manager's permit or entertainer's permit, by 2:00 p.m. on the tenth business day after receipt of an application;

    (3)    For a temporary entertainer's permit, a temporary floor-manager's permit, and a temporary manager's permits, issued by the times indicated hereinafter.

(b)    The chief of police shall issue a notice of rejection to an applicant who fails to qualify under the provisions of this article by the following time periods:

    (1)    For a human display permit or manager's permit, by 2:00 p.m. on the thirtieth business day after receipt of an application;

    (2)    For a floor-manager's permit or entertainer's permit, by 2:00 p.m. on the tenth business day after receipt of an application;

    (3)    For a temporary entertainer's permit, by 3:00 p.m. on the first business day after receipt of the application.

(c)    Unless the applicant requests in writing and at the time of filing an application that the permit or notice of rejection be kept at the city police headquarters for personal retrieval, the chief of police shall send the permit or notice of rejection to the applicant's address, as listed in the application, via United States Postal Service, certified mail, return receipt requested, deposited with United States Postal Service and postmarked on or before 2:15 p.m. on the final day allowed in subsection 21-226(2).

(d)    If personal retrieval was properly requested for a permit or notice of rejection, the chief of police shall have the permit or notice of rejection available for pick up from the time of its issuance until 4:00 p.m. on the on the final day allowed in subsection 21-226(2). If the applicant fails to retrieve either the permit or notice of rejection by 4:00 p.m., the chief of police shall then send the permit or the notice of rejection to the applicant's address, as listed in the application. The means of sending the permit or notice of rejection shall be via the United States Postal Service, certified mail, return receipt



requested. The mail shall be deposited with the United States Postal Service not later than 4:30 p.m. on the final day allowed in subsection 21-226(2).

(e)     When determining a date upon which a deadline exists in this article, calculate the specified number of days as follows:

(1)     The day the act or event was performed or scheduled to occur after which the designated period of time begins to run is not to be included. The designated period of time begins on the next day.

(2)     The last day of the period so computed is to be included, unless it is a Saturday, Sunday or legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday or legal holiday.

(f)     Unless otherwise stated in this article, where delivery of any notice to applicant is required, delivery shall be by personal delivery at the applicant's address, as listed in the application, or by sending it to the applicant's address, as listed in the application, via the United State Postal Service, certified mail, return receipt requested.

(g)     Unless otherwise stated in this article, delivery by the United States Postal Service shall be presumed to be on the third business day after depositing the mail with the United States Postal Service, unless the applicant has proof to the contrary.

(h)     In this article, the last known address of an applicant, contained in an application or an amendment, is presumed as the correct address. Whenever delivery to an address is authorized or mandated under the provisions of this article, delivery to the presumed correct address is sufficient to comply under this article.

(i)     Personal delivery or delivery by mail as prescribed in this article, shall be prima facie evidence that the chief of police has fulfilled his duty to deliver a permit, notice of rejection, notice of intention to revoke/suspend permit, notice of revocation/suspension, or denial of revocation/suspension.

(j)     The chief of police shall issue the requested permit if the chief of police fails to deliver notice of rejection and does not have prima facie proof of the delivery or deposit, and if the applicant files a written request for issuance of the permit not later than 2:00 p.m. on the tenth business day following the deadline to issue a permit or notice. If the applicant fails to timely file a request for the permit upon the failure of the chief of police to issue

the notice, then the applicant shall waive any appeal or cause of action that he may have herein.

(k)     The deadlines imposed by this article may be extended by the mutual agreement of the chief of police and the pertinent individual, except as follows:

    (1)     The chief of police shall not agree to shorten any deadline;

    (2)     The chief of police shall not agree to extend any deadline wherein there is an express provision in this article that a failure to comply with the deadline shall result in an applicant's waiver of appeal or cause of action; or,

    (3)     As otherwise prohibited within this article.

Sec. 21-227. Qualifications and specifications Manager's permit and temporary manager's permit.

(a)     Unless an individual is disqualified under one or more of the provisions of this article, an individual who performs the following acts shall be qualified for a manager's permit:

    (1)     Pay one hundred dollars ($100.00) as a non-refundable processing fee to the city;

    (2)     Answer under oath accurately and completely the requests for information contained on the form for the permit;

    (3)     Provide proof of identity by presenting to the chief of police a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof;

    (4)     Provide proof that the applicant is at least eighteen (18) years of age or older; and,

    (5)     Appear at the place designated by the chief of police and submit to being photographed and fingerprinted by the chief of police. Fingerprints taken pursuant to this section shall be used for purposes of the background check.

(b)     If on the basis of substantial evidence, the chief of police concludes that one of the following conditions exists then an individual shall be disqualified from receiving the manager's permit:

    (1)     The individual is a sex offender as defined in Section 46.001 of the Texas Business and Commerce Code;

    (2)     The individual is convicted of a felony, not included in subsection 21-227(a)(2), in any jurisdiction during the preceding ten (10) years;

(3) The individual has been convicted of or been placed on deferred adjudication for a specified criminal act, not included in subsection 21-227(a)(2), in any jurisdiction, during the preceding ten (10) years;

(4) The individual has submitted false information on a form for the permit or the individual has responded falsely to inquiries in a background investigation;

(5) At the time of application, the individual is disqualified from receiving or holding a permit pursuant to sections 21-233 or 21-234 of this article; or

(6) At the time of application, the individual has a suspended permit or has had a permit revoked within the past calendar year, pursuant to section 21-233 of this article.

(c) An individual who applies for a manager's permit shall provide the following information:

(1) The information contained in a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof;

(2) The name and address of the human display establishment for which the individual requests the permit;

(3) Whether the individual has been convicted of or placed on deferred adjudication for an offense for which the individual is subject to registration under Chapter 62, Texas Code of Criminal Procedure, along with a list of each of the aforementioned offenses;

(4) Excluding traffic offenses, a list of each misdemeanor or felony, not included in subsection (c)(3), for which the individual has been convicted or received deferred adjudication during the past ten (10) years;

(5) Excluding traffic offenses, a list of each misdemeanor or felony, not included in subsection (c)(3), for which the individual is under community supervision at the time of application;

(6) The name and address of each court and jurisdiction listed in response to subsection (c)(3) herein;

(7) The name and address of each court and jurisdiction for those offenses that the individual is under community supervision at the time of application in response to subsection (e)(3);

(8) A signed waiver and authorization allowing the chief of police to request criminal history reports from pertinent federal, state, and local law enforcement for the individual submitting an application; and,

(9) A driver's license number of a state, possession, commonwealth or territory of the United States of America, if issued, and, a Social Security number of the United States of America, if issued.

(d) A manager's permit shall consist of one photographic identification card that contains the following information: a photograph of the manager; the name and address of the human display establishment at which the manager's permit is valid; the permit identification number assigned by the city; the date of issuance; the effective date; and, the date of expiration.

(e) A temporary manager's permit shall be issued within twenty-four (24) hours of the application when:

(1) The applicant for a manager's permit has submitted a completed application to the city police department identification section, pursuant to the provisions herein;

(2) The applicant supplies the city police department's vice unit with a copy of a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof;

(3) A preliminary investigation indicates that the applicant is otherwise qualified under this article for the issuance of a temporary manager's permit; and

(4) The applicant has not applied for or been granted a temporary manager's permit in the year preceding the application.

(f) Each temporary manager's permit is valid for thirty (30) calendar days from the date of issuance or until the issuance of a manager's permit, whichever occurs first.

Sec. 21-221. Same—Floor-manager's and temporary floor-manager's permit.

(a)    Unless an individual is disqualified under one or more of the provisions of this article, an individual who performs the following acts shall be qualified for a floor manager's permit:

(1)    Pay fifty dollars ($50.00) as a nonrefundable processing fee to the city; and

(2)    Perform those acts detailed at subsections 21-227(a)(2)—(5) herein.

(b)    The following conditions shall disqualify an individual from obtaining a floor manager's permit: those conditions specified at subsections 21-227(b)(1)—(6) herein.

(c)    An individual who applies for a floor manager's permit shall provide that information specified at subsections 21-227(c)(1)—(9).

(d)    A floor manager's permit shall consist of one photographic identification card that contains a photograph of the floor manager, the permit identification number assigned by the city, the date of issuance, the effective date, and the date of expiration.

(e)    A temporary floor manager's permit shall be issued within two (2) business days of application for same if:

(1)    The applicant has submitted a completed application to the city police department identification section plus paid fifty dollars ($50.00) as a nonrefundable processing fee to the city;

(2)    The applicant supplies the city police department's vice unit with copy of a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof;

(3)    A preliminary investigation indicates that the applicant is otherwise qualified under this article for the issuance of a temporary floor manager's permit; and

(4)    The applicant has not applied for or been granted a temporary floor manager's permit in the year preceding the application.

(f)    Each temporary floor manager's permit is valid for ten (10) business days from the date of issuance.

Sec. 21-229. Same—Human display permit.

(a)    It shall be unlawful to apply for a human display permit, unless the application is from the owner operator of the proposed human display establishment and the owner operator

files an accurate and complete sworn affidavit at the time of filing the application in which the owner-operator declares:

    (1) The identities of the owner, operator, and the owner-operator of the human display establishment;

    (2) The identity of the human display establishment;

    (3) That the owner of the human display establishment has designated an owner-operator to be culpable under the permitting provisions of this article and further that the proof of said designation is in the format for the type of person that comprises the owner (e.g., a corporate resolution for a corporation) and attached to the application.

    (4) State that all information is on the basis of personal knowledge; and,

    (5) State that all information is true and correct and acknowledge that a false statement is subject to criminal penalty, including but not limited to charges of perjury.

(b) Unless an owner-operator is disqualified under one or more provisions of this article, an owner-operator who performs the following acts shall be qualified to receive on behalf of an owner or operator a human display permit:

    (1) Pays three hundred seventy-five dollars ($375.00) as a nonrefundable processing fee to the city;

    (2) Submits a diagram;

    (3) Allows an inspection of the premises as directed in section 21-232;

    (4) If an individual, provide proof that the applicant is at least eighteen (18) years of age or older or if the applicant is a corporation, provide proof that the corporate representative is at least eighteen (18) years of age; and,

    (5) Performs those acts detailed at section 21-227 if the owner-operator is also applying for a manager's permit or floor-manager's permit.

(c) If on the basis of substantial evidence, the chief of police concludes that one of the following conditions exists then an owner-operator shall be disqualified from receiving a human display permit for the human display establishment for which the permit is sought:



(1) If any owner or operator of the human display establishment is a sex offender as defined by Section 46.001 of the Texas Business and Commerce Code;

(2) If any owner or operator of the human display establishment is convicted of a felony, not included in subsection (c)(1), in any jurisdiction in the past ten (10) years;

(3) If any owner or operator of the human display establishment has been convicted of or received deferred adjudication for a specified criminal act, not included in subsection (c)(1), in any jurisdiction in the past ten (10) years;

(4) If the owner-operator of the human display establishment has refused to allow an inspection of the premises of the human display establishment by at least three (3) business days prior to a deadline to issue a permit or notice of rejection;

(5) If the owner-operator of the human display establishment has failed to submit to the department of development services a diagram by at least ten (10) business days prior to the deadline to issue a permit or notice of rejection;

(6) If the owner-operator of the human display establishment has submitted false or incomplete information on an application form for the human display permit or has falsely responded to inquiries in a background investigation;

(7) If the owner-operator of the human display establishment has previously had two (2) human display permits revoked pursuant to section 21-233;

(8) If the owner-operator of the human display establishment has a human display permit that is currently suspended pursuant to section 21-233;

(9) If the human display establishment fails to conform to the configuration requirements set forth in section 21-201; or

(10) If the owner-operator of the human display establishment has had a human display permit revoked within the preceding year or is otherwise disqualified from receiving or holding a permit pursuant to sections 21-233 or 21-234.

Sec. 21-230. Same—Entertainer's permit and temporary entertainer's permit.

(a) Unless an individual is disqualified under one or more of the provisions of this article, an individual who performs the following acts shall be qualified for an entertainer's permit:

(1) Pay fifty dollars ($50.00) as a nonrefundable processing fee to the city; and

(2) Perform those acts detailed at subsections 21-401(a)(2), (3).



(b)    The following conditions shall disqualify an individual from obtaining an entertainer's permit: those conditions specified at subsections 21-227(b)(1)-(6).

(c)    An individual who applies for an entertainer's permit shall provide the following information: that information specified at subsection 21-401(c)(1) and subsections 21-401(c)(3)-(9).

(d)    An entertainer's permit shall consist of one identification card that contains a photograph of the entertainer, the permit identification number assigned by the city, the date of issuance, the effective date, and the date of expiration.

(e)    A temporary entertainer's permit shall consist of one identification card that contains the permit identification number assigned by the city, the date of issuance, the effective date, and the date of expiration.

(f)    A temporary entertainer's permit shall be issued within twenty-four (24) hours of the application when:

(1)    The applicant for a temporary entertainer's permit has submitted a completed application to the city police department identification section, pursuant to the provisions herein, and prior to 3:00 p.m. of the last business day before a scheduled performance by applicant;

(2)    The applicant supplies the city police department's vice unit with a copy of a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof, or copy of said identification so long as it identifies the residence of the applicant as being outside of Bexar County, Texas;

(3)    If the aforementioned photographic identification and signature of the applicant for a temporary entertainer's permit are not available at the time the application for a temporary entertainer's permit is submitted to the city police department, a legible copy of said identification and signature shall be transmitted via facsimile transmission or personal delivery to the city police department by the manager, along with a manager's affidavit, wherein the manager vouches for said identification and signature,in a manager's affidavit, prior to the time of the first performance by the temporary entertainer.

