# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

FILED
APR 2 9 2013
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
                    DEPUTY CLERK

| | |
|---|---|
| **35 BAR AND GRILLE, LLC, ET AL.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **V.** ) | **CIVIL ACTION NO. SA-13-CA-34-FB** |
| ) | |
| **THE CITY OF SAN ANTONIO,** ) | |
| ) | |
| **Defendant.** ) | |

## THE CASE OF THE ITSY BITSY TEENY WEENY BIKINI TOP
## V. THE (MORE) ITSY BITSY TEENY WEENY PASTIE[1]

## ORDER CONCERNING PRELIMINARY INJUNCTION

An ordinance dealing with semi-nude dancers has once again fallen on the Court's lap. The City of San Antonio ("City") wants exotic dancers employed by Plaintiffs to wear larger pieces of fabric to cover more of the female breast. Thus, the age old question before the Court, now with constitutional implications, is: Does size matter?

The genesis of this gentlemen's clubs case can be found at 2003 WL 21204471, known by some as "The Salomé Order."[2]

---

[1] Itsy Bitsy Teeny Weeny Yellow Polka Dot Bikini (Knapp Records 1960).

[2]

> And Salomé, dressed only in seven thin veils,
> danced lasciviously at a men's club called
> the Palace . . . of King Herod, that is.
>
> The result was a fatal secondary effect
> for John the Baptist.

Adapted and paraphrased by the Court from the Bible, Mark 6:16-28, and the play Salomé written by Oscar Wilde starring Sarah Bernhardt as Salomé and produced in Paris in 1894. *Allstars v. City of San Antonio*, No. Civ. A. SA-03-CA-356-FB, 2003 WL 21204471, at *1 (W.D. Tex. May 19, 2003) (Biery, J.).

The City has amended Ordinance 97497 such that Plaintiffs and their employees would be more strictly regulated by a licensing process which includes:

* background checks;

* criminal records preventing them from working or continuing to work in clubs;

* wearing identification wristlets.

Plaintiffs clothe themselves in the First Amendment seeking to provide cover against another alleged naked grab of unconstitutional power.

The Court infers Plaintiffs fear enforcement of the ordinance would strip them of their profits, adversely impacting their bottom line. Conversely, the City asserts these businesses contribute to reduced property values, violent crime, increased drug sales, prostitution and other sex crimes, and therefore need to be girdled more tightly.[3] Plaintiffs, and by extension their customers, seek an erection of a constitutional wall separating themselves from the regulatory power of City government.

While the Court has not received *amicus curiae* briefs, the Court has been blessed with volunteers known in South Texas as "curious amigos" to be inspectors general to perform on sight visits at the locations in question.

---

[3]The City examined thousands of pages of reports, studies and related court opinions regarding various aspects of SOB regulation. The legislative record is 3,223 pages long and includes ninety-three studies. See e.g., "Texas City Attorneys Association Crime and Value Related Effects of Sexually Oriented Businesses" (concluding that sexually oriented businesses decrease property values); "Adult Business Study" (Town of Ellicottville, N.Y.) (concluding SOB regulation necessary because of negative economic impact and increase in crime associated with such venues); "The Freedom and Justice Center: Strip Club Testimony" (concluding that "degree of sexual violence perpetrated against strippers explodes the myths about stripping as harmless entertainment"); "Why and How Our City Organized a Joint County-Wide Sexually Oriented Business Task Force" (City of Cleburne, TX) (documenting negative effect of SOBS on "moral core, general health and local property values"); "An Analysis of The Effects of SOBs on the Surrounding Neighborhoods in Dallas, Texas" (1997) (finding that venues featuring live nude and semi-nude dancing lead to higher crime in surrounding neighborhoods); "Crime Impact Studies by Municipal and State Governments on Harmful Secondary Effects of Sexually Oriented Businesses" (National Law Center) (summarizing studies conducted in thirty-five metropolitan areas, including cities in Texas); "Adult Entertainment Study" (City of New York) (discussing impacts and trends surrounding location of SOBs); "Director's Report: Proposed Land Use Code Texas Amendment, Adult Cabaret's" ("In the law and planning literature on adult entertainment uses, public safety hazards are the most often cited adverse impact on surrounding communities.").

However, they would have enjoyed far more the sight of Miss Wiggles, truly an exotic artist of physical self expression even into her eighties, when she performed fully clothed in the 1960s at San Antonio's Eastwood Country Club.  Miss Wiggles passed October 14, 2012 at the age of ninety.[4]



---

[4]Our Texas Magazine, Winter 1995, at 9 (photograph); Mike Dunham, Mourners Recall the Humanitarian Side of Miss Wiggles, Anchorage Daily News, Oct. 22, 2012; Paula Allen, "Utopia, Baby,", San Antonio Express News, Feb. 26, 2006.

BACKGROUND

Following settlement of litigation arising out of the previous 2003 ordinance regulating gentlemen's[5] clubs, the City adopted an ordinance in 2005 which prohibited nude and topless dancing in public places and required permits for "human display establishments." The ordinance also subjected human display establishments to certain lighting, open-view building configurations and zoning restrictions.

In 2009, operators of certain adult entertainment clubs sued in state court challenging the ban on nude dancing as a violation of the entertainer's right to free speech. The state trial court ruled in favor of the City and the operators appealed. In a well reasoned and well written opinion, the Fourth Court of Appeals, Justice Sandee Bryan Marion writing for the panel, found the City ordinance prohibiting nudity and semi-nudity in public places and requiring permits for human display establishments imposed no greater incidental restriction on protected speech than was essential to the furtherance of the governmental interest in public places. RCI Entm't, Inc. v. City of San Antonio, 373 S.W.3d 589, 598-602 (Tex. App.–San Antonio 2012, no pet.). Further, the state appellate court found that requiring permits for human display establishments imposed no greater incidental restriction on protected speech than was essential to the furtherance of the governmental interest in combating secondary effects associated with sexually oriented businesses ("SOBs"). Id. Therefore, the ordinance withstood intermediate scrutiny and did not violate the free speech rights of erotic dancers. Id. In reaching this conclusion, the Fourth Court pointed out that being in a state of nudity is not an inherently expressive condition and being required by the ordinance to go from complete nudity to partly clothed

---

[5]"gen•tle•man. . . . n. . . . 2. A polite, gracious or considerate man having high standards of propriety or correct behavior." WEBSTER'S II DICTIONARY 526 (New Riverside Univ. ed. 1984). The term is loosely used in this context.

involved a de minimis impact on the ability of the dancers to express eroticism. Id. at 601 (citations omitted).