~~(4) Preliminary investigation warrants the issuance of a temporary entertainer's permit;~~

~~(5) The applicant pays fifty dollars ($50.00) as a nonrefundable processing fee to the city for each temporary entertainer's permit;~~

~~(6) The applicant designates the sole human display establishment at which the temporary entertainer's permit may be used;~~

~~(7) The applicant has not applied for or been granted more than three (3) temporary entertainer's permits during the calendar year for which the application is made and the human display establishment at which the permit will be used has not hosted more than eleven (11) entertainers who have a temporary entertainer's permit during the calendar year in which an applicant seeks a temporary entertainer's permit for use at said human display establishment.~~

~~(g) In lieu of the applicant, the manager may submit the application, a copy of the identification, and all other requirements referenced in subsection (f), together with a manager's affidavit.~~

~~(h) A temporary entertainer permit shall be valid for a period of not longer than seven (7) calendar days from the date of issuance and shall be valid at only one designated human display establishment.~~

~~Sec. 21-231. Ratification and term of permits.~~

~~(a) The city council approves, accepts, ratifies, and endorses the following acts of the chief of police:~~

~~(1) All acts performed by the chief of police between the date of this article's passage and the effective date of this article so long as the acts are consistent with the duties, powers, and provisions of this article;~~

~~(2) All permits issued by the chief of police between the date of this article's passage and the effective date of this Article so long as the permits contain the actual date of issuance, an effective date of permit that coincides with the effective date of this article, and an expiration date of permit that is one calendar year from the effective date of permit.~~

~~(b) Each human display permit, manager's permit, floor manager's permit, and entertainer's permit issued shall be valid for a period of one calendar year from the date of issuance,~~

~~unless otherwise stated in this article, at which time it shall expire, unless the permit is sooner revoked or surrendered.~~

~~(c) Each human display permit, manager's permit, floor-manager's permit, and entertainer's permit shall be subject to renewal as of its expiration date by filing a renewal application.~~

~~(d) Each renewal application must be filed at least forty-five (45) calendar days prior to the date of expiration.~~

~~(e) Except as expressly indicated herein, all of the deadlines, fees, and procedures applicable to any application and permit shall also be applicable to each renewal application and renewal permit.~~

~~(f) The chief of police shall not require another photograph for a renewal application unless he cannot verify the identity of the applicant who filed a renewal application; or, unless the applicant filing a renewal application is different from the individual who filed the original application.~~

~~Sec. 21-232. Inspections and background checks; deadlines.~~

~~(a) The chief of police shall conduct all necessary background investigations prior to the expiration of thirty (30) calendar days from the receipt of an application for a human display permit or a manager's permit, for the purpose of determining whether each applicant is in compliance with the provisions of this article, and based upon those findings, the chief of police shall either issue or reject the permit in accordance with the deadlines found in subsection 21-226(a)(1).~~

~~(b) The chief of police shall conduct all necessary background investigations prior to the expiration of ten (10) calendar days from receipt of an application for a floor manager's permit or an entertainer's permit, for the purpose of determining whether each applicant is in compliance with the provisions of this article, and based upon those findings, the chief of police shall either issue or reject the permit in accordance with the deadlines found in subsection 21-226(a)(2).~~

~~(c) The chief of police, the director of the department of development services, or their designated representatives, and any other pertinent city department or the department's designated representatives, shall complete all inspections required for an application prior to the expiration of thirty (30) calendar days from receipt of the application for a human display permit or a manager's permit, for the purpose of determining whether each~~

applicant is in compliance with the provisions of this article, and based upon those findings, the chief of police shall either issue or reject the permit in accordance with the deadlines found in section 21-226.

(d) If an application is rejected based on an inspection of the premises only, the chief of police shall provide to the owner-operator a notice of rejection within ten (10) business days following the deadline to issue a permit or notice.

(e) An applicant may request a re-inspection only if the owner-operator:

(1) Submits the request, by certified mail, return receipt requested, within ten (10) business days subsequent to the receipt of the decision of the chief of police; and

(2) Pays to the city a nonrefundable inspection fee of one hundred fifty ($150.00) with the submission of the request.

(f) The chief of police, the director of the department of development services, or their designated representatives, and any other pertinent city department or the department's designated representatives, shall complete a re-inspection and either issue or reject a permit based upon a request for re-inspection not more than fifteen (15) business days from the date of receipt of the request for re-inspection. If upon re-inspection the chief of police concludes the noted problems have not been remedied, the chiefof police shall issue a notice of rejection and notify applicant in accordance with section 21-226.

(g) Notwithstanding the provisions of this section, an applicant whose application is rejected under the provisions of this article may petition to any lawfully established court having jurisdiction on the subject matter without first applying for a re-inspection.

Sec. 21-233. Procedure for administrative hearings; revocation or suspension of permits.

(a) *Standing.*

(1) Regarding a manager's permit, a floor-manager's permit, an entertainer's permit, a temporary manager's permit, a temporary floor-manager's permit, or a temporary entertainer's permit, only the permit holder/applicant and the chief of police shall have standing in an administrative revocation/suspension proceeding or in any appeal of a denial, revocation or suspension.

(2) Regarding a human display permit, the owner-operator of the human display establishment and the chief of police have standing in an administrative

revocation/suspension proceeding or any appeal of a denial, revocation or suspension.

(b) *Conditions resulting in revocation/suspension of human display permit.*

(1) A human display permit shall be subject to revocation if, after the issuance of the initial permit:

a. Any permit holder of the human display permit is convicted of a felony or specified criminal act;

b. Any material information on the permit application which would likely have resulted in a denial of the permit is found to have been false when submitted; or

c. An individual or entity not listed on the permit application becomes an owner-operator, owner or operator of the human display establishment and such owner-operator, owner or operator would have caused a disqualification if listed on the original permit application.

(2) A human display permit shall be subject to revocation/suspension if, after the issuance of the initial permit, one or more employees of the human display establishment have a cumulative total among them of four (4) or more convictions for felonies or specified criminal acts, if the acts that lead to the convictions occurred on the licensed premises within a consecutive 12-month period.

(3) A human display permit shall be subject to revocation/suspension if, after the issuance of the initial permit, any one or more employees of that establishment have a cumulative total among them of four (4) or more convictions or deferred adjudications for any of the following sections of this article, if the violations that lead thereto have all occurred on the licensed premises on at least four (4) separate calendar dates within a consecutive six-month period commencing on or after the effective date of this article:

a. Section 21-204;

b. Section 21-205; or

c. Section 21-214, or any subsection thereof.

(c) *Conditions resulting in revocation/suspension of manager's, floor-manager's and entertainer's permits.*

       (1)   ~~A manager's, floor manager's or entertainer's permit shall be subject to revocation if, after the issuance of the initial permit, the permit holder is convicted of a felony or specified criminal act.~~

       (2)   ~~A manager's, floor manager's or entertainer's permit shall be subject to revocation/suspension if, after the issuance of the initial permit, the permit holder has a cumulative total of four (4) or more convictions or deferred adjudications in the name of the permit holder for any of the following sections of this article, if the violations occurred on at least four (4) separate calendar dates within a consecutive twelve month period commencing on or after the effective date of this article:~~

           a.  ~~Section 21-204;~~

           b.  ~~Section 21-205; or~~

           c.  ~~Section 21-214, or any subsection thereof.~~

(d)   ~~*Notice of intention to revoke/suspend permit.*~~

       (1)   ~~If, on the basis of information and belief, the chief of police concludes that any permit issued under this article is subject to revocation or suspension because of the existence of any of the conditions set forth in subsections 21-233(b) or (c), the chief of police shall initiate a revocation/suspension proceeding by sending a notice of intention to revoke/suspend permit to the permit holder which shall detail the following:~~

           a.  ~~The factual basis for the intention to revoke/suspend the permit;~~

           b.  ~~The provisions of this article alleged to be violated;~~

           c.  ~~The calendar date by which any request for contested case hearing is due; and~~

           d.  ~~The person or office with which any request for contested case hearing must be filed and the address at which any such request must be filed.~~

       (2)   ~~The notice of intention to revoke/suspend permit shall be sent to the permit holder via personal delivery or sent to the permit holder's last known address via United States ("U.S.") Postal Service, certified mail, return receipt requested, and a copy shall be filed with the hearing officer or his designee for this purpose.~~

(e)   ~~*Request for contested hearing required within ten (10) business days.*~~

~~The permit holder shall have ten (10) business days from the date of receipt of a notice of intention to revoke/suspend permit in which to file a request for a contested case hearing with the person or office indicated on the notice of intention to revoke/suspend permit. The request shall be filed via U. S. Postal Service, certified mail, return receipt requested, or via personal delivery. A copy of the request shall be sent on the same date to the chief of police via U. S. Postal Service, certified mail, return receipt requested, or via personal delivery. If filed by mail, the request shall be considered timely filed if the green return receipt card shows the item was properly addressed and received by the addressee on or before the tenth business day from the date the permit holder received the notice of intention to revoke/suspend permit. If filed by delivery, the permit holder shall be responsible for obtaining a copy of the request stamped with the date of filing by the person or office receiving the request.~~

~~(f)    *Hearing within twenty (20) business days of request.*~~

~~Upon proper request as set forth above, and except in the case of a continuance granted in accordance with the requirements of this article, each party with standing to contest is entitled to an opportunity to respond and to present evidence and argument on each allegation in the notice of intention to revoke/suspend permit at a hearing to be held within twenty (20) business days after the date of filing of their request as shown by the date of filing stamped on the request.~~

~~(g)    *Result of request or failure to request hearing.*~~

~~If no request for contested case hearing is timely filed, the hearing officer shall revoke or suspend the permit in question and issue a notice of revocation/suspension in accordance with the criteria of this article. If a request for contested case hearing is timely filed, the hearing officer shall conduct a contested case hearing in accordance with the provisions of this article.~~

~~(h)    *Notice of hearing not less than ten (10) business days from hearing date.*~~

~~Notice of a hearing in a contested case shall be sent or delivered to the person requesting a hearing not less than ten (10) business days from the date of the hearing; shall include a statement of the time, place, and nature of the hearing; and shall be sent via personal delivery or U. S. Postal Service, certified mail, return receipt requested to the last known address of the person. Notice of a hearing in a contested case shall be considered timely if~~

properly addressed and postmarked not less than ten(10) business days from the date of the hearing and received not less than seven (7) business days from the date of the hearing as evidenced by the delivery date noted on the green return receipt card.

(i) *Representation by counsel.*

Each party to a contested case is entitled to:

   (1) The assistance of counsel, at the party's expense, before the hearing officer; or

   (2) Expressly waive the right to assistance of counsel in writing or on the record before the hearing officer.

(j) *Status of permit during hearing.*

While a contested case is pending, and prior to the final decision of the hearing officer regarding revocation or suspension, a permit remains valid unless:

   (1) It expires without timely application for renewal;

   (2) It is voluntarily withdrawn or surrendered by the permit holder; or

   (3) The permit holder commits an act or omission contrary to the provisions of this article which otherwise invalidates the permit.

This section shall not apply during any judicial appeal following the decision of the hearing officer.

(k) *Applicable rules.*

Except as otherwise indicated herein, the Texas rules of Evidence and the Texas Rules of Civil Procedure shall apply to a contested case.

(l) *Additional rules.*

The following additional rules shall apply to any contested case hearing pursuant to this article:

   (1) In each contested case before the hearing officer, the city attorney, or his designated representative shall represent the chief of police.

   (2) A contested case may not be continued, except upon express written agreement of all parties to the contested case, or upon showing of good cause for a period not to exceed twenty (20) days.

   (3) Ex parte communications in connection with any issue of fact or law between any party and the hearing officer are strictly prohibited, except on notice and opportunity for each party to participate.

(4)    In a contested case, either party may request a court reporter to transcribe the hearing. The party requesting a transcript of the hearing shall bear the cost for production of the transcript.

(5)    If there be any conflict between the Texas Rules of Evidence and the Texas Rules of Civil Procedure and the rules set forth in this article, the rules in this article shall prevail.

(l)    *Record.*

The record in a contested case shall include the following:

(1)    A file stamped copy of notice of intention to revoke/suspend permit;

(2)    The request for a hearing and any written response to the notice of intention to revoke/suspend permit;

(3)    A statement of matters officially noticed;

(4)    Questions and offers of proof, objections, and rulings on them;

(5)    Each decision, opinion, or report prepared by the hearing officer at the hearing;

(6)    All documents, data and other evidence submitted to or considered by the hearing officer used in making his or her decision; and,

(7)    The record shall be filed with the municipal court for the city.

(m)    *Decision of the hearing officer.*

If a request for a contested case hearing has been filed timely, the hearing officer shall conduct a de novo contested case hearing and shall make one of the following findings:

(1)    If the contested case is one for which the permit is subject to suspension, the hearing officer shall, based on the hearing officer's determination that the alleged offense occurred and the severity of the offense, either order a 60 day suspension of the permit, or deny the suspension.

(2)    If the hearing officer finds that any of the conditions set forth in this article exists that would make the permit subject to revocation, the hearing officer shall, on the basis of the severity of the offense, either revoke the permit or order a 60-day suspension of the permit.

If the hearing officer does not make the requisite findings, then the permit revocation or suspension is deemed as being denied.

Sec. 21-234. Notice of revocation/suspension.

(a)    A final decision or order by the hearing officer shall be issued in writing, and shall:

    (1)    Include findings of fact and conclusions of law, separately stated;

    (2)    Contain a concise and explicit statement of the underlying facts supporting the findings;

    (3)    If a party submits proposed findings of fact, the decision or order shall include a ruling on each proposed finding;

    (4)    Be rendered not later than five (5) business days after the date on which the hearing is finally closed;

    (5)    Be provided to all parties via personal delivery or via United States Postal Service, certified mail, return receipt requested; and,

    (6)    Be considered timely if:

        a.    For personal delivery, a party receives notice not later than three (3) business days from the date on which the decision is rendered; or

        b.    For postal delivery, the decision or order is postmarked not later than three (3) business days from the date on which the decision is rendered.

(b)    Following a final decision in a contested case, any revocation or suspension of the permit in question shall take effect upon the date of delivery of the notice of the hearing officer's decision or such other date as may be set by the hearing officer and stated in the notice.

(c)    Any act authorized by a permit shall be unauthorized and in violation of this article upon and after the effective date of any suspension of the permit until the suspension expires.

(d)    Any act authorized by a permit shall be unauthorized and in violation of this article upon and after the effective date of any revocation of the permit unless and until a new permit, if any, is applied for and granted pursuant to the terms of this article. If a permit has been revoked because of crimes or activities occurring on the premises of a human display establishment, the owner-operator of the human display establishment is disqualified from receiving or holding any permit under this article for a period of one calendar year from the effective date of the revocation.

(e)    If a permit is suspended or revoked because of crimes or activities occurring on the premises of the human display establishment, each and every individual, person, or association which is an owner operator of a human display establishment at the time of any suspension or revocation of the human display permit for that establishment shall be

considered to have had a permit suspended or revoked as if they held the permit in their own name for purposes of determining whether they are qualified to participate in another permit application under this article. If a permit is suspended or revoked because of crimes or activities of one or more of the permit holders which did not occur on the licensed premises, then only that individual(s) shall be considered to have had a permit suspended or revoked for purposes of determining whether they are eligible to participate in another permit application under this article.

Sec. 21-235. Holder of a manager's, floor-manager's permit.

(a)     Each individual who holds a manager's or floor-manager's permit shall display his or her valid permit to a peace officer upon request while upon the premises of the human display establishment for which the permit is authorized.

(b)     Each individual who holds a manager's or floor-manager's permit and is currently on duty at the human display establishment, is required to display their title of Manager or Floor-Manager, on their person in such a manner that they are easily identifiable to all customers or patrons.

(c)     In prosecuting a violation of section 21-204, it shall be presumed that the actor did not have a valid permit unless a valid permit was displayed in accordance with subsection (a) herein.

(d)     It shall be unlawful for a manager or floor-manager to fail to display his or her valid permit upon request of a peace officer while upon the premises of the human display establishment for which the permit is authorized.

Secs. 21-236—21-250. Reserved.

DIVISION 3. JUDICIAL APPEAL

Sec. 21-251. Judicial appeal.

(a)     If a respondent is entitled to receive a permit under the provisions of sections 21-227, 21-221, 21-229, or 21-230, and if after timely filing a request for the permit pursuant to the provisions of section 21-226(j) the chief of police refuses or fails to issue the permit, then the respondent shall have thirty (30) calendar days from the expiration of the deadline in subsection 21-226(j) in which he may file suit for a writ of mandamus or other available remedy in a Judicial District Court of Bexar, County, Texas.

(b)     If an application is denied or a permit revoked or suspended, then:



(1) A respondent shall have forty-five (45) calendar days from the date of receipt of notice of rejection or notice of revocation/suspension in which to file suit for writ of mandamus or other available remedy in a Judicial District Court of Bexar County, Texas; and

(2) The respondent shall waive any appeal or cause of action if suit is not filed within the time specified herein.