In order to avoid being classified as human display establishments, Plaintiffs changed their dancers' attire to g-strings and pasties over the areolae of the female breast. Doing so enabled them to operate under dance hall licenses instead of having SOB status and having to obtain permits, reconfigure buildings and possibly relocate.

As a result, not a single human display establishment permit request was made and no such permits issued. In 2012, the City enacted Ordinance 2012-12-06-0934, amending Chapter 21, "because certain businesses featuring adult dance entertainment had found a way to circumvent the restrictions set forth in the 2005 ordinance." The new ordinance eliminates human display establishment status and includes the following definition:

> SEMI-NUDITY means a state of dress that fails to completely and opaquely cover (a) human genitals, pubic region, pubic hair or (b) crevice of buttocks or anus, or (c) *any portion of the female breast that is situated below a point immediately above the top of the areola,* or (d) any combination of (a), (b) or (c).

The effect of the ordinance is to require dancers at Plaintiffs' businesses to wear bikini tops in order for the businesses to avoid SOB classification and the concomitant licensing, building and location requirements. Plaintiffs argue the ordinance is a constitutionally impermissible restriction on the dancers' protected expression and unconstitutional because there is no evidence that the contested change in dancer attire (from pasties to bikini tops) would impact negative secondary effects. The City contends it is not a violation of the First Amendment to require Plaintiffs to choose whether they want to be licensed and offer topless dancing or be free of licensing requirements and the other regulations in the ordinance by offering dancers wearing bikini tops.

DISCUSSION

Plaintiffs must carry their burden of proof for the four requirements for a preliminary injunction: "substantial likelihood of success on the merits, substantial threat of irreparable harm absent an injunction, a balance of hardships in Plaintiffs' favor, and no disservice to the public interest." Daniels Health Scis., L.L.C. v. Vascular Health Servs., L.L.C., 710 F.3d 579, 582 (5th Cir. 2013). In order to prevail, Plaintiffs must carry the burden on all four elements. Canal Auth. v. Calloway, 489 F.2d 567, 569 (5th Cir. 1974). As summarized below, Plaintiffs have not met the prerequisites for obtaining preliminary injunctive relief. An Appendix is attached for those interested in a lengthy exposition, those who wish to appeal and those who suffer from insomnia.

Plaintiffs have not shown they are likely to prevail on the merits of their claims. The Fifth Circuit Court of Appeals has determined it is not a First Amendment violation to require gentlemen's clubs to decide whether they want to be licensed and offer dancers wearing pasties or performing topless or, alternatively, to be free of licensing requirements, building and zoning regulations in the ordinance by offering dancers who wear slightly more fabric, *i.e.,* a bikini top. Baby Dolls Topless Saloons, Inc. v. City of Dallas, 295 F.3d 471, 479-82 (5th Cir. 2002). This Court must follow Fifth Circuit precedent. Importantly, the RCI state appellate court made a finding that the ordinance governing nudity and semi-nudity is designed to regulate only secondary effects. 373 S.W.3d at 598-602. Additionally, the City does not have to show a correlation between the bikini top requirement and the amelioration of deleterious secondary effects. Baby Dolls Topless Saloons, Inc., 295 F.3d at 479-82.

Although Plaintiffs have shown they will suffer irreparable harm because they are alleging a First Amendment violation which cannot be remedied by an award of economic damages, Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981), Plaintiffs have not shown their

6

potential injury outweighs the threatened injury to the City because the City has offered credible evidence to support its position that Plaintiffs' businesses adversely affect the community. Erotique Shop, Inc. v. City of Grand Prairie, Civil Action No. 3:06-CV-20660G, 2006 WL 3422231, at *5 (N.D. Tex. Nov. 28, 2006). Finally, Plaintiffs have failed to show that semi-nude erotic dancing does not have adverse secondary effects. Therefore Plaintiffs have failed to show that granting the injunction will not adversely affect the public interest. Id. at *5-*6.

To bare, or not to bare, that is the question.[6] While the Court finds these businesses to be nefarious magnets of mischief,[7] the Court doubts several square inches of fabric will stanch the flow of violence and other secondary effects emanating from these businesses. Indeed, this case exposes the underbelly of America's Romanesque passion for entertainment, sex and money, sought to be covered with constitutional prophylaxis. Alcohol, drugs, testosterone, guns and knives are more likely the causative agents than the female breast, proving once again that humans are a peculiar lot.[8] But case law does not require causation between nudity and naughtiness. Baby Dolls Topless Saloons, Inc., 295 F.3d at 479-82.

---

[6]WILLIAM SHAKESPEARE, THE FIRST FOLIO OF HAMLET, PRINCE OF DENMARK act 1, sc. 1 ("To be, or not to be, that is the question: . . . .")

[7]United States v. Guevara, SA-10-CR-870-FB, a case on this Court's docket involving two men who began a twenty-four hour car-jacking crime spree in 2010 after exiting XTC, a gentlemen's club, which only ended because they were caught. Each pleaded guilty and was sentenced to twenty years in prison. See also Katrina Webber, Man Shot During Robbery at South San Antonio Strip Club, April 3, 2013; Ana Ley, Two Patrons and Dancer Shot During Strip Club Brawl, SAN ANTONIO EXPRESS NEWS, January 31, 2013.

[8]As observed by young Scout in To Kill a Mockingbird, "I came to the conclusion that people were just peculiar." HARPER LEE, TO KILL A MOCKINGBIRD 280 (Harper Collins, ed., 1960).

Accordingly, the request for preliminary injunction is DENIED.

Should the parties choose to string this case out to trial on the merits, the Court encourages reasonable discovery intercourse as they navigate the peaks and valleys of litigation, perhaps to reach a happy ending.

It is so ORDERED.

SIGNED this 29 day of April, 2013.

FRED BIERY
CHIEF UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **35 BAR AND GRILLE, LLC, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. SA-13-CA-34-FB** |
| | ) | |
| **THE CITY OF SAN ANTONIO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## APPENDIX

Primarily at issue is whether the City of San Antonio violated certain business establishments' First Amendment rights when it amended its City code to effectively require female performers to wear bikini tops in order for those establishments to avoid being classified as sexually oriented businesses ("SOBs") subject to heightened licensing and zoning restrictions. Plaintiffs, operators of the establishments, contend the amendment impermissibly targets the essential expressive nature of the featured entertainment and the relied-upon studies impermissibly fail to show a correlation between the bikini top requirement and the amelioration of secondary effects.