(c) If a hearing officer renders a decision adverse to the chief of police, then:

(1) The chief of police shall have forty-five (45) calendar days from the date that a notice of revocation/suspension is issued in which to file suit for writ of mandamus or other available remedy in a Judicial District Court of Bexar County, Texas; and.

(2) The chief of police shall waive any appeal or cause of action if suit is not filed within the time specified herein.

(d) Any appeal to state court of this article is entitled to preferential setting and to be set for trial at the earliest practicable date. Any appeal from the decision of the trial court shall be accelerated.

(e) Any appeal to a Judicial District Court of Bexar County, Texas shall be based on the substantial evidence standard.

Secs. 21-252--21-265. Reserved.

DIVISION 4. HUMAN DISPLAY ESTABLISHMENTS

Sec. 21-266. Human display establishment--Hours of operation.

(a) A human display establishment shall not allow customers or patrons onto the premises during the following hours of any day: 2:15 a.m. through 7:00 a.m.

(b) It shall be unlawful for a human display establishment to allow customers or patrons onto the premises during the proscribed hours as provided in subsection (a).

(Ord. No. 101022, § 1Y(§ 21-600), 6-9-05)

Sec. 21-267. Same--Posting of permit.

(a) The human display permit shall be framed and posted the main entrance of the establishment, in such a manner that it is plainly visible to the general public entering the establishment, at a height of no less that four (4) feet and no more than six (6) feet from

the ground. It shall be unlawful to obstruct from plain view a posted human display permit.

(b)     It shall be unlawful to fail or refuse to post the human display permit as mandated in this article.

(c)     If a notice of revocation is delivered, the chief of police shall remove the human display permit from the wall of the human display establishment; post the notice of revocation on the exterior wall next to the front entrance of the human display establishment; and, post a copy of the notice of revocation on the exterior side of each door that may serve as an entrance or exit to the human display establishment.

(d)     It shall be unlawful for an individual other than the chief of police to destroy or remove a posted notice of revocation.

Sec. 21-268. Same-Records.

(a)     The owner operator, manager, or floor manager of any human display establishment shall keep on the premises a register of all employees of the human display establishment that includes all information detailed at subsection 21-267(c) for each employee plus a copy of a photographic identification card issued by governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof to the employee and:

    (1)     Each employee's true name;

    (2)     Aliases;

    (3)     Gender;

    (4)     Height;

    (5)     Weight;

    (6)     Color of hair and eyes;

    (7)     Date of birth;

    (8)     Date of initial employment;

    (9)     Date of termination, if applicable; and

    (10)    Specific job or employment duties.

(b)     The register shall be maintained for all current employees and ex-employees employed at any time during the preceding thirty-six (36) months, except that the ordinance shall not operate to require this information prior to its effective date.

(c)   ~~It shall be unlawful to fail to maintain the register; or, fail or refuse to present the register to a peace officer upon request.~~]

**SECTION 5.**  Chapter 21, Article I, Section 21-22, of the City Code of San Antonio is hereby revised and entitled "Nudity and Semi-Nudity Prohibited in Public;" additions are signified by underline, deletions are signified by strikeout text and bracketed to read as follows:

Sec. 21-22. Public Nudity.

(a)   It shall be unlawful for an individual to intentionally or knowingly appear in a state of nudity in a public place.

(b)   It shall be unlawful for an individual to intentionally or knowingly appear in a state of semi-nudity in a public place unless within a permitted sexually oriented business and valid sexually oriented business employee permit.

(c)   Nude or nudity or state of nudity shall mean the following:

(1)   The appearance of the bare buttock; anus; male genitals; female genitals; or female breast;

(2)   A state of dress which fails to completely or opaquely cover the buttock; anus; male genitals; female genitals; or female breast.

(d)   *Semi-nude* or *semi-nudity* or *state of semi-nudity* shall mean a state of dress that which fails to completely and opaquely cover:

(1)   Human genitals, pubic region or pubic hair; or

(2)   Crevice of buttocks or anus;

(3)   Any portion of the female breast that is situated below a point immediately above the top of the areola; or

(4)   Any combination of the foregoing.

(e)   *Public place* shall mean any public street, sidewalk, alley, or other public thoroughfare, in or such close proximity thereto, as to be observed the public traveling on such street, sidewalk, or other thoroughfare, and/or all locations owned by or open to the general public inclusive of the sheds, enclosures, buildings, improvements, and fixtures upon the location.

\*\*\*\*\*\*

**SECTION 6.**  Chapter 21, Article IX of the City Code of San Antonio is hereby revised and entitled "Sexually Oriented Businesses;" additions are signified by underline, deletions are signified by strikeout text and bracketed to read as follows:

## CHAPTER 21, ARTICLE IX
## SEXUALLY ORIENTED BUSINESSES

### DIVISION I. DEFINITIONS; PERMIT REQUIRED

Sec. 21-200. Definitions.
As used in this article, the following words and terms shall have the meanings ascribed to them in this section, unless the context of their usage clearly indicates another meaning:

*Act* shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Actor* shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Adult Arcade* shall mean any "premises" to which members of the public or members of any club, group or association are admitted and permitted to use one or more arcade devices.

*Adult bookstore.* means an adult bookstore, adult novelty store, or adult video store where more than thirty percent of its inventory (that is offered for sale, rental or viewing for any form of consideration to on-premises customers) or floor space consists of one or more of the following:

(a)     Books, magazines, or sound recordings, or printed, visual or audio material of any kind which are characterized by their emphasis on the description or depiction of specified anatomical areas or specified sexual activities; or

(b)     Non-contraceptive instruments, devices, toys, or paraphernalia designed for use in connection with specified sexual activities, books, magazines, pamphlets, pictures, drawings, photographs, motion picture films, or sound recordings, or printed, visual or audio material of any kind, which, because of the depiction or description of specified sexual activities in the materials offered for sale, is restricted to adults.

(c)     Novelty items designed as sight gags, advertised as such and not designed or advertised for sexual activity, are not instruments or devices as defined and regulated herein.

*Adverse secondary effects* shall mean any one of the following conditions caused by the existence of or geographic proximity to a sexually oriented business:

(1)     The existence of violations of law, including but not limited to: prostitution, promotion of prostitution, aggravated promotion of prostitution, compelling prostitution, obscenity, sale or distribution or display of material harmful to a minor, sexual performance by a child, employment harmful to children, possession or promotion of child pornography, public lewdness, indecent exposure, indecency with a child, sexual assault, aggravated sexual assault, pandering, loitering, trespass, or any violation of Chapter 481 of the Texas Health and Safety Code, criminal attempt to conduct a violation of law, criminal conspiracy to conduct a violation of law, or solicitation to conduct a violation of law.

(2)     Diminution of surrounding property value.

(3)     Unsanitary health conditions resulting from improper disposition of bodily secretions thereby posing a threat of spreading infection or disease.

(4)     Those adverse secondary effects found to exist by the Texas Legislature at Section 243.001(a) of the Texas Local Government Code.

(5)     Those adverse secondary effects described by findings incorporated in the cases of *N.W. Enterprises v. City of Houston*, 352 F.3d 162 (5th Circ. 2003); *Baby Dolls Topless Saloons v. City of Dallas*, 295 F.3d 471 (5th Circ. 2002); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986); *Young v. American Mini Theatres*, 427 U.S. 50 (1976); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S. Ct. 1382 (2000); *City of Los Angeles v. Alameda Books, Inc.* 122 S. Ct. 1728 (2002); *LLEH, Inc. v. Wichita County*, Texas, 289 F.3d 358 (5th Circ. 2002); *Mitchell v. Commission on Adult Entertainment*, 10 F.3d 123 (3d Circ 1993); *Shultz v. City of Cumberland*, 228 F.3d 831 (7th Circ. 2000) *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248 (5th Circ. 1995); *2300, Inc. v. City of Arlington*, 888 S.W. 2d 123 (Tex. App. – Forth Worth 1994); *Colacurcio v. City of Kent*, 163 F.3d 545 (9th Circ. 1998), cert denied, 529 U.S. 1053 (2000); *Kev, Inc. V. Kitsap County*, 793 F.2d 1053 (9th Circ.1986); *Center for Fair Public Policy v. Maricopa County*, 336 F.3d 1153 (9th Circ. 2003); *DLS, Inc. v. Chattanooga*, 107 F.3d 403 (6th Circ. 1997); *Jake's Ltd. Inc. v. Coates*, 384 F.3d 884 (8th Circ. 2002); and on studies, reports, and/or testimony in other communities including, but not limited to: Houston, Texas; Phoenix, Arizona; Minneapolis, Minnesota; St. Paul, Minnesota;

Indianapolis, Indiana; Dallas, Texas; Amarillo, Texas; Garden Grove, California; Los Angeles, California; Whittier, California; Austin, Texas; Seattle, Washington; Oklahoma City, Oklahoma; Cleveland, Ohio; Beaumont, Texas; Newport News, Virginia; Bellevue, Washington; New York, New York; St. Croix County, Wisconsin; Arlington, Texas; Detroit, Michigan; Seattle, Washington; Rochester, New York; Denver, Colorado; El Paso, Texas; and also findings from the *Texas City Attorneys Association Crime and Value Related Effects of Sexually Oriented Businesses* (2008); *Florida Survey of Appraisers* (2008); The *American Center for Law and Justice* (1996); and *National Law Center Summary of Sexually Oriented Business Land Use Studies* (1996)

*Adult cabaret.* An establishment whose one of its primary business purposes is the offering to customers of live entertainment which is intended to provide sexual stimulation or sexual gratification to such customers, and which is distinguished by or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities, or specified anatomical areas.

*Adult encounter parlor.* An establishment whose one of its primary business purposes is the provision of premises where customers either congregate, associate, or consort with employees who engage in specified sexual activities with or in the presence of such customers, or who display specified anatomical areas in the presence of such customers, with the intent of providing sexual stimulation or sexual gratification to such customers.

*Adult lounge.* An adult cabaret, as defined above, which is a permitted or licensed premises, pursuant to the Texas Alcoholic Beverage Code, where alcoholic beverages may be served or sold.

*Adult modeling studio.* An establishment whose one of its primary business purposes is the provision to customers of figure models who are so provided with the intent of providing sexual stimulation or sexual gratification to such customers and who engage in specified sexual activities or display specified anatomical areas while being observed, painted, painted upon, sketched, drawn, sculptured, photographed, or otherwise depicted by such customers.

*Adult mini-theatre* shall mean any premises that is subject to regulation under Chapter 243 of the Local Government Code as amended, to which members of the public or members of

any club, group or association are admitted and permitted to use one or more 'mini-theatre devices.'

*Alcoholic beverage* shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Applicant* shall mean an individual or owner-operator who files an application.

*Application* shall mean any request for a permit that is completed accurately and filed in compliance with the provisions of this article.

*Application amendment* shall mean a document wherein is contained a change to the information provided on an application or renewal application.

*Arcade device* shall mean any coin, currency or slug operated or electronically or mechanically controlled machine or device that dispenses or effectuates the dispensing of "entertainment" that is intended for the viewing of five or fewer persons in exchange for any payment of consideration.

*Association* shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Background investigation* shall mean the review, analysis, and inquiry made by the chief of police in response to an application for a permit.

*Certificate of Occupancy* shall mean a certificate indicating that the premises comply with all the provisions of the UDC Section 35-424 and the building code. The certificate of occupancy is issued after approval of a building permit and construction has occurred pursuant to a building permit. A sexually oriented business permit shall not be issued unless a certificate of occupancy is obtained for the premises.

*Chief* or *chief of police* shall mean the director of the city police department or designee authorized to carry out tasks such as those set forth herein.

*Church.* A building in which persons regularly assemble for religious worship intended primarily for purposes connected with such worship or for propagating a particular form of religious belief.

*Commence an action* shall mean to file a cause of action with a court of any jurisdiction, to pursue an appeal in any appellate or supreme court and/or to obtain a settlement of a cause of action.

*Close corporation.* shall mean a corporation whose stock is not offered or sold on an exchange.

*Commercial multi-unit center.* A building or structure (including a shopping mall or strip shopping center) containing three (3) or more separate premises, each of which is offered by lease or otherwise for separate occupancy or control and each of which occupies an enclosed area having its own door or entranceway opening onto public property, a public way, or a common area.

*Community supervision.* shall mean the same as that term is defined at Article 42.12, Section 2 of the Texas Code of Criminal Procedure or as may hereafter be amended therein.

*Conduct any business in a sexually oriented business.* Any person who does any one or more of the following shall be deemed to be conducting business in a sexually oriented business:

(1)     Operates a cash register, cash drawer or other depository on the sexually oriented business premises where cash funds or records of credit card or other credit transactions generated in any manner by the operation of the establishment or the activities conducted therein are kept;

(2)     Displays or takes orders from any customer for any merchandise, goods, entertainment or other services offered on the sexually oriented business premises;

(3)     Delivers or provides to any customer any merchandise, goods, entertainment or other services offered on the sexually oriented business premises;

(4)     Acts as a door attendant to regulate entry of customers or other persons into the sexually oriented business premises; or

(5)     Supervises or manages other persons in the performance of any of the foregoing activities on the sexually oriented business premises.

*Configuration* or *configured* shall mean the interior layout or interior construction design of a sexually oriented business.

*Conviction* as used in this article shall mean the written declaration of a court, signed by the trial judge, that the defendant has been adjudged guilty of the offense in question, regardless of the punishment assessed. The term "convicted of" shall mean the person has a conviction on his record for the offense or activity stated.

*Corporation* shall mean a business entity created pursuant to statute and capable of issuing common or preferred stock. It shall include a closed corporation. In addition, the term

shall also mean the same as that term is defined at Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Customer.* Any person who:

(1)    Is allowed to enter a sexually oriented business or any portion thereof in return for the payment of an admission fee, membership fee, or any other form of consideration or gratuity; or

(2)    Enters a sexually oriented business or any portion thereof and purchases, rents or otherwise partakes of any merchandise, goods, entertainment or other services offered therein; or

(3)    Enters a sexually oriented business or any portion thereof based upon a private membership to the club or as a guest of an owner, operator, manager, floor-manager, employee, dancer, entertainer or model.

*Dancer* shall have the same meaning as the term "entertainer."

*Denial of revocation/suspension* shall mean a document wherein is contained the refusal of the hearing officer to revoke a permit and the reasons for the refusal.

*Diagram* shall mean a drawing sufficient to depict each area of a sexually oriented business, whether open or closed, accessible or inaccessible to customers or patrons, including but not limited to, each entrance, exit, room, bar, kitchen, office, stairway, or lavatory. The drawing must indicate the square footage of the entire establishment, along with square footage of each enclosed area within the establishment. Each area should also be labeled by usage.

*Dressing room* shall mean an enclosed area where entertainers are allowed to change clothes and where customers or patrons shall be prohibited from viewing or entering.

*Employee* shall mean:

(1)    Any person who renders any service whatsoever to any customer of a sexually oriented business, works in or about a sexually oriented business, or conducts any business in and for a sexually oriented business; and, either receives or expects to receive compensation from the operator, owner, manager, floor-manager, or customers of the sexually oriented business.

(2)    Excepted from this definition of "employee" are the following: providers of legitimate accounting services, legal services, deliveries of goods for immediate use by

the sexually oriented business, and maintenance services for the sexually oriented business.