## BACKGROUND

In 2003, after studying other cities' efforts to regulate SOBs and evaluating negative secondary effects SOBs had on crime and property values in San Antonio, the City enacted a "Human Display Establishment" ordinance pursuant to Chapter 21, Article IX of the San Antonio City Code. Ordinance 97497 authorized regulation of the location of adult establishments featuring live nude and semi-nude dancing and adult stores, as well as regulation regarding their operations. The Ordinance imposed new

9

structural, visibility and lighting requirements on such SOBs and added new regulations affecting individuals working in these nude and semi-nude dance establishments and adult retail outlets. The new structural provisions required many businesses to remodel their interior spaces to include a "manager's station" with an unobstructed view of almost the entire floor. The new regulations banned public nudity and prohibited touching between entertainers and patrons. Moreover, owners and managers who worked in these establishments were required to obtain individual permits, for which they had to divulge personal information and undergo criminal backgrounds checks.

Owners, operators and exotic dancers filed a complaint and application for a temporary restraining order and preliminary injunction based on a First Amendment restriction of expression challenge to the human display establishment ordinance in federal court in May of 2003, and the case was randomly assigned to this Court's docket. Following a hearing on May 14, 2003, the Court entered an order preserving the status quo until a considered opinion could be drafted. There were four prohibitions in the ordinance which the City sought to exempt from a preliminary injunction:

* A ban on total nudity;

* A ban on touching by entertainers;

* A ban on private rooms in human display establishments; and

* A ban on locked "VIP" rooms.

On May 16, 2003, this Court issued an Interim Order Granting in Part and Denying in Part Plaintiffs' and Plaintiff-Intervenors' Request for Preliminary Injunction. Allstars v. City of San Antonio, Civil Action No. 5:SA-03-CA-356-FB, docket no. 29 (Biery, J.). The interim order enjoined the City from enforcing Human Display Establishment ordinance 97497 "with the exception of the ban on total nudity and the ban on touching between entertainer and patron." Id. at 7. The City was allowed to "enforce

the unobstructed view provision of the ordinance as it relate[d] to private rooms and locked VIP

rooms . . . ." Id.

A settlement was reached in 2005, and the parties stipulated to the dismissal of the federal

lawsuit.  The City amended the Human Display Establishment ordinance to reflect the terms of the

agreement.  The 2005 amendment continued to prohibit nudity and semi-nudity in public places and

require permits, venue openness and zoning restrictions for human display establishments.  It defined

a Human Display Establishment as:

> [T]hose premises, including those subject to regulation under Chapters 54 or 243 of the
> Texas Local Government Code, as amended, wherein there is conducted the business
> of furnishing, providing or procuring dancers, entertainers, or models who appear live
> at said premises in a state of nudity or semi-nudity, or while performing specified sexual
> activities. . . . .

San Antonio, Tex., Code § 21-200 (2005).  The ordinance contained the following definitions:

> *Nude, Nudity or State of Nudity.*  The term "nude," or "nudity" or "state of nudity" shall
> mean a state of dress which fails to fully and opaquely cover the anus, crevice of the
> buttocks, genitals, pubic region, or perineum anal region, regardless of whether the
> nipple and areola of the human breast are exposed.

Id.  It made it unlawful:

> (a) for an individual to intentionally or knowingly appear in a state of nudity in a public
> place.
>
> . . . .
>
> (c) for an individual, person, corporation, or association that manages, or operates a
> Human Display Establishment to intentionally or knowingly allow an individual to
> appear on the premises of said establishment in a state of nudity.
>
> . . . .
>
> (e) for an owner-operator of a Human Display Establishment to intentionally or
> knowingly allow an individual to appear on the premises of said establishment in a state
> of nudity.

Id. § 21-205(a), (c), (e); see also San Antonio, Tex., Code § 21-300(1), (3), (5) (2005).

<u>RCI Entm't, Inc. v. City of San Antonio</u>

These definitions were held constitutional. RCI Entm't, Inc. v. City of San Antonio, 373 S.W.3d 589, 598-605 (Tex. App.–San Antonio 2012, no pet.). By way of background, the amended version of the 2005 Human Display ordinance was in effect in December of 2009 when San Antonio Police Department officers appeared at two San Antonio establishments which offered live, nude dance entertainment to conduct "inspections." Id. at 594. At both establishments, the officers arrested entertainers appearing in a state of nudity in a public place and managers for allowing the dancers to appear in a state of nudity in a human display establishment. Id. In separate lawsuits, which were later consolidated, the nude dance venues brought suit against the City of San Antonio seeking declaratory and injunctive relief on the grounds that the ordinance was preempted by the Texas Penal Code and the Texas Business and Commerce Code. Id. Alternatively, and relevant to this case, the nude dance venues sought a declaration that the ordinance was unconstitutional on the grounds that the ordinance imposed an unreasonable and unnecessary limitation on expression and constitutionally protected dance activities. Id. The City counterclaimed seeking to permanently enjoin the nude dance venues from further violations of subsections (a), (c), and (e) of section 21-005 of the 2005 ordinance. RCI Entm't, Inc., 373 S.W.3d at 594.

Following a bench trial, the state court district judge rendered judgment in favor of the City and denied all claims for relief asserted by the nude dance venues. Id. The nude dance venues were permanently enjoined as follows:

> [Plaintiffs] and their respective agents, servants, employees, representatives, contractors, and those in active concert or participation with it or them are restrained from violating Article IX, Section 21-205(a), (c), and (e) of the City of San Antonio Code of

12

> Ordinances [specifically restrained from allowing individuals to appear in a state of nudity at d/b/a The Players Club a/k/a Paradise Gentlemen's Club and RCI Entertainment (San Antonio), Inc. d/b/a XTC Cabaret].

Id. at 594-95 (alteration in original).

The judgment provided that the restraint was binding on Plaintiffs "and upon those persons described in Section 21-205(c) and (e) in active concert or participation with it or them who receive actual notice of the order by personal service or otherwise." Id. at 595. The nude dance venues filed a motion for new trial which was overruled by operation of law and an appeal to the Fourth Court of Appeals in San Antonio ensued. Id.