(3)     By way of example, rather than limitation, the term "employee" includes the operator and other management personnel, clerks, dancers, models and other entertainers, food and beverage preparation personnel, door persons, bouncers, security personnel, and cashiers. This definition is intended to include the conventional employer-employee relationships, independent contractor relationships, agency relationships, and any other scheme or system whereby the "employee" has an expectation of receiving compensation, tips, or other benefits from the sexually oriented business, operator, owner, manager, floor-manager, or customers in exchange for services provided.

*Entertainer* shall mean any individual, male or female, who poses, dances, or knowingly or intentionally appears for the purpose of being observed or viewed for any reason by any individual while in a state of nudity, semi-nudity, or while engaging in specified sexual activities.

*Entertainer's permit* shall mean a license issued to an individual as lawful authority to act as an entertainer in a sexually oriented business.

*Entertainment* shall mean:

(1)     Any live exhibition, display or performance; or

(2)     Any still picture(s) or movie picture(s), whether mechanically, electrically or electronically displayed; or
(3)     Any combination of the foregoing, in which the specified anatomical areas or specified sexual activities are depicted.

*File* or *filed* or *filing* shall mean personal delivery to the chief of police or his designee at the city police headquarters or personal delivery to the clerk of a court.

*Floor-manager* shall mean any individual holding a position in a sexually oriented business with the responsibility for direct supervision of the operation of the sexually oriented business and for monitoring and observing the areas of the sexually oriented business to which customers or patrons are admitted at times during which the sexually oriented business is open for business; or, at times during which customers or patrons are on the premises of the sexually oriented business.

*Floor-manager's permit* shall mean a license issued to an individual as lawful authority to act as a floor-manager for a sexually oriented business.

*Form* shall mean one or more pages wherein exist a uniform method of eliciting from an applicant the information required for an application in accordance with the provisions of this article. The referenced pages shall include a verification or jurat where the applicant can affirm under oath and on the basis of personal knowledge that the information provided is accurate and complete; however, the referenced pages shall specifically exclude the affidavit required of an owner-operator.

*Identify* shall mean the act of stating or declaring an identity.

*Identity* shall mean the true and correct name, address, telephone number, and facsimile number of the pertinent association, corporation, individual, operator, person, or owner.

*Individual* shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Interior door* shall mean any opening between interior rooms through which foot traffic may occur and which serves as an entrance or an exit between the rooms, excluding electrically cooled rooms used as food storage devices, liquor cabinets, and food pantries.

*Invest* shall mean to provide money, bartering, or in-kind services toward a sexually oriented business in anticipation or expectation of generating a profit or incurring a tax benefit at some time in the future.

*Investment* shall mean the noun of the term "invest".

*Lavatory* shall mean a room where exists a sink for washing hands and a toilet.

*Licensed day-care center.* A facility licensed by the State of Texas, whether situated within the city or not, that provides care, training, education, custody, treatment or supervision for more than twelve children under fourteen years of age, where such children are not related by blood, marriage or adoption to the owner or operator of the facility, for less than twenty-four (24) hours a day, regardless of whether or not the facility is operated for a profit or charges for the services it offers.

*Multifamily tract.* Any residential tract that contains any building or buildings or portion or portions thereof, that is designed, built, rented, leased, sold, let out or hired out to be occupied, or which is occupied, in separate units, each containing living, sleeping and food preparation

facilities, as the homes or residences of three or more families, groups, or individuals living independently of each other.

*Manager,* unless otherwise specified herein, shall mean any individual who supervises or directs any employee, floor-manager, contractor, or sub-contractor of a sexually oriented business.

*Manager's affidavit* shall mean a sworn statement based upon personal knowledge by a manager of a sexually oriented business wherein is stated:

(1)   That the attached copy of the photographic identification of an applicant for a manager's permit is a true and correct copy of the photographic identification of said applicant;

(2)   The identity of the sexually oriented business at which the applicant shall be employed under the manager's permit;

(3)   The information in the attached application is true and correct and the applicant is qualified to receive the requested permit.

*Manager's permit* shall mean a license issued to an individual as lawful authority to act as a manager of a sexually oriented business.

*Massage parlor* means any place where, for any form of consideration or gratuity, massage, alcohol rub, administration of fomentation, electric or magnetic treatments, or any other treatment or manipulation of the human body which occurs as a part of, or in connection with, such treatment, manipulation, or service related thereto, exposes specified anatomical areas. The definition of a massage parlors shall not include the practice of massage in any licensed hospital, nor by a licensed massage therapist, hospital, licensed physicians, surgeons, chiropractor, osteopath, nurse, technician working under the supervision of a licensed physician, surgeon, chiropractor, or osteopath, nor by trainers of any amateur, semiprofessional or professional athlete or athletic team or school athletic program.

*Model* shall have the same meaning as the term "entertainer."

*Notice* or *notice of rejection* shall mean a document wherein the chief of police informs an individual that an application or renewal application is denied and also specifies therein the reasons for the rejection.

*Notice of intention to revoke/suspend permit* shall mean a document wherein the chief of police notifies a permit holder of his intention to revoke the permit.

*Notice of revocation or notice of revocation/suspension* shall mean a document wherein is contained the decision of the hearing officer to revoke/suspend a permit based upon the allegations contained in a notice of intention to revoke/suspend permit.

*Nude* or *nudity* or *state of nudity* shall mean the following:

(1)    The appearance of the bare buttock; anus; male genitals; female genitals; or entire female breast;

(2)    A state of dress which fails to completely and opaquely cover the buttock; anus; male genitals; female genitals; or entire female breast.

*Nude modeling studio* means any place where a person who, for money or any form of consideration, appears in a state of nudity or displays specified anatomical areas, to be observed, sketched, drawn, painted, sculptured, photographed, or otherwise depicted by other persons. This definition shall not include nude modeling by an adult that occurs in conjunction with art classes of a university, college, or any art class supervised by an art instructor paid by an arts school.

*Nudity attraction establishment* means any place of business where nudity or semi-nudity is regularly or routinely advertised as a characteristic of the business or which regularly attracts patrons with nudity or semi-nudity.

*Operator* shall mean the following:

(1)    An individual who owns a sexually oriented business, if the establishment is a sole proprietorship or if the establishment is an assumed name of an individual;

(2)    Each individual partner of a general partnership, if the partnership owns any interest in a sexually oriented business;

(3)    Each individual who is a general partner or a limited partner of a limited partnership, if the partnership owns any interest in a sexually oriented business;

(4)    Each individual who is an officer or director of a corporation, if the corporation owns any interest in a sexually oriented business;

(5)    Each association, individual, or person who is a stockholder of a closed corporation, if the closed corporation owns any interest in a sexually oriented business;

(6)    Each manager, as defined in the Texas Limited Liability Company Act, of a limited liability company, if the company owns any interest in a sexually oriented business; and,

(7)    Each association, if the association owns any interest in a sexually oriented business.

*Owner* shall mean each association, individual, person, partner, closed corporation, corporation, business entity, or manager (as defined by the Texas Limited Liability Company Act) who owns an interest in a sexually oriented business.

*Owner-operator* shall mean:

(1)    An owner or each member of a group of owners whose aggregate ownership interest in a sexually oriented business equals or exceeds thirty-five percent; and,

(2)    Who has been designated by a sexually oriented business pursuant to the provisions of this article as being a member of the class authorized to apply for and, if otherwise qualified, receive a sexually oriented business permit.

*Patron* shall have the same meaning as the term "customer".

*Permit* shall mean either a sexually oriented business permit, a manager's permit, a floor-manager's permit, an entertainer's permit, a temporary manager's permit, a temporary floor-manager's permit, a temporary entertainer's permit, or any other permit defined in this article, depending upon the context used.

*Permit holder* shall mean the individual who applied for and received a manager's permit, floor-manager's permit, entertainer's permit, temporary manager's permit, temporary floor-manager's permit, temporary entertainer's permit, or, in the case of a sexually oriented business establishment permit, the owner-operator of the sexually oriented business. It shall also include any individual who applied for and received any permit defined in this article, depending upon the context used.

*Person* shall mean the same as that term is defined in Section 1.07 of the Texas Penal Code or as may hereafter be amended therein.

*Public park.* A publicly owned or leased tract of land, whether situated in the city or not, designated, dedicated, controlled, maintained and operated for use by the general public for active or passive recreational or leisure purposes by the city or any political subdivision of the state and containing improvements, pathways, access or facilities intended for public recreational use. The term 'public park' shall not include parkways, public roads, rights-of-way, esplanades,

traffic circles, easements or traffic triangles unless such tracts or areas contain and provide improvements or access to a recreational or leisure use by the public.

*Public place* in this article shall mean all locations owned by or open to the general public inclusive of the sheds, enclosures, buildings, improvements, and fixtures upon the location. This term includes but is not limited to any sexually oriented business, restaurant, tavern, bar, club or other establishment. This term also includes those locations that are restricted to specific members, restricted to adults, or restricted to patrons invited to the location, whether or not an admission charge is levied.

*Residential.* Pertaining to the use of land, whether situated within the city or not, for premises such as homes, townhomes, patio homes, manufactured homes, duplexes, condominiums and apartment complexes, which contain habitable rooms for nontransient occupancy and which are designed primarily for living, sleeping, cooking, and eating therein. A premises which is designed primarily for living, sleeping, cooking and eating therein shall be deemed to be residential in character unless it is actually occupied and used exclusively for other purposes. Hotels, motels, boarding houses, nursing homes, college or university dormitories, hospitals, and nursery schools shall not be considered to be residential. The term 'residential' shall also include any unimproved tract designated for tax appraisal purposes as residential by the Bexar County Appraisal District if situated in the City or by the appraisal district of the county in which the tract is situated if not situated in the City. The term additionally shall include any tract, that, based upon the records of the planning official has been subdivided or platted for residential use, but that is not yet designated for tax appraisal purposes as residential.

*Renewal application* shall mean an application to re-establish a valid and existing permit for another term.

*Renewal permit* shall mean a valid and existing permit that is re-established for another term.

*Respondent* shall mean:

(1)     That individual or owner-operator who holds:

      a.     A sexually oriented business permit;

      b.     A manager's permit;

      c.     A floor-manager's permit; or

      d.     An entertainer's permit; and,

(2)     Defends his own permit in a revocation/suspension proceeding or appeal thereof.

*Revocation proceeding or revocation/suspension proceeding* shall mean the process by which any permit required herein is or may be revoked or suspended.

*School* shall mean a building, whether situated within the city or not, where persons regularly assemble for the purpose of instruction or education together with the playgrounds, stadia and other structures or grounds used in conjunction therewith. The term is limited to:

(1)     Public and private schools used for primary or secondary education, in which any regular kindergarten or grades one through twelve classes are taught; and

(2)     Special educational facilities in which students who have physical or learning disabilities receive specialized education in lieu of attending regular classes in kindergarten or any of grades one through twelve.

*Semi-nude* or *semi-nudity* or *state of semi-nudity* shall mean a state of dress which fails to completely and opaquely cover:

(a)     Human genitals, pubic region or pubic hair; or

(b)     Crevice of buttocks or anus;

(c)     Any portion of the female breast that is situated below a point immediately above the top of the areola; or

(d)     Any combination of the foregoing.

*Sexual encounter establishment* means any business or commercial establishment that, as one of its primary business purposes , offers for any form of consideration, a place where two or more persons may congregate, associate, or consort for the purpose of specified sexual activities or the exposure of specified anatomical areas when one or more of the persons is in a state of nudity or semi-nudity. The definition of sexual encounter establishment shall not include an establishment where a medical practitioner, psychologist, psychiatrist, or medical professional, licensed by the state engages in medically approved and recognized therapy or treatment.

*Sexually Oriented Business or "SOB"* means an adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, adult mini-theater, escort agency, nude modeling studio, unlicensed massage parlor, or any other establishment whose one of its primary business purposes is the offering of a service, live entertainment or the selling, renting, or exhibiting of devices or any specified anatomical parts intended to provide sexual stimulation or sexual

gratification to the customer and which is distinguished by or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas. The term 'sexually oriented business' shall not be construed to include:

(1)     Any business operated by or employing licensed psychologists, licensed physical therapists, licensed athletic trainers, licensed cosmetologists, or licensed barbers performing functions authorized under the licenses held;

(2)     Any business operated by or employing licensed physicians or licensed chiropractors engaged in practicing the healing arts; or

(3)     Any retail establishment whose major business is the offering of wearing apparel for sale to customers.

*Sexually Oriented Business or "SOB" permit* shall mean the original license issued to an owner-operator of a sexually oriented business as lawful authority to operate a sexually oriented business.

*SOB* shall mean sexually oriented business.

*Specified anatomical areas shall mean* failure to completely and opaquely cover:

(a)     Human genitals, pubic region or pubic hair; or

(b)     Crevice of buttocks or anus;

(c)     Any portion of the female breast that is situated below a point immediately above the top of the areola; or

(d)     Any combination of the foregoing.

(e)     Human male genitals in a discernibly erect state.

*Specified criminal act* shall mean any of the following offenses:

(1)     As described in Chapter 21 of the Texas Penal Code or as may hereafter be amended therein:

        a.   Public lewdness;

        b.   Indecent exposure; or,

        c.   Indecency with a child.

(2)    As described in Chapter 22 of the Texas Penal Code or as may hereafter be amended therein:

    a.   Sexual assault; or,

    b.   Aggravated sexual assault.

(3)    As described in Chapter 43 of the Texas Penal Code or as may hereafter be amended therein:

    a.   Prostitution;

    b.   Promotion of prostitution;

    c.   Aggravated promotion of prostitution;

    d.   Compelling prostitution;

    e.   Sale, distribution or display of harmful material to a minor;

    f.   Sexual performance by a child;

    g.   Employment harmful to a child; or,

    h.   Possession or promotion of child pornography.

(4)    As described in Chapter 481 of the Texas Health and Safety Code or as may hereafter be amended therein.

(5)    As described in Chapter 15 of the Texas Penal Code or as may hereafter be amended therein:

    a.   Criminal attempt to conduct any of the aforementioned offenses;

    b.   Criminal conspiracy to conduct any of the aforementioned offenses;

    c.   Criminal solicitation to conduct any of the aforementioned offenses; or,

    d.   Criminal solicitation of a minor to conduct any of the aforementioned offenses that are also identified in Section 15.031 of the Texas Penal Code.

(6)    Human Trafficking as described in Chapter 20A of the Texas Penal Code or as may hereafter be amended therein.

*Specified sexual activity* means actual and simulated human genitals in a state of sexual stimulation or arousal, even if completely and opaquely covered, actual or simulated human masturbation, sexual intercourse, sodomy, fellatio, cunnilingus, fondling or other erotic touching of human genitals, pubic region, buttock or female breast, and excretory functions as part of or in connection with the above described activity or any act of bestiality, masturbation, sexual

intercourse, sodomy, fellatio, sadomasochism, or physical contact with a person's own or another person's specified anatomical area.

*Stage name* shall mean an alias used by an entertainer during the course and scope of entertaining.

*Substantial evidence* shall mean the same as that term is defined by state courts or in state jurisprudence regarding the standard of proof used in review of decisions in administrative proceedings.

*Temporary entertainer* shall mean an individual who holds a temporary entertainer's permit.