Among other things, the nude dance venues asserted the Human Display Ordinance violated article 1, section 8 of the Texas Constitution, which provides: "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." RCI Entm't, Inc., 373 S.W.3d at 598 (quoting TEX. CONST. art. I, § 8). The nude dance venues argued the Texas Constitution affords them greater protection than the First Amendment to the United States Constitution, which provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." Id. (quoting U.S. CONST. amend I).

The Fourth Court of Appeals, Justice Sandee Bryan Marion writing for the panel, began by discussing Davenport v. Garcia, 834 S.W.2d 4, 7-8, 10 (Tex. 1992), wherein the Texas Supreme Court interpreted Texas Constitution's right to free speech more broadly than its federal equivalent. Id. 598-99. Justice Bryan Marion explained the historical basis for drawing a distinction between the two:

> The difference between the federal constitution and our state constitution is that the First Amendment to the U.S. Constitution represents a restriction on governmental interference with speech, while "Texas [in drafting our state constitution] chose from

the beginning to assure the liberties for which they were struggling with a specific guarantee of an affirmative right to speak." Davenport v. Garcia, 834 S.W.3d 4, 7-8 (Tex. 1992). Over the years, through various constitutional redrafts and amendments, and even "amidst intense public debate over secession and reconstruction," Texans continued to include 'an expansive freedom of expression clause" and reject the "more narrow protections" of the federal constitution, indicating a "desire in Texas to ensure broad liberty of speech." Id. at 8. "Consistent with this history, the Texas Supreme Court has recognized that "in some aspects our free speech provision is broader than the First Amendment [to the U.S. Constitution]." Id. Under this broader guarantee, it has been and remains the preference of the Texas Supreme Court "to sanction a speaker after, rather than before, the speech occurs" because this "comports with article one, section eight of the Texas Constitution, which both grants an affirmative right to 'speak . . . on any subject,' but also holds the speaker 'responsible for the abuse of that privilege.'" Id. at 9.

Id. at 598-99.

Notwithstanding Garcia's finding that Article 1, Section 8 of the Texas Constitution is "broader" or affords "greater" protection of speech than the First Amendment, 834 S.W.2d at 10, Justice Bryan Marion explained that "the scope of this greater protection has been questioned" and "the mere assertion that freedom of expression protections are broader under the Texas Constitution than under the federal constitution 'means nothing.'" Id. at 599 (citing Texas Dep't of Transp. v. Barber, 111 S.W.3d 86, 106 (Tex. 2003); Operation Rescue v. Planned Parenthood, Inc., 975 S.W.2d 546, 558-60 (Tex. 1998); quoting Bentley v. Bunton, 94 S.W.3d 561, 578 (Tex. 2002)). Courts have held that:

"[T]o assume automatically 'that the state constitutional provision must be more protective than its federal counterpart illegitimizes any effort to determine state constitutional standards.' If the Texas Constitution is more protective of a particular type of speech, 'it must be because of the text, history, and purpose of the provision.'" Comm'n for Lawyer Discipline v. Benton, 980 S.W.2d 425, 434 (Tex. 1998) (quoting Operation Rescue, 975 S.W.2d at 599 (internal citations omitted). The Benton Court noted that the cases in which the Texas Supreme Court has held the Texas Constitution creates a higher standard than the First Amendment involved prior restraints in the form of court orders prohibiting or restricting speech.

RCI Entm't, Inc., 373 S.W.3d at 599 (alteration in original).  In response to appellant's argument that

the ordinance prohibiting nudity must be scrutinized under the higher standard of the Texas

Constitution, the appellate panel noted that no Texas court had addressed the specific complaints raised

regarding a City-wide ban on nudity.[9] Id.  The Court therefore looked to federal cases for guidance on

determining whether the ordinance is content-based or content-neutral, id., the next issue which must

be addressed in the constitutional challenge to the City's ordinance regulating adult businesses.

In considering whether the ordinance is content-based or content-neutral, the Court noted that

"the ordinance does not ban expression in the form of nude dancing."  Id.  Instead, the opinion

continues, "the ordinance regulates conduct and not the content of anyone's speech." Id. at 599-600

(citing Erie v. Pap's A.M., 529 U.S. 277, 284, 290 (2000) (plurality) (holding same regarding ordinance

that made it an offense for "person who knowingly or intentionally, in a public place . . . appears in a

state of nudity . . . .")); see also Barnes v. Glen Theatre, Inc., 501 U.S. 560, 566-69 (1991) (plurality)

(holding same).  "Because the essence of appellants' argument on appeal [was] that the ordinance

prohibits conduct–nude dancing–precisely because of its communicative attributes," the Court began

its analysis "with a consideration of whether the ordinance is content-neutral or content-based." RCI

Entm't, Inc. v. City of San Antonio, 373 S.W.3d 589, 600 (Tex. App.–San Antonio 2012, no pet.).  As

summarized in the opinion, appellants asserted the ordinance is content-based for two reasons:

---

[9]As noted by Justice Bryan Marion, other Texas courts have addressed ordinances aimed at regulating human display establishments, but have not considered the ban on nudity issue raised in the appeal before the Fourth Court. Id. at n.4; see e.g., Combs v. Texas Entm't Ass'n, 347 S.W.3d 277, 286 (Tex. 2011) (concluding that Texas statute requiring $5 fee for each customer admitted to business offering live nude entertainment and allowing consumption of alcohol was not aimed at any expressive content of nude dancing); Kazmarek v. State 986 S.W.2d 287, 290 (Tex. App.–Waco 1999, no pet.) (considering whether ordinance which required permit to operate sexually oriented business granted City of Houston "unbridled discretion" to grant or deny permit thereby allowing City to place prior restraint upon expressive conduct found in dancing); 2300, Inc. v. City of Arlington, 888 S.W.2d 123, 126 (Tex. App.–Fort Worth 1994, no writ) (considering constitutionality of "no touch" provision in City ordinance regulating adult dance establishments).

(1) only dancers, managers, and owners of human display establishments–as opposed to anyone else appearing in a state of public nudity–are subject to criminal and civil liability under the ordinance; and (2) the ordinance allows an exception to liability based on the content of the speech for any "person engaged in expressing a matter of serious literary, artistic, scientific, political, or social value." SAN ANTONIO, TEX., CODE § 21-207(c)(1).