*Temporary entertainer's permit* shall mean an entertainer's permit that is valid for a reduced period of time, as set forth in this article.

*Temporary floor-manager* shall mean an individual who holds a temporary floor-manager's permit.

*Temporary floor-manager's permit* shall mean a floor-manager's permit that is valid for a reduced period of time, as set forth in this article.

*Temporary manager* shall mean an individual who holds a temporary manager's permit.

*Temporary manager's permit* shall mean a manager's permit that is valid for a reduced period of time, as set forth in this article.

*Tract.* A contiguous parcel of land under common ownership, whether situated within the city or not.

Sec. 21-201. Remedial effect.

The provisions of this article are remedial and they shall, notwithstanding any other provision of this Code, be construed to apply to each association, corporation, individual, operator, owner, owner-operator, person, or sexually oriented business, now existing and as hereafter shall exist.

Sec. 21-202. Supplemental effect.

The provisions of this article are supplemental and shall be cumulative with all other laws and ordinances applicable in any manner to an association, corporation, individual, operator, owner, owner-operator, person, or sexually oriented business, now existing and as hereafter shall exist.

Sec. 21-203. Construction of terms.

Whenever the context requires herein, the following construction shall apply: the use of the masculine shall mean the feminine and vice versa; the use of the singular shall mean the plural and vice versa; and, the reference to any class of individual or person shall include each individual or person within the class, unless specifically excepted by the text of the reference. For example, when referencing an "owner-operator", each individual or person within the class of "owner-operator" is being referenced, unless the text of the section specifically excepts all but one within the class.

## DIVISION 1. SEXUALLY ORIENTED BUSINESS PERMITS; CONFIGURATION; DUTY OF OWNERS, MANAGERS; RECORDS

### Sec. 21-204. Total Nudity Prohibited.

(a)     It shall be unlawful for an individual to intentionally or knowingly appear in a state of nudity in a sexually oriented business.

(b)     It shall be unlawful for an individual, person, corporation, or association that manages, or operates a sexually oriented business to intentionally or knowingly allow an individual to appear on the premises of said establishment in a state of nudity.

### Sec. 21-205. Sexually Oriented Business Establishment Permit Required.

(a) It shall be unlawful for any person to own, operate or conduct any business in a sexually oriented business located within the city unless there is a permit for said establishment.

(b) It shall be unlawful for any person to own, operate, or conduct any business in a sexually oriented business located within the city unless the SOB permit is posted at or near the principal public entrance to the establishment in such a manner that it will be conspicuous to patrons who enter the premises.

(c) In any prosecution under subsection (a) above, it shall be presumed that there was no permit at the time of the alleged offense, unless a permit was then posted as provided in subsection (b).

### Sec. 21-206. Process for requesting an SOB Establishment permit.

(a)     The chief of police shall create a form for each type of permit consistent with the provisions of this article.

(b)     An applicant may obtain a form from the City of San Antonio Government website page (sanantonio.gov/sapd) or at the San Antonio Police Department (SAPD or police department) Headquarters Records Unit. Applications shall be accepted Tuesday through Thursday, excluding Holidays, between the hours of 1:00 p.m. and 4:00 pm.  Applications shall not be accepted at any other time or on any other day.

(c)     At the time that the Chief receives an application, the applicant shall pay the required fee of $400.00.  The applicant will receive a receipt and paperwork from the Records Division along with their completed application and submit said information and waiver form to the Identification Division.  The Identification Division shall take fingerprints and generate an SOB Permit number.  The applicant will then be photographed at the Identifications Division.

(d)     All photographs and applications shall be used to perform a background investigation and for the purpose of photographic identification of permit holders, and shall be kept on record with the chief of police while the applicant possesses a valid permit, and for a period of five years after the expiration, revocation, or denial of the permit.

(e)     All photographs of applicants shall be destroyed at the expiration of five years after the expiration, revocation, or denial of the permit, but all applicants submitting new applications shall be required to comply with photograph and fingerprint requirements in this section.

(f)     The police department shall conduct the criminal background check and verify the applicant is eligible to receive an SOB Permit.

(g)     A business seeking a sexually oriented establishment permit shall be required to post an outdoor sign on the premises advising the public that it has applied for an SOB permit upon application for said permit.  The outdoor sign shall be posted within seventy-two hours of the submittal of application.

Sec. 21-207. Use of a permit.

(a)     A permit issued under the provisions of this article is not a property interest but shall be a purely personal privilege that is subject to revocation or suspension if the respondent is found to have violated a provision of this article.

(b)     By authority of this article, by accepting a permit, the holder of the permit consents that the chief of police or a peace officer may detain the individual on the premises of a sexually oriented business for the purpose of verifying identity and permit.

(c)     Any owner, operator, or owner-operator that enjoys the benefit of a sexually oriented business permit or has accepted a permit through the owner-operator, consents, by authority of this article, that the chief of police or peace officer may enter the premises of the sexually oriented business at any time an owner, operator, owner-operator, manager, floor-manager, employee, customer or patron is on the premises to conduct an investigation or inspect the premises for the purpose of performing any duty imposed by this article.

(d)     All peace officers shall have the duty to enforce the provisions of this article and cooperate with the chief of police in the enforcement hereof.

(e)     It shall be unlawful for an individual to use the permit of another. It shall be unlawful for an individual holding a permit to transfer that permit for use by another individual. Excepting an entertainer's permit, permits are valid for one sexually oriented business establishment only and may not be transferred to any other establishment or location.


Sec. 21-208. Amendment.

(a)     An applicant or permit holder shall file an application amendment with the chief of police any time a prior statement contained in an application is known to the applicant to be materially incomplete or inaccurate because of changed circumstances.

(b)     An applicant or permit holder shall file an application amendment with the chief of police any time a prior statement contained on an application is known to the applicant to be materially incomplete or inaccurate because the statement was incomplete or inaccurate at the time of filing.

(c)     The time in which to file an application amendment is:

(1)     Thirty calendar days from the date of changed circumstances; or,

(2)     Thirty calendar days from the date that the applicant knows that a prior statement was incomplete or inaccurate.

(d)     It shall be unlawful for an applicant or permit holder to fail to comply with this section.

Sec. 21-209. Same - Non-refundable fees.

All fees required in this article are non-refundable. Payment of the fees shall be by cashier's check or money order and made payable to the City.

Sec. 21-210. Same --Term; renewal.

Each permit shall be valid for a term commencing upon issuance and shall expire on the 31st of December, unless sooner revoked, or surrendered. Each permit shall be subject to renewal as of its expiration date by the filing of a renewal application with the chief of police. Renewal applications must be filed at least twenty days prior to the expiration date of the permit that is to be renewed.

Sec. 21-211. Same - Issuance or denial.

(a)      Within thirty days of receipt of any application, either original or renewal, the chief shall grant or deny the requested permit and give written notice to the applicant as to the decision, unless such time period is extended at the request of the applicant as provided in subsection (d) below.

(b)      The chief of police shall issue a permit to the applicant within thirty days of verification unless one or more of the following conditions exist:

(1)      The applicant's sexually oriented business is located within 1,000 feet of any public or private elementary, secondary or high school, any place of regular religious worship, including property used as a church, synagogue, mosque, or other religious worship facility, public park, or licensed day-care center. Measurements shall be made in a straight line, without regard to intervening structures or objects, from the nearest point on the property line of the applicant's sexually oriented business to the nearest point on the property line of such school, church, public park, or licensed day-care center;

(2)      The applicant's sexually oriented business is located within 1,000 feet of any other sexually oriented business for which there is a permit. Measurements shall be made in a straight line, without regard to intervening structures or objects, from the nearest point on the property line of the applicant's sexually oriented business to the nearest point on the property line of any other sexually oriented business;

(3)    The applicant's sexually oriented business is located within 1,000 feet of any property located within an "RP" or a residential zoning district boundary, whether temporary or permanent, or devoted to a residential use, including any land zoned for one of the aforementioned residential uses which is also described as a planned unit development or traditional neighborhood development, but excluding airports;

(4)    The applicant failed to supply all of the information requested on the application;

(5)    The applicant gave materially false, fraudulent or untruthful information on the application;

(6)    The applicant's sexually oriented business is not in compliance with section 21-215 of this article (the chief may allow any noncompliance with section 21-215 to be cured during the chief's review period established in subsection (d), below, provided that it must be cured before the notice of decision on the permit is issued);

(7)    The application or the sexually oriented business does not meet any other requirement of this article:

(8)    The operator has had a permit revoked for the same sexually oriented business within the one-hundred-eighty-day period next preceding the date that the application was filed; or

(9)    The applicant has not demonstrated that the owner of the sexually oriented business owns or holds a lease for the property or the applicable portion thereof upon which the sexually oriented business will be situated or has a legally enforceable right to acquire the same.

(10)    Downtown District Prohibition.

In addition to the location restrictions of subsection (a), it shall be a violation to operate, own, manage, or maintain a sexually oriented business within the "D" downtown    zoning district boundary.

(11)    Certificate of Occupancy.

A certificate of occupancy for the business has not been obtained.  Said certificate of occupancy shall not authorize the operation of an unpermitted sexually oriented business.

(c)    Method of Measurement and Survey Requirements.

(1)    Sole Tenant.

Measurements shall be in a straight line, without regard to intervening structures or objects, from the nearest property line of the lot on which the sexually oriented

business is located, to the nearest property line of the protected properties described in the above subsection (a), which requires separation. This method of measurement shall apply to a sexually oriented business that is the sole tenant, within one (1) building, located on one (1) platted lot.

(2) Multiple Tenants.

Measurements shall be in a straight line, without regard to intervening structures or objects, from the nearest point of the occupied space of the sexually oriented business to the nearest property line of the protected property described in the above subsection (a) which requires separation. This method of measurement shall apply to a sexually oriented business that is a tenant within a multiple tenant building.

(3) Easements Excluded.

In calculating the distances described in subsections (b)(1) and (b)(2) above, easements (such as right-of-way, drainage and utility easements) that are zoned as, or abut, a protected property classification, shall not be considered as part of the protected property.

(4) Survey.

A certified survey prepared by a licensed surveyor or licensed engineer showing distance measurements in accordance with (1) and (2) of this subsection shall be submitted to the director of development services for all sexually oriented businesses as part of the application for the certificate of occupancy for the use. Any certificate of occupancy issued for a building or facility used to conduct a sexually oriented business without submission of the required survey shall be null and void.

(5) Property uses and distances for original applications shall be determined as of the time that the application is filed. If a renewal application is timely filed as provided in this section, the property uses and measurements for the renewal application shall be determined as of the time that the original application for the sexually oriented business was filed. If not timely filed, renewal applications shall be subject to the same fees and shall be treated in the same manner in all respects as original applications.

(d) In the event that the chief determines that an applicant is not eligible for a permit, the applicant shall be given notice in writing of the reasons for the denial within thirty days of the receipt of its application by the chief of police provided that the applicant may request, in writing, that such period be extended for an additional period of not more than ten days at any time before the notice is issued in order to make modifications necessary to comply with this section.

(e)     An applicant may appeal the decision of the chief regarding such denial by filing a written request for a hearing within twenty days after he is given notice of such denial. The chief's decision on the application shall be final unless an appeal is timely filed. An appeal shall not stay the chief's decision on the issuance of a permit. The applicant's written request for a hearing shall set out the grounds on which the denial is challenged.

1. The hearing shall be conducted by a hearing official designated by the city manager. Hearings shall be conducted by the hearing official. The hearing official shall not have participated in any investigation or decision relating to the denial of the permit. At the hearing the hearing official shall receive oral and written testimony regarding the application. Hearings shall be conducted under rules issued by the chief, which shall be consistent with the nature of the proceedings and shall ensure that each party may present evidence, cross-examine witnesses and be represented by legal counsel.

2. The hearing official shall conduct the hearing within twenty days after receipt of the applicant's written request for a hearing unless the applicant requests an extension in writing. The hearing official shall render a written decision and issue notice thereof to the applicant within five days after the conclusion of the hearing. The written decision of the hearing official shall be final subject to the provisions of section 21-252 of this article.

(f)     Failure of the chief to give timely notice of his action on an application, or failure of the hearing official to timely conduct or give notice of his decision on an appeal from the chief's decision shall entitle the applicant to the issuance of a temporary permit upon written demand therefor filed by the applicant with the chief unless the delay resulted from a written request for a delay or deferral by the applicant. Such temporary permit shall only be valid until the third day after the chief gives notice of his action on the application or the hearing official gives notice of his decision on the appeal, as applicable.

(g)    In any instance in which the applicant's establishment is to be situated within 1,000 feet, as measured hereunder, from another proposed establishment for which a previously filed permit application has been denied, and the previously filed application is still subject to appeals, the chief may grant the permit on a conditional basis, subject to the outcome of the appeals on the previous application. A permit so issued may be withdrawn and denied effective upon the third day after notice thereof is given to the operator following the resolution of the appeals on the prior permit. In case of denial the applicant shall have the same rights of appeal hereunder as if the permit had been denied in the first instance.

(h)    The provisions of item (2) of subsection (b) of this section, above, shall not be construed to prohibit a sexually oriented business for which there is a permit from relocating to another location situated within one thousand feet of its existing location, provided that the proposed location complies with all applicable requirements of this article other than its proximity to its own existing sexually oriented business location. An original permit application shall be required to be filed for the proposed relocation, and the chief shall conditionally grant the application on the stipulation that the permit will not actually be issued until the applicant discontinues operation at its existing location and surrenders the permit for its existing location. Any such relocation must be completed within one hundred eighty days from the date that the permit is conditionally granted or the conditional grant of the application will become void. Pending the removal of the sexually oriented business to its new location, both the old and new locations shall be deemed to be operating under a permit for purpose of measurements to locations of other proposed sexually oriented business for which applications may be filed.

(i)    If an application is rejected based on an inspection of the premises only, the chief of police shall provide to the owner-operator a notice of rejection within twenty business days following the deadline to issue a permit or notice.

(j)    An applicant may request a re-inspection only if the owner-operator:

(1)    Submits the request, by certified mail, return receipt requested, within ten business days subsequent to the receipt of the decision of the chief of police; and

(2)    Pays to the city a nonrefundable inspection fee of $150.00 with the submission of the request.

Sec. 21-212. Same Transfer upon change.

(a)	A permit is personal to the owner(s) and the operator designated in the application who holds the permit on the owner(s)' behalf as the owner(s)' agent, provided it may be transferred pursuant to this section. A transfer application must be filed by the tenth day next following any change of the owner(s) or operator designated on the application. In the event that a transfer application is not timely filed, then the permit shall be invalid for any purpose relating to the operation of the sexually oriented business, and any transfer shall require the filing of an original permit application and be subject to the regulations applicable thereto. For purposes of measurements between sexually oriented businesses under section 21-211 of this Code, an establishment for which the permit has become invalid by operation of this section shall be treated as though it had a permit until the permit is revoked pursuant to section 21-213 of this Code.

(b)	The chief shall prescribe a form on which permit transfer applications shall be made. The form shall include a statement under oath that the original application remains correct as previously submitted in all respects except those that are amended hereby. The transfer application shall contain a statement under oath that the individual signing the transfer application has personal knowledge of the information contained therein and that the information is true and correct and shall not be complete unless accompanied by a nonrefundable transfer fee of $100.00. Transfer applications shall be filed in the same place and at the same time as original applications and the fee shall be payable in the same manner as for original applications, as provided in section 21-206 of this Code.