Id.

The United States Supreme Court rejected an argument similar to the first argument made by appellants.  The Fourth Court of Appeals also rejected the argument:

> In Erie, the respondent argued the ordinance was "aimed" at suppressing expression through a ban on nude dancing.  529 U.S. at 284.  The respondent supported this argument by pointing to statements made by the City attorney that the public nudity ban was not intended to apply to 'legitimate" theater productions.  The Court concluded this was "really an argument that the City council also had an illicit motive in enacting the ordinance."  Id.  The Court rejected the argument noting it would "not strike down an otherwise constitutional statute on the basis of an alleged illicit motive."  Id.  Likewise, here, we will not strike down an ordinance on the grounds that only human displays establishments are targeted by the ordinance.  Also, we do not agree that only dancers, managers, and owners of human display establishments are targeted by the ordinance.  The ordinance makes it unlawful "for an individual to intentionally or knowingly appear in a state of nudity" in "all locations owned or open to the general public" and is not limited only to human display establishments.  San Antonio, Tex., Code § 21-200.

Id.  The Fourth Court further pointed out that the ordinance was enacted pursuant to Texas Local Government Code section 243.001, which expresses the Texas Legislature's concern "that the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity."  Id. (citing Tex. Loc. Gov't Code § 243.001(a)).  Accordingly, the opinion states, "[w]e believe the ordinance is not aimed at any expressive content of appearing nude but at the secondary effects of appearing nude in public."  RCI Entm't, 373 S.W.3d at 600 (citing Combs v. Texas Entm't Ass'n, 347 S.W.3d 277, 286 (Tex. 2011) (rejecting similar argument made by operator of

16

sexually oriented business in challenge to $5.00 fee pursuant to Texas Business and Commerce Code section 102.052).

The Fourth Court of Appeals next addressed appellants' argument the ordinance is content-based because it provides an exception from the general ban on nudity based entirely on the content of the message conveyed by the dancers.  Id.  Appellants pointed to the exception contained within the ordinance which exists for a "person engaged in expressing a matter of serious literary, artistic, scientific, political, or social value." Id. (quoting San Antonio, Tex., Code § 21-207(c)(1)).  According to appellants, the inclusion of this exception means that the City values some forms of speech over other forms of speech.  Id. The premise of this argument, the Court noted, "is that the ordinance is content-based because it distinguishes favored speech (with 'serious literary, artistic, scientific, political, or social value') from disfavored speech (appearing in a state of nudity) on the basis of the ideas or views expressed."  Id.  The Court disagreed and provided the following analysis:

> Regulations that "by their terms distinguish favored speech from disfavored speech in the basis of ideas or views expressed are content based." Turner Broad. Sys. v. FFC, 512 U.S. 622, 643 (1994).  Thus, a rule that is applied because of disagreement with a message presented or a rule that has a substantial risk of eliminating certain ideas or viewpoints from the public dialogue is content-based. See id. at 642.  If, on the other hand, the regulation is justified without reference to the content of the speech or serves purposes unrelated to the content, it is a content-neutral regulation, even if it has an incidental effect on some speakers or messages but not others. Horton v. City of Houston, 179 F.3d 188, 193 (5th Cir. 1999), cert. denied, 528 U.S. 1021 (1999).

RCI Entm't, 373 S.W.3d at 601.  It is also true, the Court continued, "[s]ufficient government interests justifying content-neutral regulations include 'preventing harmful secondary effects.'" id. (quoting Erie, 529 U.S. at 293), and "'protecting morals and public order,'" id. (quoting Barnes, 501 U.S. at 569), both of which are "classic expressions of state police powers."  Id.  As the Virginia Supreme Court concluded when considering this issue, the Court noted, "the messages conveyed by erotic dancing and

17

theatrical nudity may be similar, the social by-products of each medium may be considerably different." Id. (quoting Boyd v. County of Henrico, 42 Va. App. 495, 592 S.E.2d 768, 776 (2004)). "Within the 'limited field of regulations on public exhibitions of adult entertainment,' therefore, 'the presence of negative secondary effects permits public nudity regulations to be treated 'as content-neutral and so subject only to intermediate scrutiny.'" Id. (quoting Boyd, 592 S.W.2d at 776). Accordingly, the Fourth Court of Appeals concluded that "the exception contained in the ordinance does nothing more than ensure that the ordinance incidentally restricts the least amount of expressive conduct," and thus "protects the ordinance against an overbreadth challenge." Id. The appellate court held:

> [T]hat the ordinance's public nudity ban should be "properly evaluated as a content-neutral restriction because the interest in combating the secondary effects associated with [sexually oriented businesses] is unrelated to the suppression of the erotic message conveyed by nude dancing." Erie, 529 U.S. at 296, Boyd, 592 S.E.2d at 776.

RCI Entm't, 373 S.W.3d at 601. Based on its belief the ordinance was content-neutral, the Fourth Court of Appeals also concluded the ordinance was not entitled to the broader free speech protections granted under the Texas Constitution. Id. (citing Kaczmarek v. State, 986 S.W.2d 287, 291 (Tex. App.–Waco 1999, no pet.) (holding that broader Texas free speech protection does not extend to topless/exotic dancing)).

Accordingly, the Court of Appeals applied "the same intermediate scrutiny analysis under the Texas Constitution as under the First Amendment to the U.S. Constitution" and referred "to federal cases analyzing the First Amendment to the U.S. Constitution for guidance." Id. In this regard, a content-neutral restriction on speech withstands intermediate scrutiny if it:

      *      falls within "the constitutional power" of the City of San Antonio,

      *      furthers an "important or substantial government interest,"

  *       furthers this interest in a manner "unrelated to the suppression of free expression," and

  *       "imposes no greater incidental restriction on protected speech "than is essential to the
          furtherance of that interest."

Id. (quoting United States v. O'Brien, 391 U.S. 367, 376-77 (1968)).