(c)	Transfers shall be reviewed, issued and subject to appeal in the same manner as original applications, pursuant to section 21-211 of this Code, except that items 211 (b) (1), (2), and (3) shall not apply, and they shall be issued for the remaining term of the permit to be transferred.

(d)	No change in ownership of a sexually oriented business or transfer of a permit for a sexually oriented business shall be allowed during the pendency of any administrative proceeding under section 21-213 of this article, from the time that any request for revocation or suspension has been filed with the hearing official until the hearing official's order is final. Any such transfer or attempted transfer shall confer no rights whatsoever in the permit for the sexually oriented business to the putative transferee.

Sec. 21-213. Same Revocation or suspension of permit.

(a)     The city attorney shall have the authority to request the revocation of a permit for any one or more of the following reasons:

>    (1)     The owner or operator of the permitted sexually oriented business knowingly allowed a person under eighteen years of age to enter an sexually oriented business;

>    (2)     The permitted sexually oriented business does not conform to the provisions of this article;

>    (3)     Three or more cumulative violations of any of the specified criminal acts or of the provisions contained in this article have occurred on the premises of the permitted sexually oriented business. These violations must have occurred in a consecutive period of twelve months, and the owner, operator or any manager, or floor-manager licensed under this article : (i) knowingly allowed such violations to occur; (ii) did not make a reasonable effort to prevent the occurrence of such violations; or (iii) should have known that such violations were occurring or did occur;

>    (4)     The operator of the permitted sexually oriented business gave materially false, fraudulent or untruthful information on the original, renewal or transfer application form;

>    (5)     The sexually oriented business has not been open for business for a period of thirty consecutive days, unless due to circumstances beyond the control of the owner, and the owner is proceeding with due diligence, given all attendant circumstances, to open or reopen the establishment;

>    (6)     There was a change of owner or operator for which a transfer application was not timely filed pursuant to section 21-212 of this Code; or

>    (7)     The permit was erroneously issued in contravention of the criteria of this article.

(b)     The city attorney shall have sole authority to initiate any action for revocation of a permit; provided, that the chief may request that the city attorney give priority to any such action based upon the number or nature of violations involving a particular sexually oriented business.

(c)     Prior to revocation of a permit, the city attorney, with the assistance of the chief, shall investigate the grounds alleged to determine whether probable cause for revocation may exist and, if so, shall notify the owner(s) and operator in writing of reasons for the proposed revocation and grant such owner(s) and operator the opportunity to appear before a designated hearing official at a time and place specified within such notice. The hearing official shall not

have participated in any investigation of the alleged grounds for the revocation. Such hearing shall be held not less than twenty days after the notice is given. Hearings shall be conducted under rules issued by the chief. Such rules shall be consistent with the nature of the proceedings and shall ensure that each party may present evidence, cross-examine witnesses and be represented by legal counsel. If, after the hearing, the hearing official finds that the permit should be revoked, he shall issue a written order revoking such permit which shall be effective upon the date the written notice is given. If the hearing official determines, based upon the nature of the violation, that the ends of justice would be served by a suspension in lieu of a revocation, he may suspend the operation of the permit for a period of time to be stated in the order of suspension.

(d)     A sexually oriented business shall be treated as having a permit for purposes of measurements under section 21-211(b)(2) of this Code, pending the final disposition of any court action involving judicial review of a permit revocation. An establishment holding a suspended permit shall be treated as having a permit for the purpose of measurements made under section 21-211(b)(2) of this Code.

Sec. 21-214. Same - Other permit provisions.

(a)     A permit is valid only at the location for which it is issued.

(b)     It shall be unlawful for any person to counterfeit, forge, change, deface, or alter a permit.

(c)     A permit may be cancelled upon written request of the owner(s) or operator and surrender of the permit to the chief. Permits shall be surrendered at the same place and at the same time as provided in section 21-206 of this article. The surrender of a permit shall be effective upon its filing in the office of the police department.

(d)     A permit shall not constitute authorization to operate the sexually oriented business as an adult arcade or adult mini-theatre as that term is defined herein and in Division 3 of this article. Each sexually oriented business that also constitutes an adult arcade or adult mini-theatre shall require an additional permit under Division 3 of this article.

Sec. 21-215. Exterior portions of sexually oriented business.

It shall be unlawful for an owner or operator of a sexually oriented business to allow the merchandise or activities of the sexually oriented business to be visible from any point outside such sexually oriented business.

Sec. 21-216. Persons younger than eighteen prohibited from entry; attendant required.

(a)    It shall be unlawful to allow a person who is younger than eighteen years of age to enter or be on the premises of a sexually oriented business at any time that the sexually oriented business is open for business.

(b)    It shall be the duty of the operator of each sexually oriented business to ensure that an attendant is stationed at each public entrance to the sexually oriented business at all times during such sexually oriented business's regular business hours. It shall be the duty of the attendant to not allow any person under the age of eighteen years to enter the sexually oriented business. It shall be presumed that an attendant knew a person was under the age of eighteen unless such attendant asked for and was furnished:

(1)    A valid operator's, commercial operator's, or chauffeur's driver's license; or
(2)    A valid personal identification certificate issued by the Texas Department of Public Safety reflecting that such person is eighteen years of age or older.

Sec. 21-217. Notices.

(a)    Any notice required or permitted to be given by the chief or any other city office, division, department or other agency under this article to any applicant, operator or owner of a sexually oriented business may be given either by personal delivery or by United States mail addressed to the most recent address as specified in the application for the permit, or transfer application which has been received by the chief or any notice of address change which has been received by the chief. Notices mailed as above shall be deemed given upon their deposit in the United States mail. In the event that any notice given by mail is returned by the postal service, the chief shall cause it to be posted at the principal entrance to the establishment.

(b)    Any notice required or permitted to be given to the chief by any person under this article shall not be deemed given until and unless it is received by the police department at the times and in the manner provided for filing of applications in section 21-206 of this article.

(c)    It shall be the duty of each owner who is designated on the permit application and each operator to furnish notice to the chief in writing of any change of residence or mailing address.

Sec. 21-218. Configuration of buildings.

An individual or entity violates this article if he operates a sexually oriented business establishment which fails to meet the configuration requirements in this section. The layout or interior construction design of any such establishment must include each of the following:

(a)    Excepting a door that may serve as an entrance or exit to the building of the sexually oriented business and excepting the interior of lavatories, for each area to which a customer    or patron on the premises is allowed access, the following requirements are applicable:

    1.    Each interior door must be made of clear glass that is no thicker than one-half-inch or of wood that is no thicker than one and one half inches.

    2.    All wooden doors must contain a clear glass window that is no thicker than one-half-inch and at least twelve inches wide by twelve inches high. Said window must be unobstructed at all times and situated on the door at a height no less than four and one-half feet and no greater than six feet from the ground.

    3.    Excepting the doorknob, no interior door may be made of metal, reinforced by metal, or be thicker than allowed herein.

    4.    No interior door may have more than one throw from the doorknob or in any other manner latch from more than one place into a striker plate whenever the door is closed.

    5.    Excepting one lock that forms part of the doorknob and is neither a deadbolt nor chain, no interior door may have a deadbolt, chain, and any type of lock.

    6.    Each interior doorframe to a wooden door may not be reinforced with any type of metal, excepting a cubic area that is part of the striker plate in the dimensions of not more than six inches long by two inches wide by six inches high.

(b)    Excepting conduits for plumbing, heating, air conditioning, ventilation, electrical service, cable or satellite television, or food or drink service, no opening is allowed:

    1.    In any wall;

    2.    Partition;

    3.    Screen;

    4.    Lavatory stall;

    5.    Dressing room; or,

    6.    Any other barrier between viewing areas or toilettes.

(c)     The conduits for plumbing, heating, air conditioning, ventilation, electrical service, and cable or satellite television must be so screened or otherwise configured to prevent their use as openings that would allow any portion of an individual to penetrate the wall or barrier between the viewing areas or toilettes.

(d)     During hours of operation, the light fixtures shall be kept on at a sufficient intensity to illuminate by not less than one foot-candle as measured at four feet above the level of the floor and at every area where customers or patrons are allowed.

(e)     Excepting the lavatories, no area to which patrons or customers have access, shall be less than three hundred square feet.

Sec. 21-219.   Access, supervision.

(a)     It shall be unlawful for any owner, operator, manager, or floor-manager of any sexually oriented business to permit any employee to provide any entertainment to any customer in any separate area within a sexually oriented business to which entry or access is blocked or obscured by any door, curtain or other barrier, regardless of whether entry to such separate area is by invitation, admission fee, club membership fee or any form of gratuity or consideration.

(b)     It shall be the duty of any owner, operator or manager, or floor-manager of a sexually oriented business to allow immediate access by any police officer, city fire department official or health officer to any portion of the premises of the sexually oriented business upon request for purpose of inspection of such premises for compliance with this article, or any other applicable law.

(c)     It shall be the duty of any owner, operator or manager of a sexually oriented business to ensure that at least one floor-manager is on duty on the premises at all times during which the sexually oriented business is open for business or during which customers are on the premises.

(d)     It shall be the duty of any owner, operator or manager of a sexually oriented business to ensure that all persons acting as managers, floor managers or entertainers on the premises hold and display permits under this article, and that entertainers comply with section 21-234 of this article.

(e)     It shall be the duty of the manager to ensure that no entertainer or floor-manager is allowed or suffered to conduct any business on the premises of a sexually oriented business unless the manager thereof has in his possession or control a sexually oriented business permit

for the floor-manager, or entertainer. On-site cards shall be made available for immediate inspection by any police officer, fire department official or health officer. Entertainers working at more than one sexually oriented business may retrieve their on-site cards upon departing the premises in order to present them to a manager at any other sexually oriented business where such persons are employed to hold while the entertainer remains on those premises.

(f)     It shall be the duty of any owner, operator or manager to maintain a complete list of all persons, including names and addresses, who conduct any business on the premises and are required to obtain a permit under this article.

Sec. 21-220. Hours of operation.

(a)     A sexually oriented business establishment shall not allow customers or patrons onto the premises during the hours of 2:15 a.m. through 7:00 a.m. on any day of the week.

(b)     It shall be unlawful for a sexually oriented business establishment to allow customers or patrons onto the premises during the proscribed hours as provided in subsection (a).

Sec. 21-221. Posting of permit.

(a)     The sexually oriented business permit shall be framed and posted at the main entrance of the establishment, in such a manner that it is plainly visible to the general public entering the establishment, at a height of no less than four feet and no more than six feet from the ground. It shall be unlawful to obstruct from plain view a posted sexually oriented business permit.

(b)     It shall be unlawful to fail or refuse to post the sexually oriented business permit.

(c)     If a notice of revocation is delivered, the chief of police shall remove the sexually oriented business permit from the wall of the sexually oriented business establishment; post the notice of revocation on the exterior wall next to the front entrance of the sexually oriented business establishment; and, post a copy of the notice of revocation on the exterior side of each door that may serve as an entrance or exit to the sexually oriented business establishment.

(d)     It shall be unlawful for an individual other than the chief of police to destroy or remove a posted notice of revocation.

Sec. 21-222. Same--Records.

(a)     The owner-operator, manager, or floor-manager of any sexually oriented business shall keep on the premises a register of all employees of the sexually oriented business establishment that includes a copy of a photographic identification card issued by a governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof to the employee and:

(1)     Each employee's true name;

(2)     Aliases;

(3)     Gender;

(4)     Height;

(5)     Weight;

(6)     Color of hair and eyes;

(7)     Date of birth;

(8)     Date of initial employment;

(9)     Date of termination, if applicable; and

(10)    Specific job or employment duties.

(b)     The register shall be maintained for all current employees and ex-employees employed at any time during the preceding thirty-six months, except that the ordinance shall not operate to require this information prior to its effective date.

(c)     It shall be unlawful to fail to maintain the register or refuse to present the register to a peace officer upon request.


DIVISION 2.  SEXUALLY ORIENTED BUSINESS EMPLOYEE PERMITS, OPERATIONS,
& CONDUCT

Sec. 21-223.   Definitions.

As used in this division, the following words and terms shall have the meanings ascribed to them in this division, unless the context of their usage clearly indicates another meaning:

*Conduct any business in a sexually oriented business.* Any person who does any one or more of the following shall be deemed to be conducting business in a sexually oriented business:

(1)     Operates a cash register, cash drawer or other depository on the premises of the sexually oriented business where cash funds or records of credit card or other credit

transactions generated in any manner by the operation of the sexually oriented business or the activities of the premises of the sexually oriented business;

(2) Displays or takes orders from any customer for any merchandise, goods, entertainment or other services offered on the premises of the sexually oriented business;

(3) Delivers or provides to any customer any merchandise, goods, entertainment or other services offered on the premises of the sexually oriented business;

(4) Acts as a door attendant to regulate entry of customers or other persons into the premises of the sexually oriented business; or

(5) Supervises or manages other persons in the performance of any of the foregoing activities on the premises of the sexually oriented business.

*Customer.* Any person who:

(1) Is allowed to enter a sexually oriented business or any portion of a sexually oriented business in return for the payment of an admission fee, membership fee or any other form of consideration or gratuity;

(2) Enters a sexually oriented business or any portion of a sexually oriented business and purchases, rents or otherwise partakes of any merchandise, goods, entertainment or other services offered therein; or

(3) Is a member of and on the premises of a sexually oriented business operating as a private or membership club or a sexually oriented business that reserves any portion of the premises of the sexually oriented business as a private or membership club.

*Chief or Chief of Police.* The chief of police and such employee(s) of the police department as he may designate to perform the duties of the chief under this article.

*Employee.* Any person who renders any service whatsoever to the customers of a sexually oriented business, works in or about a sexually oriented business or who conducts any business in a sexually oriented business and who receives or has the expectation of receiving any compensation from the operator, or customers of the sexually oriented business. By way of example, rather than limitation, the term includes the operator and other management personnel, clerks, dancers, models and other entertainers, food and beverage preparation and service personnel, door persons, bouncers, and cashiers. It is expressly intended that this definition cover not only conventional employer-employee relationships but also independent contractor relationships, agency relationships, and any other scheme or system whereby the 'employee' has

an expectation of receiving compensation, tips, or other benefits from the sexually oriented business or its customers in exchange for services performed.

*Entertainer* shall mean any individual, male or female, who poses, dances, or knowingly or intentionally appears for the purpose of being observed or viewed for any reason by any individual while in a state of nudity, semi-nudity, or while engaging in specified sexual activities.

*Entertainer's permit* shall mean a license issued to an individual as lawful authority to act as an entertainer in a sexually oriented business.

*Entertainment* shall mean:

(1)   Any live exhibition, display or performance; or

(2)   Any still picture(s) or movie picture(s), whether mechanically, electrically or electronically displayed; or

(3)   Any combination of the foregoing, in which the specified anatomical areas or specified sexual activities are depicted.

*Manager.* Any person who supervises, directs or manages any employee of an sexually oriented business or any other person who conducts any business in an sexually oriented business with respect to any activity conducted on the premises of the sexually oriented business, including any 'on-site manager.

*Operator.* The manager or other natural person principally in charge of an sexually oriented business.

*Owner* or *owners.* The proprietor if a sole proprietorship, all general partners if a partnership, or the corporation if a corporation.