In applying the O'Brien factors, the Fourth Court noted that appellants did not contest that the

ordinance falls within the City's constitutional power. Id.  With regard to the second and third factors,

the Court reiterated its beliefs that the ordinance furthers an "important or substantial government

interest" and further stated "we believe the ordinance furthers that interest in a manner unrelated to the

suppression of free expression." RCI Entm't, 373 S.W.3d at 602-03.  As to the fourth requirement, the

Boyd Court phrased the issue as follows:

> The only constitutional right here (albeit one "marginally" within the "outer perimeters"
> of the First Amendment) is the erotic message implicit in nude or semi-nude dancing.
> There is no general right to take one's clothes off in public.  Nor is there a constitutional
> right to wear pasties and G-strings rather than the lingerie-like tops and bottoms required
> by the Henrico [County] ordinance.  Thus, we cannot ask whether requiring slightly
> more clothes restricts the erotic dancer's right to be less clothed.  Being in a state of
> nudity, after all, is not an inherently expressive condition.  Instead, we must ask whether
> the ordinance unduly burdens the dancer's ability to express her erotic message by
> requiring her to cover up slightly more of her body with slightly more fabric.

592 S.E.2d at 777-78 (internal citations omitted).  The Fourth Court agreed with the Boyd Court that

being in a state of nudity is not an inherently expressive condition. RCI Etm't, 373 S.W.3d at 602.  The

opinion explains:

> "A flasher in a public mall may genuinely intend to communicate a message–whether
> erotic, neurotic, or both.  But the communicative element in his conduct should receive
> no constitutional protection. [Boyd, 592 S.W.2d] at 775.  Similarly, going from
> complete nudity to being partly clothed involves a de minimis impact on the ability of
> a dancer to express eroticism. See Erie, 529 U.S. at 294; see also Boyd, 592 S.E.2d at
> 779 ("The dancer's erotic message still reaches its intended audience.  The additional
> clothing just "makes the message slightly less graphic.").  Therefore, we conclude the

> ordinance imposes no greater incidental restriction on protected speech than is essential
> to the furtherance of the government interest at which the ordinance is aimed.

Id. at 602.  Accordingly, the Texas appellate court found San Antonio's 2005 ordinance prohibiting nudity and regulating semi-nudity withstood intermediate scrutiny and was structured only to reduce negative secondary effects.  Id.

Baby Dolls Topless Saloons, Inc. v. City of Dallas

The United States Circuit Court of Appeals for the Fifth Circuit upheld a Dallas regulation of sexually oriented businesses which restricted the activities of semi-nude dancers where semi-nudity was defined in terms identical to those under consideration.  In Baby Dolls Topless Saloons, Inc. v City of Dallas, 295 F.3d 471 (5th Cir. 2002), the owners and operators of gentlemen's clubs challenged a City ordinance effectively requiring female dancers to change their attire from pasties to bikini tops in order to avoid being classified as sexually oriented businesses subject, inter alia, to licensing and zoning restrictions.  Id. at 474. The District Court granted summary judgment in favor of the City applying the test for content-neutral time, place and manner regulations set out in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986). Id. at 480.  On appeal, Plaintiffs asserted the District Court erred in applying the Renton test.  Id.  They argued the ordinance is not content-neutral because it "targets the essential expressive nature of the featured entertainment of the cabarets' business" and its "justification was not shown to be related to the 'secondary effects' focus of the ordinance." Baby Dolls Topless Saloons, Inc., 295 F.3d at 480.  The Fifth Circuit disagreed that the Renton test was not applicable:

> Under Renton, "zoning ordinances designed to combat the undesirable secondary effects
> of [SOBs] are to be reviewed under the standards applicable to 'content-neutral' time,
> place, and manner restrictions." 475 U.S. at 49 (emphasis added). And, "findings of the
> [City] as to the secondary effects of sexually oriented businesses [can] satisfy us . . . that

20

[its] predominant concern was with secondary effects and not the content of expression itself.' SDJ, Inc. v. City of Houston, 837 F.2d 1268, 1273 (5th Cir. 1988), cert. denied, 489 U.S. 1052 (1989).  SDJ, Inc., involved a similar zoning scheme that imposed location restrictions on establishments "characterized by an emphasis on matter depicting, describing or relating to . . . *specified anatomical areas,*" defined as "[l]ess than completely and opaquely covered . . . [f]emale breast[s] . . . below a point immediately above the top of the areola." Id. at 1278 n.36 (emphasis added).

Id. at 480.  The Court pointed out that the City of Dallas had relied on other cities' efforts regulating

SOBs, commissioned studies and engaged in a series of public hearings, comment-taking and town hall

meetings regarding SOBs deleterious effects, id. at 474, 481, and found the City's concerns to be

adequately expressed in the ordinance's preambulary language:

> WHEREAS the City council finds that a concentration of [SOBs] continues to contribute to a decline in the value of surrounding properties, to an increase in criminal activities in the surrounding community, and to urban blight and a downgrade in the quality of life in the surrounding community . . . .

> WHEREAS, the City council believes that, to better protect the public health, safety, and welfare it is *necessary to adopt additional amendments* to [the SOB ordinance] that would enhance land use protection to residential areas and other surrounding areas; restrict the location of [SOBs] near child-care facilities to protect the children that attend those facilities; and establish rules of conduct for certain [SOB] employees and customers . . . .

Id. at 480 (quoting Dallas, Tex., Ordinance No. 23137 at 2-5) (emphasis in original).

Plaintiffs maintained, however, that the evidence the City relied upon was irrelevant to the

ordinance. Id. at 481.  They argued "[n]o evidence indicates that a requirement that all dancers wear

bikini tops instead of pasties will reduce deleterious secondary effects." Baby Dolls Topless Saloons,

Inc., 295 F.3d at 481.  In this regard, Plaintiffs emphasized two of the District Court's findings in that

action: (1) the "studies did not study whether a change in a dancer's attire from pasties to bikini tops

would affect secondary effects" and (2) the author of these studies "testified that his studies indicated

21

that the change in attire would not have an impact on secondary effects." Id.  "According to Plaintiffs,

there must be *specific* evidence linking bikini tops to reducing secondary effects." Id.

In rejecting this argument, the Fifth Circuit explained:

Renton, however, does not require a "city to demonstrate[,] . . . with empirical data, that
its ordinance will successfully lower crime," at least "not without actual and convincing
evidence from plaintiffs' to the contrary." City of Los Angeles v. Alameda Books, Inc.,
535 U.S. 425, 122 S.Ct. 1728, 1736 (2002) (plurality).  "Such a requirement would go
too far in undermining [the] settled position that municipalities must be given a
reasonable opportunity to experiment with solutions to address the secondary effects of
protected speech." Id. (internal citations and question marks omitted).