*Permit.* A current, valid permit issued by the chief pursuant to the terms of this article.

*Separate area.* Any portion of the interior of a sexually oriented business separated from any other portion of a sexually oriented business by any wall, partition or other divider.

*Specified anatomical areas:*
(1)   Less than completely and opaquely covered:
    a.   Human genitals, pubic region or pubic hair;
    b.   Buttock;
    c.   Any portion of the female breast that is situated below a point immediately above the top of the areola; or
    d.   Any combination of the foregoing; or

(2)  Human male genitals in a discernibly erect state, even if completely and opaquely covered.

*Sexually Oriented Business or "SOB"* means an adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, adult mini-theater, escort agency, nude modeling studio, unlicensed massage parlor, or any other establishment whose one of its primary business purposes is the offering of a service, live entertainment or the selling, renting, or exhibiting of devices or any specified anatomical parts intended to provide sexual stimulation or sexual gratification to the customer and which is distinguished by or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas. The term 'sexually oriented business' shall not be construed to include:

(1)  Any business operated by or employing licensed psychologists, licensed physical therapists, licensed athletic trainers, licensed cosmetologists, or licensed barbers performing functions authorized under the licenses held;

(2)  Any business operated by or employing licensed physicians or licensed chiropractors engaged in practicing the healing arts; or

(3)  Any retail establishment whose major business is the offering of wearing apparel for sale to customers.

*Sexually Oriented Business or "SOB" permit* shall mean the original license issued to an owner-operator of a sexually oriented business as lawful authority to operate a sexually oriented business.

*SOB* shall mean sexually oriented business.

*Specified sexual activity* means actual and simulated human genitals in a state of sexual stimulation or arousal, even if completely and opaquely covered, actual or simulated human masturbation, sexual intercourse, sodomy, fellatio, cunnilingus, fondling or other erotic touching of human genitals, pubic region, buttock or female breast, and excretory functions as part of or in connection with the above described activity or any act of bestiality, masturbation, sexual intercourse, sodomy, fellatio, sadomasochism, or physical contact with a person's own or another person's specified anatomical area.

Sec. 21-224.   Entertainer, Manager, & Floor Manager permit required.

(a)   It shall be unlawful for any person who does not hold a permit to act as an entertainer, a manager, or floor-manager of or in a sexually oriented business.

(b)   It shall be the duty of the operator and owners of each sexually oriented business to ensure that no person acts as an entertainer, manager, or floor-manager of or in the sexually oriented business unless that person holds a permit.

Sec. 21-225. Process for requesting an SOB Entertainer, Manager, & Floor Manager permit.

(a)   The chief of police shall create a form for each type of permit consistent with the provisions of this article.

(b)   An applicant may obtain a form from the City of San Antonio Government website page (sanantonio.gov/sapd) or at the San Antonio Police Department (SAPD) Headquarters Records Unit. Applications shall be accepted Tuesday through Thursday, excluding Holidays, between the hours of 1:00 p.m. and 4:00 pm.  Applications shall not be accepted at any other time or on any other day.

(c)   At the time that the chief of police receives an application, the applicant shall pay the required fee of $150.00 at the Records Unit service window.  The applicant will receive a receipt and paperwork from the Records Division along with their completed application and submit said information and waiver form to the Identification Division.  The Identification Division shall take fingerprints and generate an SOB Permit number.  The applicant will then be photographed at the Identification Division.

(d)   All photographs and applications shall be used to perform a background investigation and for the purpose of photographic identification of permit holders, and shall be kept on record with the chief of police while the applicant possesses a valid permit, and for a period of five years after the expiration, revocation, or denial of the permit.

(e)   All photographs of applicants shall be destroyed at the expiration of five years after the expiration, revocation, or denial of the permit, but all applicants submitting new applications shall be required to comply with photograph and fingerprint requirements in this section.

(f)   The police department shall conduct a criminal background check and verify the applicant is eligible to receive an SOB entertainer, manager, or floor-manager permit.  All

application information related to entertainer's permits shall be held confidential by the police department.

Sec. 21-226.    Qualifications and specifications -- Manager's permit and temporary manager's permit.

(a)    Unless an individual is disqualified under one or more of the provisions of this section, an individual who performs the following acts shall be qualified for a permit:

(1)    Pay $150.00 as a non-refundable processing fee to the city;

(2)    Answer under oath accurately and completely the requests for information contained on the form for the permit;

(3)    Provide proof of identity by presenting to the chief a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth,    or territory thereof;

(4)    Provide proof that the applicant is at least eighteen years of age or older; and,

(5)    Appear at the place designated by the chief of police and submit to being photographed and fingerprinted.

(b)    If on the basis of substantial evidence, the chief concludes that one of the following conditions exists then an individual shall be disqualified from receiving the manager's permit:

(1)    The individual is a sex offender subject to registration under Chapter 62 of the Texas Code of Criminal Procedure;

(2)    The individual is convicted of a felony, not included in subsection 21-230, in any jurisdiction during the preceding ten years;

(3)    The individual has been convicted of or been placed on deferred adjudication for a specified criminal act, not included in subsection 21-230, in any jurisdiction, during the preceding ten years;

(4)    The individual has submitted false information on a form for the permit or the individual has responded falsely to inquiries in a background investigation;

(5)    At the time of application, the individual is disqualified from receiving or holding a permit pursuant to 21-230 of this article; or

(6)     At the time of application, the individual has a suspended permit or has had a permit revoked within the past calendar year, pursuant to section 21-230 of this article.

(c)     An individual who applies for a manager's permit shall provide the following information:

(1)     The information contained in a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof;

(2)     The name and address of the sexually oriented business for which the individual requests the permit;

(3)     Whether the individual has been convicted of or placed on deferred adjudication for an offense for which the individual is subject to registration under Chapter 62, Texas Code of Criminal Procedure, along with a list of each of the aforementioned offenses;

(4)     Excluding traffic offenses, a list of each misdemeanor or felony, not included in subsection (c)(3), for which the individual has been convicted or received deferred adjudication during the past ten years;

(5)     Excluding traffic offenses, a list of each misdemeanor or felony, not included in subsection (c)(3), for which the individual is under community supervision at the time of application;

(6)     The name and address of each court and jurisdiction listed in response to subsection (c)(3) herein;

(7)     The name and address of each court and jurisdiction for those offenses that the individual is under community supervision at the time of application in response to subsection (e)(3);

(8)     A signed waiver and authorization allowing the chief to request criminal history reports from pertinent federal, state, and local law enforcement for the individual submitting an application; and,

(9)     A driver's license number of a state, possession, commonwealth or territory of the United States of America, if issued, and, a Social Security number of the United States of America, if issued.

(d)     A manager's permit shall consist of one photographic identification card that contains the following information: a photograph of the manager; the name and address of the sexually

oriented business at which the manager's permit is valid; the permit identification number assigned by the city; the date of issuance; the effective date; and, the date of expiration.

(e)     A temporary manager's permit shall be issued within three business days of the application when:

        (1)     The applicant for a manager's permit has submitted a completed application pursuant to the provisions herein;

        (2)     The applicant supplies the police department with a copy of a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth, or territory thereof;

        (3)     A preliminary investigation indicates that the applicant is otherwise qualified under this section for the issuance of a temporary manager's permit; and

        (4)     The applicant has not applied for or been granted a temporary manager's permit in the year preceding the application.

(f)     Each temporary manager's permit is valid for thirty calendar days from the date of issuance or until the issuance of a manager's permit, whichever occurs first.


Sec. 21-227. Same--Floor-manager's and temporary floor-manager's permit.

(a)     Unless an individual is disqualified under one or more of the provisions of this article, an individual who performs the following acts shall be qualified for a floor-manager's permit:

        (1)     Pay $150.00 as a nonrefundable processing fee to the city; and

        (2)     Perform those acts detailed at subsections 21-226(c) herein.

(b)     The following conditions shall disqualify an individual from obtaining a floor-manager's permit: those conditions specified at subsections 21-226(b) herein.

(c)     An individual who applies for a floor-manager's permit shall provide that information specified at subsections 21-226(c).

(d)     A floor-manager's permit shall consist of two photographic identification cards that contains a photograph of the floor-manager, the permit identification number assigned by the city, the date of issuance, the effective date, and the date of expiration.

(e)     A temporary floor-manager's permit shall be issued within three business days of application for same if:

(1)     The applicant has submitted a completed application pursuant to the provisions herein and paid $150.00 as a nonrefundable processing fee to the city;

(2)     The applicant supplies the police department with copy of a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth,     or territory thereof;

(3)     A preliminary investigation indicates that the applicant is otherwise qualified under this section for the issuance of a temporary floor-manager's permit; and

(4)     The applicant has not applied for or been granted a temporary floor-manager's permit in the year preceding the application.

(f)     Each temporary floor-manager's permit is valid for ten business days from the date of issuance.

Sec. 21-228. Same--Entertainer's permit and temporary entertainer's permit.

(a)     Unless an individual is disqualified under one or more of the provisions of this article, an individual who performs the following acts shall be qualified for an entertainer's permit:

(1)     Pay $150.00 as a nonrefundable processing fee to the city; and

(2)     Perform those acts detailed at subsections 21-226(c).

(b)     The following conditions shall disqualify an individual from obtaining an entertainer's permit: those conditions specified at subsections 21-226(b) and (c) and 21-230.

(c)     An individual who applies for an entertainer's permit shall provide the information specified in subsection 21-226(c).

(d)     An entertainer's permit shall consist of two identification cards that contain a photograph of the entertainer, the permit identification number assigned by the city, the date of issuance, the effective date, and the date of expiration.

(e)     A temporary entertainer's permit shall consist of two identification cards that contain the permit identification number assigned by the city, the date of issuance, the effective date, and the date of expiration.

(f)     A temporary entertainer's permit shall be issued within three business days of the application when:

(1)    The applicant for a temporary entertainer's permit has submitted a completed application to the police department Identification Division, pursuant to the provisions herein, and prior to 3:00 p.m. of the last business day before a scheduled performance by applicant;

(2)    The applicant supplies the police department with a copy of a valid and lawful photographic identification card that was issued to the individual by a governmental authority of the United States of America or any state, possession, commonwealth,    or territory thereof;

(3)    If the aforementioned photographic identification and signature of the applicant for a temporary entertainer's permit are not available at the time the application for a temporary entertainer's permit is submitted to the police department, a legible copy of said identification and signature shall be transmitted via facsimile transmission or personal delivery to the police department by the manager, along    with    a    manager's affidavit, wherein the manager vouches for said identification and signature, in a manager's affidavit, prior to the time of the first performance by the temporary entertainer.

(4)    Preliminary investigation warrants the issuance of a temporary entertainer's permit;

(5)    The applicant pays $150.00 as a nonrefundable processing fee to the city for each temporary entertainer's permit;

(6)    The applicant designates the sole sexually oriented business at which the temporary entertainer's permit may be used;

(7)    The applicant has not applied for or been granted more than three temporary entertainer's permits during the calendar year for which the application is made and the sexually oriented business at which the permit will be used has not hosted    more    than eleven entertainers who have a temporary entertainer's permit during the calendar year in which an applicant seeks a temporary entertainer's permit for use at said sexually oriented business.

(g)    A temporary entertainer permit shall be valid for a period of not longer than seven calendar days from the date of issuance and shall be valid at only one designated sexually oriented business.

Sec. 21-229.    Term, transfer, amendment.

(a)    A permit is valid for a term commencing upon issuance and expiring the 31st of December, unless previously revoked or suspended.

(b)    A permit is personal to the named permit holder and is not valid for use by any other person.

(c)    Each permit holder shall notify the police department of their new address within ten days following any change of address.

Sec. 21-230.    Denial, Revocation, or Refusal to Renew Permits.
Any of the following offenses shall consist of grounds for denial, revocation, or refusal to renew permits:

a.    Any of the following offenses as described in chapter 43 of the Texas Penal Code:

    (i)    Prostitution;

    (ii)    Promotion of prostitution;

    (iii)    Aggravated promotion of prostitution;

    (iv)    Compelling prostitution;

    (v)    Obscenity;

    (vi)    Sale, distribution or display of harmful material to a minor;

    (vii)    Sexual performance by a child;

    (viii)    Employment harmful to children; or

    (ix)    Possession or promotion of child pornography;

b.    Any of the following offenses as described in chapter 21 of the Texas Penal Code:

    (i)    Public lewdness;

    (ii)    Indecent exposure; or

    (iii)    Indecency with a child;

c.    Sexual assault or aggravated sexual assault as described in chapter 22 of the Texas Penal Code;

d.    Harboring a runaway child as described in chapter 25 of the Texas Penal Code;

e.    Criminal attempt, conspiracy or solicitation to commit any of the above offenses;

f.    Human trafficking as described in chapter 20A of the Texas Penal Code; or

g.      Any violation of this article.

The above-listed offenses shall be grounds for the denial, revocation or refusal for renewal of a permit under this division because persons who hold that permit are employed by sexually oriented businesses where there is a high degree of opportunity for unlawful sexual conduct or the solicitation thereof, lewd conduct, obscenity offenses, and conduct harmful to minors. Therefore, the enumerated offenses are directly related to the duties and responsibilities authorized by the subject permit. There is a serious need to protect members of the public and fellow employees of sexually oriented business from persons who have the foregoing criminal histories.

Sec. 21-231. Inspections and background checks; deadlines.

The police department shall conduct all necessary background investigations prior to the expiration of thirty calendar days from the receipt of an application for a sexually oriented business permit for an entertainer, manager, or floor manager for the purpose of determining whether each applicant is in compliance with the provisions of this article, and based upon those findings, the chief of police shall either issue or reject the permit in accordance with the deadlines found in subsection 21-211(a) and (b).

Sec. 21-232.  Same – Denial of Permits.

(a)      No permit application shall be accepted nor shall a permit be issued to any person who does not provide proof that he is at least 18 years old. Any permit issued by virtue of any misrepresentation or error to any person under age 18 shall be void.

(b) In the event that the chief fails to issue or deny a permit application within the time specified herein, then the applicant shall, upon written request, be immediately issued a temporary permit which shall be valid until the third day after the applicant is given notice of the decision of the chief or the hearing officer.

(c)      An applicant may appeal the decision of the chief regarding denial by filing a written request for a hearing within twenty days after notice has been given of the denial. The chief's decision on the application shall be final unless an appeal is timely filed. An appeal shall not stay the chief's decision on the issuance of a permit. The applicant's written request for a hearing shall set out the grounds on which the denial is challenged.

(d)    The hearing shall be conducted by a hearing official designated by the city manager. Hearings shall be conducted by the hearing official. The hearing official shall not have participated in any investigation or decision relating to the denial of the permit. At the hearing the hearing official shall receive oral and written testimony regarding the application. Hearings shall be conducted under rules issued by the chief, which shall be consistent with the nature of the proceedings and shall ensure that each party may present evidence, cross-examine witnesses and be represented by legal counsel.

(e)    The hearing official shall conduct the hearing within twenty days after receipt of the applicant's written request for a hearing unless the applicant requests an extension in writing. The hearing official shall render a written decision and issue notice thereof to the applicant within five days after the conclusion of the hearing. The written decision of the hearing official shall be final subject to the provisions of section 21-252 of this article.

Sec. 21-233.  Same – Permits.