Renton teaches us that the government must produce *some* evidence of
adverse secondary effects produced by . . . adult entertainment in order
to justify a challenged enactment using the secondary effects
doctrine. . . .  Renton also instructs us that a government must present
sufficient evidence to demonstrate "a link between the regulation and the
asserted governmental interest," under a *"reasonable belief"* standard.

Id. (quoting J&B Entm't, Inc. v. City of Jackson, 152 F.3d 362, 371-72 (5th Cir. 1998) (emphasis

added; quoting Renton, 475 U.S. at 51-52).  Accordingly, a court must determine under this reasonable

belief standard, whether the City's evidence demonstrates a link between its interest in combating

secondary effects and the ordinance." Baby Dolls Topless Saloons, Inc., 295 F.3d at 481.

The Fifth Circuit found the standard had been satisfied.  The Court noted the ordinance was

enacted, in part, because the City had found that "entities that were, in effect, SOBs were avoiding that

classification" by having its dancers wear pasties and that "concentrated SOBs continued to contribute

to an increase in criminal activities in the surrounding community." Id. (quoting Dallas, Tex.,

Ordinance 23137 (preamble).  Among other relied upon data, the City presented evidence that sex

crimes were more frequent in the study area. Id.  The Court noted:

> While the . . . study is careful not to attribute this disparity *entirely* to SOBs, it did find a correlation between SOBs–specifically their "hours of operation and the type of people which SOBs attract"–and higher crime rates.

Baby Dolls Topless Saloons, Inc., 295 F.3d at 481.  These findings were "*reasonably believed* to be relevant to the problem which the City addresse[d]." Id. (citing Renton, 475 U.S. at 51-52).  The Fifth Circuit explained:

> The [C]ity relied upon specific evidence showing, *inter alia*, higher crime rates in the vicinity of SOBs. The City's attempts to deal with that reality had been continuously frustrated in the past, most recently by "exploitation of a 'loophole' in the City code that permitted such businesses to avoid the location restrictions by obtaining dance hall licenses pursuant to Chapter 14, *which was not originally designed to regulate such businesses."* Baby Dolls, 114 F. Supp. 2d at 547 (emphasis added).

Id. at 482.  The ordinance, the Court pointed out, was a comprehensive amendment to carry out the City's "original intent in combating secondary effects associated with [SOBs]." Id.  Importantly,

> "[T]he evidence does not connect the wearing of bikini tops to the reduction of secondary effects," id.; but, in the light of the data considered by the City and other steps taken by it prior to enacting the ordinance, it was not necessary to make that connection. Instead, it was reasonable for the City to conclude that establishments featuring performers in attire more revealing than bikini tops pose the same types of problems associated with other SOBs.

Id.

## DISCUSSION

To obtain a preliminary injunction, Plaintiffs must show the following: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that Plaintiffs will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage the injunction might cause the City; and (4) granting the injunction will not disserve the public interest. Daniels Health Scis., L.L.C. v. Vascular Health Servs., L.L.C., 710 F.3d 579, 582 (5th Cir. 2013); Sugar Busters LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999).  The decision to grant or deny preliminary injunctive relief

23

is left to the sound discretion of the District Court.  Mississippi Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).  Such relief is an extraordinary remedy which should be granted only if the Plaintiffs have clearly carried their burden of persuasion on each of the four factors. Id.; see also  Canal Auth. v. Calloway, 489 F.2d 567, 569 (5th Cir. 1974).

Likelihood of Success

When determining the likelihood of success on the merits, courts look to the standards of the substantive law.  Roho, Inc. v. Marquis, 902 F.2d 356, 358 (5th Cir. 1990).  To prevail on a preliminary injunction, the Plaintiffs likelihood of success must be more than negligible, Compact Van Equip. Co. v. Leggett & Platt, Inc., 566 F.2d 952, 954 (5th Cir. 1978), and the preliminary injunction should not be granted unless "the question presented by the litigant is free from doubts."  Congress of Racial Equal. v. Douglas, 318 F.2d 95, 97 (5th Cir.), cert. denied, 375 U.S. 829 (1963).  As the level of persuasion in relation to the other three factors increases, the degree of persuasion necessary on the substantial likelihood of success factor may decrease.  Productos Carnic, S.A. v. Central Am. Beef & Seafood Trading Co., 621 F.2d 683, 686 (5th Cir. 1980) ("Where the other factors are strong, a showing on some likelihood of success on the merits will justify temporary injunctive relief.").

Because the restriction of Plaintiffs' right to feature semi-nude dancing implicates the First Amendment, the City must show that its restriction on SOBs is a narrowly tailored time, place and manner regulation.  Baby Dolls Topless Saloons, Inc. v City of Dallas, 295 F.3d 471 (5th Cir. 2002); Encore Videos, Inc. v. City of San Antonio, 330 F.3d 288, 291-92 (5th Cir.), cert. denied, 540 U.S. 982 (2003), clarified by 352 F.3d 938 (5th Cir. 2003).  "To pass constitutional muster, a time, place, and manner regulation must be 'content neutral, . . . . narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" Encore, 330 F.3d at 291.

24

In RCI Entm't, Inc. v. City of San Antonio, 373 S.W.3d 589, 598-605 (Tex. App.–San Antonio 2012, no pet.), the Fourth Court of Appeals found that San Antonio's City ordinance regulating nude and semi-nude gentlemen's clubs met the constitutional requirements that the regulation be content neutral and that it serve a substantial government interest.  The Court also found the ordinance was narrowly tailored to address the harmful secondary effects associated with adult dance establishments. Id.  In this regard, the City has provided additional evidence in these proceedings that sexually oriented businesses, including adult dance establishments, cause harmful secondary effects.[10]

In Baby Dolls Topless Saloons, Inc. v. City of Dallas, 295 F.3d 471, 481-82 (5th Cir. 2002), the Fifth Circuit Court of Appeals found an identical City ordinance which effectively required female dancers to wear bikini tops in order for the owner to avoid SOB classification to be a narrowly tailored time, place and manner restriction on free speech, even though the City did not produce specific evidence linking bikini tops to reduction of harmful secondary effects of SOBs.  As here, prior to the ordinance's enactment, the City commissioned studies and held hearings resulting in its finding that an amendment to the "pasties exception" to the SOB ordinance was necessary to address the same harmful secondary effects as other businesses already subject to regulation.  Id.