(a)    Each permit issued by the chief shall consist of two photographic identification cards, a personal card and an on-site card excepting a manager's permit.

(b)    If any personal card or on-site card is lost or stolen, the holder thereof shall immediately notify the police department and request a replacement, which shall be issued for a fee of ten dollars within three business days following verification of the identity of the holder.

Sec. 21-234.   Display.

(a)  Each  manager,  floor-manager,  and/or  entertainer  (temporary  or  otherwise)  shall conspicuously display their personal card upon their person at all times while acting as an entertainer, floor-manager, or manager of or in a sexually oriented business.

(b) Each floor-manager or entertainer shall provide their on-site card to the manager in charge of the sexually oriented business to hold while the floor-manager or entertainer is on the premises.

(c) In any prosecution under this section, it shall be presumed that the actor did not have a permit unless the permit was in display as required under section (a) of this subsection.

Sec. 21-235. Duties of owners, employees and customers.

(a)     Notwithstanding any other provision in this article, owners are not criminally culpable for violations of employees, except that owners remain criminally culpable for their own and personal violations.

(b)     Each manager, floor-manager, entertainer, and owner-operator shall comply with the provisions of this article.

(c)     Each temporary manager, temporary floor-manager, and temporary entertainer shall comply with the provisions of this article.

(d)     Each employee, customer, and patron shall comply with the provisions of this article.

(e)     Each manager, floor-manager, temporary manager, and temporary floor-manager, and owner-operator shall ensure that each employee, customer, and patron complies with the provisions of this article.

(f)     It shall be unlawful for a manager, floor-manager, temporary manager, or temporary floor-manager, or owner-operator to allow conduct described in this section of this article. Whenever an employee, customer, or patron fails to comply with this section of this article, it shall be presumed that a manager or floor-manager, temporary manager, or temporary floor-manager, allowed the prohibited conduct if the manager, floor-manager, temporary manager, or temporary floor-manager was present on the premises at the time of the violation.

(g)     Three-foot rule.

   (1)     It shall be unlawful for any person to intentionally or knowingly entertain or appear in a state of semi-nudity on the premises of a sexually oriented business unless the person is more than three feet from any patron or customer.

   (2)     It shall be unlawful for a patron or customer on the premises of a sexually oriented business to intentionally or knowingly approach within three feet or less of a person who is entertaining or appearing in a state of semi-nudity.

(h)     It shall be unlawful for any person entertaining or appearing in a state of semi-nudity at a sexually oriented business to accept a gratuity unless it is placed in a receptacle provided for receipt of gratuities or delivered hand-to hand without touching and with the hand of each person extended at least one and one-half feet away from the body of that person. The receptacle may not be located on any person or their clothing.

(i)     It shall be unlawful for any permittee hereunder or operator of a sexually oriented business to allow any room within the establishment to be used for the purpose of live semi-nude

entertainment unless the room is marked with a sign in typeface no less than one inch in length per letter in such a manner that it is plainly visible to the general public at a height of no less than four feet and no more than six feet from the ground stating, "Three Foot Rule - It is a violation of the San Antonio City Code for a customer or patron to intentionally or knowingly approach within three feet or less of any person who is in a state of semi-nudity or entertaining."

(j)     It shall be unlawful for any employee to be in a state of semi-nudity, or to perform specified sexual activities while in the presence of any customer or patron and while in an area within the sexually oriented business not subject to the direct line of site of a manager or floor-manager.

(k)     It shall be unlawful for any employee to entertain while in a lavatory, or in a stairway or elevator used as access between floors.

(l)     It shall be the duty of the owner-operator to ensure that there exists at least one manager for the sexually oriented business at all times.  It shall be the duty of each owner-operator or manager of a sexually oriented business to ensure there are a sufficient number of managers    or floor managers stationed in such a manner so that all patrons and customers are in view of at least one floor-manager at all times, excepting patrons and customers in the lavatory.

(m)     It shall be unlawful for a manager, floor-manager, owner-operator, or operator on the premises of any sexually oriented business to allow any individual to be on the premises of a sexually oriented business who is younger than eighteen years of age. It shall be presumed that a manager, or floor-manager allowed the individual to be on the premises if the manager or floor-manager was present on the premises at the time the underage individual was present.

(n)     It shall be unlawful for any individual to be on the premises of any sexually oriented business who is younger than eighteen years of age.

(o)     It shall be the duty of the owner-operator, or operator of any sexually oriented business to conform the interior of the premises to the specifications provided in this article.

(p)     It shall be the duty of the owner-operator of any sexually oriented business to notify the chief of police and the director of development services, or their duly authorized    representative, that the location is ready for the inspections required under this article prior to the expiration of any applicable deadline contained herein.

(q)     It shall be the duty of the owner-operator of a sexually oriented business to post, display, and maintain free of obstruction, the following notices with typeface no less than   one   inch   in

length per letter, at the entrance of the establishment, in such a manner that they are plainly visible to the general public at a height of no less than four feet and no more than six feet from the ground:

> (1)    "Three Foot Rule - It is a violation of the San Antonio City Code for a customer or patron to intentionally or knowingly approach within three feet or less of any person who is in a state of semi-nudity or entertaining."
>
> (2)    "No Minors - No individual under the age of eighteen is allowed inside the premises."
>
> (3)    "Patrons' conduct is being observed by management. Illegal conduct will not be permitted."
>
> (4)    The notices shall include the appropriate city ordinance number.

(r)    It shall be unlawful to fail to post the notices herein required.

## DIVISION 3. PERMITS, CONDUCT, AND OPERATIONS OF ADULT ARCADES

Sec. 21-236. Definitions.

As used in this section, the following words shall have the meanings herein ascribed, unless the context of their use clearly indicates another meaning:

*Adult arcade* shall mean any "premises" to which members of the public or members of any club, group or association are admitted and permitted to use one or more arcade devices.

*Adult arcade permit* shall mean the original license issued to a duly authorized agent of an owner or operator of an adult arcade as lawful authority to operate an adult arcade.

*Arcade device* shall mean any coin, currency or slug operated or electronically or mechanically controlled machine or device that dispenses or effectuates the dispensing of "entertainment" that is intended for the viewing of five or fewer persons in exchange for any payment or consideration.

*Duly authorized agent* shall mean an individual who has actual authority to file an application with the chief of police for an adult arcade permit on behalf of any association, corporation, individual, owner, operator, or person and who meets the requirements set forth in subsection (i) below and is not disqualified per subsection (j) below.

*Employee* shall mean any person employed by an employer in consideration for monetary compensation or profit.

*Entertainment* shall mean: any live exhibition, display or performance; any still picture(s) or movie picture(s), whether mechanically, electrically or electronically displayed; or any combination of the foregoing, in which specified sexual activities are depicted.

*Individual* shall mean a natural person.

*Manager* shall mean any individual holding a position in an adult arcade with the responsibility for direct supervision of the operation of the adult arcade and for monitoring and observing the areas of the adult arcade to which customers or patrons are admitted at times during which the adult arcade is open for business; or, at times during which customers or patrons are on the premises of the adult arcade.

*Manager's permit* shall mean a license issued to an individual as lawful authority to act as a manager of an adult arcade.

*Operator* shall mean the "individual" who is principally in charge of the management of the "adult arcade."

*Owner* shall include, but not be limited to, any equitable owner, any person having a possessory right to the land or building or the person occupying it, any part owner, joint owner, tenant in common, tenant in partnership, joint tenant or tenant by the entirety.

*Premises* shall mean a building; provided that if a building has been physically divided into separate units that each has its own individual means of ingress or egress to the exterior of the building and which are offered by lease or otherwise for separate use and control, then "premises" shall refer to each such separate unit.

*Specified sexual activities* or *specified anatomical areas* shall have the same meanings as proscribed in this article.

Sec. 21-237. Permits required.

(a)     It shall be unlawful for an individual, person, corporation, operator, owner, or association to operate an adult arcade within the city, unless the chief of police has issued an adult arcade

permit to the adult arcade's duly authorized agent.

(b)     It shall be unlawful for an individual to act as a manager of an adult arcade, unless the chief has issued a manager's permit to said individual.

(c)     The adult arcade permit will be issued to the duly authorized agent, but will be issued in the name of the adult arcade and will be specific for that location only.

Sec. 21-238.  Process for requesting arcade permit.

(a)  The chief of police shall create a form for each type of permit consistent with the provisions of this division.

(b)     An applicant may obtain a form from the City of San Antonio Government website page (sanantonio.gov/sapd) or at the San Antonio Police Department (SAPD or police department) Headquarters Records Unit.  Applications shall be accepted Tuesday through Thursday, excluding Holidays, between the hours of 1:00 p.m. and 4:00 pm.   Applications shall not be accepted at any other time or on any other day.

(c)     At the time that the chief receives an application, the duly authorized agent shall pay a $400.00 nonrefundable processing fee to the city at the Records Unit service window.  The applicant will receive a receipt and paperwork from the Records Division along with their completed application and submit said information and waiver form to the Identification Division.  The Identification Division shall take fingerprints and generate an Adult Arcade Permit number.  The applicant will then be photographed at the Identification Division.

(d)     All photographs shall be used to perform a background investigation and for the purpose of photographic identification of permit holders, and shall be kept on record with the chief of police while the applicant possesses a valid permit, and for a period of five years after the expiration, revocation, or denial of the permit.

(e)     All photographs of applicants shall be destroyed at the expiration of five years after the expiration, revocation, or denial of the permit, but all applicants submitting new applications shall be required to comply with photograph and fingerprint requirements in this section.

(f) All applicants shall submit to a criminal background check for the purpose of verifying the information requested in subsection (j).

(g)     All fees required in this subsection are non-refundable. Payment of the fees shall be by

cashier's check or money order and made payable to the city.

(h)    It shall be unlawful to apply for an adult arcade permit, unless the individual who applies is a duly authorized agent and files an accurate and complete sworn affidavit at the time of filing the application in which the individual declares:

   1. The individual's identity;

   2. The identity of the association, corporation, individual, owner, operator, or person on whose behalf the individual seeks an adult arcade permit;

   3. The identity of the adult arcade;

   4. The identity of each association, corporation, individual, owner, operator or person with an ownership interest in the adult arcade;

   5. The basis for the actual authority as being one of the following:

      a. The individual is the sole owner or operator;

      b. The individual is the president, chief executive officer, or equivalent of a corporation that is an owner or operator and the individual also owns a majority of the issued voting stock for the corporation;

      c. The individual is the president, chief executive officer, or equivalent of a corporation that is an owner or operator and the individual attaches a corporate resolution from the corporation's board of directors or from a majority of the corporation's voting stockholders wherein is authorized the application for the permit;

      d. The individual is a general partner of a partnership that is an owner or operator; or,

      e. The individual is a manager (as defined by the Texas Limited Liability company Act) of a Texas Limited Liability Company that is an owner or operator;

      f. State that all information is on the basis of personal knowledge; and

g. State that all information is true and correct and acknowledge that a false statement is subject to criminal penalty, including but not limited to charges of perjury.

(i)     Unless a duly authorized agent is disqualified under one or more provisions of this article, an agent who performs the following acts shall be qualified to receive on behalf of an owner or operator an adult arcade permit:

1. The duly authorized agent pays the required processing fee to the city;

2. The duly authorized agent submits a diagram of the premises; and

3. Allows an inspection of the premises by the police department.

(j)     If on the basis of substantial evidence, the chief concludes that one or more of the following conditions exists then a duly authorized agent shall be disqualified from receiving an adult arcade permit for the adult arcade for which the permit is sought:

1.     The individual is a sex offender subject to registration under Chapter 62 of the Texas Code of Criminal Procedure;

2.     If any owner or operator of the adult arcade is convicted of a felony in any jurisdiction in the past ten years;

3.     If any owner or operator of the adult arcade has been convicted of or received deferred adjudication for a specified criminal act in any jurisdiction in the past ten years;

4.     If the duly authorized agent, owner, or operator of the adult arcade has refused to allow an inspection of the premises of the adult arcade by at least three business days prior to a deadline to issue a permit or notice of rejection;

5.     If the duly authorized agent, owner, or operator of the adult arcade has failed to submit to the department of development services a diagram by at least ten business days prior to the deadline to issue a permit or notice of rejection;

6.     If the duly authorized agent or any individual, owner, or operator of the adult

  City of San Antonio 

## Agenda Voting Results - 16A

| | |
|---|---|
| **Name:** | 5, 6, 7, 8A, 8B, 9, 10A, 10B, 11, 12, 13, 14, 15, 16A, 16B, 17A, 17B, 17C, 18, 19, 20, 21, 23, 24, 25, 26A, 26B |
| **Date:** | 12/06/2012 |
| **Time:** | 02:23:22 PM |
| **Vote Type:** | Motion to Approve |
| **Description:** | An Ordinance amending Chapter 21, Article IX of the City Code to reflect changes to provisions of the Human Display Establishment ordinance including revising definitions and renaming it as the Sexually Oriented Business ordinance; deleting Chapter 16, Article V; merging Chapter 21, Article I, Section 21-22 (Adult Arcades) with Chapter 21, Article IX; revising the penalty for violations of Sexually Oriented Business ordinance; amending licensing scheme for sexually oriented businesses; and providing for publication. |
| **Result:** | Passed |

| Voter | Group | Not Present | Yea | Nay | Abstain | Motion | Second |
|---|---|---|---|---|---|---|---|
| Julián Castro | Mayor | | x | | | | |
| Diego Bernal | District 1 | | x | | | | |
| Ivy R. Taylor | District 2 | | x | | | | |
| Leticia Ozuna | District 3 | | x | | | | |
| Rey Saldaña | District 4 | | x | | | | |
| David Medina Jr. | District 5 | | x | | | | |
| Ray Lopez | District 6 | | x | | | x | |
| Cris Medina | District 7 | x | | | | | |
| W. Reed Williams | District 8 | | x | | | | |
| Elisa Chan | District 9 | | x | | | | x |
| Carlton Soules | District 10 | | x | | | | |

STATE OF TEXAS      §
                    §
BEXAR COUNTY        §

## BUSINESS RECORDS AFFIDAVIT

Before me, the undersigned notary, on this day personally appeared Leticia M. Vacek, the affiant who being duly sworn on oath, deposed and stated as follows:

1. "My name is Leticia M. Vacek. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am the City Clerk for the City of San Antonio and I am charged with the role of Custodian of Records for the City of San Antonio for the attached records.

3. Attached to this affidavit are 3,224 pages of records from the City of San Antonio which were filed with this office on September 18, 2012 (Sexually Oriented Business Studies) and on November 1, 2012 (Draft of the proposed Sexually Oriented Business Ordinance).

4. These records were and are kept by the City of San Antonio in the regular course of business. These records remain under my custody or control as a custodian for such records. These records are part of the legislative record provided to the City of San Antonio City Council contained within their pre-meeting packets as well as records referenced in the packets and available for inspection by any City of San Antonio Councilmember and citizen. The records attached to this affidavit are copies of the original documents maintained by this office."

Further Affiant sayeth not.

_Leticia M. Vacek_
Leticia M. Vacek
City Clerk
City of San Antonio

Sworn to and subscribed before me by Leticia M. Vacek on this the 12th day of December, 2012.



_Melinda Uriegas_
NOTARY PUBLIC, State of Texas
My commission expires: 04|04|2013