Plaintiffs argue Baby Dolls Topless Saloons, Inc. is not applicable because the decision fails to take into consideration the Supreme Court's discussion of ample avenues of communication in City of

---

[10]The legislative record of the 2012 ordinance is slightly different from that of the 2005 ordinance.  In 2005, the City placed into the record over eighty studies on the negative secondary effects of adult businesses.  The 2005 legislative record includes but is not limited to court opinions, reports and studies relied upon by the City in support of the 2005 ordinance.  Prior to voting on the 2012 ordinance, the City considered eight new studies and other information supporting the conclusion that sexually oriented businesses are linked to a variety of secondary effects. For example, Legislative Record Study #2, "Appraising Sex in Texas" examines the effects SOB classified businesses have on surrounding property values.  This study was not available during the drafting of the 2005 ordinance or the initial settlement position in April of 2005.

The supplemented legislative record before the City in support of the 2012 ordinance is 3,233 pages long, includes ninety-three studies and covers cases and reports documenting various topics related to secondary effects caused by SOBs. The 2012 ordinance states that the City relied on these various sources in enacting the ordinance.

Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002) (plurality).  However, the Court in Baby Dolls Topless Saloons, Inc., determined that under the standard set forth in Alameda Books, Inc. and in view of the secondary effects studies on which Dallas–and now San Antonio–rely "it was reasonable for the City to conclude that establishments featuring performers in attire more revealing than bikini tops pose the same types of problems associated with other [sexually oriented businesses]."  295 F.3d at 481-82.  Similarly, the City of San Antonio's legislative determination (that regular semi-nude performances as determined by the amended ordinance are as liable to produce unwanted secondary effects as other SOBs) was reasonable, in view of the secondary effects the City examined and which continue to occur.  Because this determination appears reasonable, the regulation of adult exotic dance establishments featuring semi-nude performers does not impose a substantial portion of the regulatory burden on protected speech without advancing the goals of the ordinance.  On the contrary, the ordinance promotes a substantial government interest which historically was not achieved absent the amended regulation.  Id.  Under the circumstances, Plaintiffs have not shown a substantial likelihood of success on their First Amendment challenge to the City ordinance effectively requiring their female dancers to wear bikini tops in order to avoid SOB classification.

Irreparable Injury

An irreparable injury is one which cannot be remedied by an award of economic damages. Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981).  "It is well established that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction."  Id.  Even though erotic forms of dance expression "enjoy less protection than some other forms of speech," they are still protected by the First Amendment.  Woodall v. City of El Paso, 49 F.3d 1120, 1122 (5th Cir.), cert. denied, 516 U.S.

988 (1995). Because the requirement that dancers wear bikini tops deprives Plaintiffs of their First Amendment rights, Plaintiffs have shown irreparable harm.

Threatened Injury

Next, Plaintiffs must show that the injury they will suffer if the Court denies the preliminary injunction is greater than the injury the City will suffer if the injunction is granted. Sugar Busters LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999). If the preliminary injunction is not granted, Plaintiffs aver that business will suffer and the expenses associated with obtaining an SOB license will force Plaintiffs to incur several expenses, including remodeling and in some instances relocating. Plaintiffs dispute the alleged negative impact on the community and have submitted testimony contradicting the City's allegation that SOBs cause negative secondary effects.[11] Nonetheless, the City has provided reports and affidavits describing harmful secondary effects. If Plaintiffs' businesses do cause the adverse effects alleged by the City, that harm to the community would outweigh the harm to Plaintiffs because Plaintiffs can comply or avoid the ordinance by having their dancers wear bikini tops.

Injunctive relief is an extraordinary remedy and Plaintiffs must clearly carry the burden of persuasion on each factor in order to obtain the injunction. Mississippi Power & Light Co., 760 F.2d at 621. Because the City has offered credible evidence to support its position that Plaintiffs' businesses adversely effect the community despite the City's attempt to curtain these secondary effects, Plaintiffs have not clearly shown that their potential injury outweighs the injury to the City. Erotique Shop, Inc.

---

[11]Dr. Randy Fisher testified at the hearing on the request for injunctive relief and, with permission from the Court, Plaintiffs filed supplemental opinions from Dr. Fisher and from Dr. Judith Hanna, which the Court has reviewed. Plaintiffs contend the legislative predicate relied on by the City is not "methodologically sound." As noted, they also argue bikini tops and increased coverage operates to unconstitutionally infringe on the communicative aspects of the exotic dancers' activities.

v. City of Grand Prairie, Civil Action No. 3:06-CV-2006-G, 2006 WL 3422231, at *5 (N.D. Tex. Nov. 28, 2006).

The Public Interest

Two public interests are implicated in this case. The public has an interest in protecting the First Amendment rights of individuals and businesses such as Plaintiffs. Id. The City has an interest in promoting the health, safety, morals and general welfare of the citizens of the City. Although Plaintiffs dispute the contention that its businesses pose a threat to these interests, Plaintiffs have not shown that clearly shown that dance venues offering semi nude entertainment do not have adverse secondary effects. Id. Thus, Plaintiffs have failed to show that granting the injunction will not adversely affect the public interest. Id.

Conclusion

The City ordinance effectively requiring exotic dancers to wear bikini tops in order for the operators to avoid sexually oriented business licensing, building and zoning requirements is reviewable under the standard governing content-neutral time, place and manner restrictions on free speech. Even though the City did not produce specific evidence linking bikini tops to reduction of harmful secondary effects of sexually oriented businesses, prior to the ordinance's enactment and subsequent amendment, the City reviewed studies and case law and held hearings resulting in its finding that the ordinance was necessary to address the same harmful secondary effects as other such businesses already subject to regulation. Accordingly, Plaintiffs have not shown a substantial likelihood of success on the merits of their claim that it is a violation of the First Amendment to require them to  decide if they want to be licensed and offer topless dancers or be free of licensing requirements and the other regulations in the ordinance by offering dancers wearing bikini tops. This finding renders the remaining factors for

28

obtaining a preliminary injunction moot. The Court has weighed the remaining factors and determined that Plaintiffs' threatened injury does not outweigh the interest of the City and the public and that the Order Concerning Preliminary Injunction is supported by the factual record and case law.

SIGNED this 29ᵗʰ day of April, 2013.

FRED BIERY
CHIEF UNITED STATES DISTRICT JUDGE